**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

AARON ALLEN,

Plaintiff/Appellant/Cross-Appellee,

v. No. 26-11298

RELIAQUEST, LLC,

Defendant/Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the Middle District of Florida
Tampa Division
Case No.: 8:23-cv-806-KKM-AEP
Thomas Barber, United States District Judge
Katherine Kimball Mizelle, United States District Judge

# INITIAL BRIEF OF APPELLANT/CROSS-APPELLEE

Matthew P. Farmer, Esq.
Farmer & Fitzgerald, P.A.
800 W. De Leon St.
Tampa, FL 33606
Mattfarmer1@aol.com
(813) 228-0095; FAX (813) 224-0269

Counsel for Appellant/Cross-Appellee

September 8, 2026

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested, as the issues in this case have not been recently decided authoritatively and oral argument may assist the decisional process.

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT....................................i

TABLE OF CONTENTS....................................ii

TABLE OF CITATIONS....................................iv

STATEMENT OF JURISDICTION....................................v

STATEMENT OF THE ISSUE....................................1

STATEMENT OF THE CASE....................................2

I. Course of the Proceedings and Disposition in the Court Below.....2

II. Statement of the Facts....................................15

III. Standard of Review....................................19

SUMMARY OF THE ARGUMENT....................................21

ARGUMENT....................................21

WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO RELIAQUEST ON ALLEN'S DISCRIMINATION AND RETALIATION CLAIMS

CONCLUSION....................................25

CERTIFICATE OF COMPLIANCE....................................25

CERTIFICATE OF SERVICE....................................26

## TABLE OF CITATIONS

Cases Page(s)

*Bledsoe v. Palm Beach County Soil and Water Conservation District*, 133 F. 3d 816 (11th Cir. 1998)....................................................8

*Billington v. Ginn-La Pine Island, Ltd., LLLP,* 192 So. 3d 77 (Fla. 5th DCA 2016).........................................................................13

*Butler v. Gualtieri*, 41 F. 4th 1329 (11th Cir. 2022)................................19

*Butler v. Smith*, 85 F. 4th 1102 (11th Cir. 2023)........................................ 19

*Edger v. McCabe*, 84 F. 4th 1230 (11th Cir. 2023) ....................................19

*Hardigree v. Lofton*, 992 F. 3d 1216 (11th Cir. 2021)................................19

*Jones v. AT&T Umbrella Benefit Plan No. 1*, 2018 WL 7448870, *R&R adopted,* 2018 WL 746938 (M.D. Fla., Feb. 7, 2018).......................10

*Myricks v. Federal Reserve Bank of Atlanta,* 480 F. 3d 1036 (11th Cir. 2007)........................................................................9

*Palm Beach School Board v. Wright*, 217 So. 3d 163 (Fla. 4th DCA 2017) (en banc)..........................................................................8
..

*Puentes v. United Parcel Service, Inc.*, 86 F. 3d 196 (11th Cir. 1996)...........8-11

*Smith v. Owens*, 848 F. 3d 975 (11th Cir. 2017) ............................................19

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUE

WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO RELIAQUEST ON ALLEN'S DISCRIMINATION AND RETALIATION CLAIMS

## STATEMENT OF THE CASE

I. *Course of the Proceedings and Disposition in the Court Below*

Appellant/Cross-Appellee Aaron Allen filed his verified[1] Amended Complaint in the United States District Court for the Middle District of Florida. (Doc. 32).

Allen brought eleven claims relating to the termination of his employment by Reliaquest on March 21, 2022, and the construction of a release of claims provision in a severance agreement executed by the parties relating to that termination. He timely brought suit following his receipt of a right-to-sue letter issued on January 17, 2023, by the Equal Employment Opportunity Commission (EEOC). (Doc. 32 at 2) In Counts I and II, Allen brought claims of employment discrimination on the basis of race (Black) under Title VII, 42 U.S.C. § 2000e, et seq., and the Florida Civil Rights Act, (FCRA) § 760.01, *et seq. Id.* at 7-9. Counts III, IV and V were claims of discrimination on the basis of race (Black and Native American) under Title VII, 42 U.S.C. § 1981, and the FCRA. *Id.* at 9-13. Count VI was a claim of unlawful retaliation under Title VII. *Id.* at 13-14. Count VII was a

[1] This is the operative complaint, and because it was verified, the district court – after notice to the parties that it would consider Reliaquest's motions to dismiss as motions for summary judgment (Doc. 44 and Doc. 77, n.1) – treated the allegations of the Amended Complaint as evidence.

claim of religious discrimination in violation of Title VII. *Id.* at 14-16. Count VIII was a claim of fraud in the inducement. *Id.* at 16-17. Count IX was a claim of negligent misrepresentation. *Id.* at 17-18. Finally, Count X was a claim of rescission of the severance agreement due to mutual mistake, *id.* at 18-19 and Count XI was a claim of rescission of the severance agreement due to unilateral mistake. *Id.* at 20-22.

Reliaquest filed a motion to dismiss the amended complaint. (Doc. 35), to which Allen responded. (Doc. 40).

In its corresponding order, the district court, the Hon. Thomas Barber, United States District Judge,[2] noted that Reliaquest's motion contended that Allen signed a severance agreement that released all claims that he may have against Reliaquest relating to his employment or termination. (Doc. 47 at 1). The court concluded, "Because the severance agreement contains a clear and unambiguous waiver of the claims Allen now asserts, the Court grants the motion in part." *Id.*

The district court quoted Section 6 of the Severance Agreement in its entirety,

> "In exchange for the consideration referred to in this Agreement, [Allen] hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which [Allen] may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are

[2] The United States District Judge is identified only because a fellow judge adjudicated Reliaquest's subsequent motion for summary judgment.

> based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including [Allen's] right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission."

*Id.* at 2, *quoting* Severance Agreement (Doc. 13-1, ¶ 6) (brackets added by district court). The court also identified the severance agreement's acknowledgment provision located just above Allen's signature block, which stated, '"You understand that you are giving up all rights that you may have to recover damages from the company or reinstatement based on anything that happened before you signed this agreement. You acknowledge that you sign this agreement knowingly and voluntarily.'" *Id.* at 2-3, *quoting* Severance Agreement (Doc. 13-1, ¶ 6).

The district court reasoned that, because Reliaquest's arguments require the court to interpret the Severance Agreement, the parties were given notice that it would construe the motion to dismiss as a motion for summary judgment, and granted the parties an opportunity for supplemental briefing. *Id.* at 4.

The district court framed the issue as a dispute between the parties of the meaning of the release provision of the severance agreement. *Id*. at 6. While Reliaquest argued that the ordinary meaning of the release provision bars Allen form raising the discrimination claims, the court noted, Allen asserts that the exception to the release provision "carved out his right to individually sue

ReliaQuest for discrimination claims that are protected by federal law." *Id.* The court concluded that "the ordinary and unambiguous language of the release provision bars Allen from individually suing and seeking relief for claims relating to his employment or termination." *Id.*

The court noted that the interpretation of a contract, including the question of whether it is ambiguous, is a question of law. *Id.* (citation omitted). The court concluded that the release provision is not ambiguous, and that it could rule on the appropriate interpretation as a matter of law. *Id.* at 7. Applying Florida law, the court reasoned that the language of the contract is the best evidence of the parties' intent, and if the terms of the contract are clear and definite, they must be construed according to their ordinary meaning. *Id.*

The plain language of this "general and broad" release provision, which provides that Allen '"releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or equity...based on or in any way related to [Allen's] employment with ReliaQuest or the termination of that employment, has a single exception.'" *Id.* at 8, *quoting* Severance Agreement, ¶ 6. That exception is any "matter that may not be released by law, including [Allen's] right to pursue certain claims and relief" with the EEOC, NLRB, and SEC. *Id., quoting* Severance Agreement, ¶ 6.

Relying on an EEOC guidance document, *EEOC, No. EEOC-NVTA-2009-2,*

*Q & A – Understanding Waivers of Discrimination Claims in Employee Severance Agreements* (July 15, 2009), the district court determined that the only "matter that may not be released by law" is only Allen's right to file a charge with the EEOC and his right to testify, assist, or participate in an EEOC investigation, hearing, or proceeding regarding ReliaQuest. *Id.* According to the same EEOC document, any employee may lawfully release his right to file an individual civil action or otherwise obtain monetary relief. *Id*. Moreover, the court found, this interpretation is consistent with the severance agreement's acknowledgment provision (quoted above). *Id.* at 8-9.

Summarizing, the district court determined the release provision to be clear and unambiguous, and that it "need not consider extrinsic evidence to determine its meaning." *Id.* at 9.[3] Indeed, the court may not consider extrinsic, or "parol," evidence to change the plain meaning of a contract. *Id.*

The district court then addressed Allen's two arguments as to why the clear language of the provision is instead ambiguous. *Id.* First, he argued that the exception for "claims and relief with the [EEOC]" is ambiguous, as it is unclear whether the language creates an exception for two categories: 1) claims, and 2) relief with the EEOC, or only one category: "claims and relief with the [EEOC].

[3] Yet, in the immediately preceding passage, the district court relied on the EEOC guidance document to define the term "matter that may not be released by law." *See supra.*

*Id*. Second, Allen argued that the language "This waiver and release specifically excludes matter that may not be released by law, including [Allen's] right to pursue certain claims and relief with the [EEOC]," is ambiguous. *Id.*

The court concluded that there is no ambiguity. *Id.* at 10. First, the court reasoned that the term "and" in "claims and relief with the [EEOC]" must be read conjunctively, because "and" must be given its ordinary meaning. *Id.* Second, Allen's claim that the second passage is ambiguous is more an argument that he has a personal belief about matters that may not be released by law, not that the term is plain and unambiguous. *Id.*

In addition, these claimed ambiguities conflict with the terms of the acknowledgement language at the conclusion of the severance agreement. *Id*. at 11. Allen's proposed construction would render the acknowledgement superfluous, and contracts must be read so that all sections must be given meaning and effect. *Id.*

In summary, the district court rejected Allen's interpretation of the release because it contradicts its plain language and violates basic contract principles. *Id.* at 11-12. The court concluded, however, that the motion for partial summary judgment should be granted in part. *Id.* at 12. The court declined to rule on the questions, first, of whether Allen's release of the discrimination claims was "knowing and voluntary," and second, whether summary judgment on the claims

in Counts VIII-XI (fraud in the inducement, negligent misrepresentation, rescission due to mutual mistake, and rescission due to unilateral mistake) is appropriate in light of its order. *Id.*

Subsequently, the district court, the Hon. Kathryn Kimball Mizell, United States District Judge, addressed these unresolved issues. (Doc. 77). Specifically, Reliaquest moved for summary judgment (Doc. 59), and Allen filed a timely response. (Doc. 61).

The district court again granted summary judgment. (Doc. 77 at 17). First, the court found that Allen knowingly and voluntarily signed the severance agreement. *Id.* at 6. Relying on this Court's opinion in *Bledsoe v. Palm Beach County Soil and Water Conservation District*, 133 F. 3d 816, 819 (11th Cir. 1998), the district court found that a voluntary settlement agreement, as long as an employee's consent is voluntary and knowing, may require his waiver of a Title VII[4] cause of action. Id. According to this Court, the following factors must be considered:

> "[1] the plaintiff's education and business experience; [2] the amount of time the plaintiff considered the agreement before signing it; [3] the clarity of the agreement; [4] the plaintiff's opportunity to consult with an attorney; [5] the employer's encouragement or discouragement of

[4] The district court also noted that courts have previously found that case authority governing the release of Title VII claims is also applicable to claims under the Florida Civil Rights Act and under Section 1981, Allen's companion counts. *Id.* at 7, n. 2, *citing Palm Beach School Board v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) (en banc), and *Puentes v. United Parcel Service, Inc.*, 86 F. 3d 196, 198 (11th Cir. 1996).

> consultation with an attorney; and [6] the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled."

*Id.* at 7, *quoting Puentes,* 86 F. 3d at 198 (other quotations omitted). Standing alone, a claim of subjective misunderstanding does not defeat a valid release, and evidence that the parties negotiated the conditions of a release support the conclusion that it was knowing and voluntary. *Id., citing Myricks v. Federal Reserve Bank of Atlanta,* 480 F. 3d 1036, 1042 (11th Cir. 2007).

Under these legal standards, the district court found that Allen entered into the severance agreement knowingly and voluntarily. *Id.* at 8. Addressing the first Puentes factor, Allen's education and business experience, the court considered the allegations of his verified complaint, which included the fact that Allen had five years of management experience. *Id.* Addressing the second factor, the amount of time Allen had to consider the agreement, the court cited his allegation that he had two weeks to review it, and that Allen requested, and Reliaquest agreed, to modify certain wording. *Id., citing Puentes*, 86 F. 3d at 199 (finding 14 days sufficient). Addressing the third *Puentes* factor, the clarity of the agreement, Judge Mizelle found it clear and unambiguous. *Id., citing* Judge Barber's previous order (Doc. 47).

Turning to the fourth *Puentes* factor, the plaintiff's opportunity to consult with an attorney, the court cited Allen's complaint, which alleged that he had two

weeks to do so, and that he contacted several attorneys. *Id.* Skipping over the fifth Puentes factor, the employer's encouragement or discouragement of consulting with an attorney, the court moved to the sixth[5] factor, the consideration given in exchange for the waiver when compared with the benefits to which to employee was already entitled. *Id.*[6] The court found that Allen received consideration, namely a severance payment and an additional month of healthcare benefits, and he acknowledged in signing the agreement that he was not otherwise entitled to either benefit. *Id*. at 8-9. Returning to the actual fifth factor, finally, the court found that neither party offered any facts material to the issue of whether Reliaquest either encouraged or discouraged Allen to consult with an attorney, and concluded that this factor neither supports nor negates that Allen signed the release knowingly and voluntarily. *Id.* at 9.

The district court noted that Allen does not dispute that the release is clear and that he received consideration in exchange for signing it, but disputes the remaining *Puentes* factors. Id. First, according to the court, Allen suggests that it is unclear how much time he spent considering the agreement before signing it, and cites a case, *Jones v. AT&T Umbrella Benefit Plan No. 1*, 2028 WL 7448870, *R&R adopted,* 2018 WL 746938 (M.D. Fla., Feb. 7, 2018), that held that 21 days is

[5] The court mistakenly labelled this the fifth factor, having skipped over the actual fifth factor. *But see infa.*

sufficient time. *Id.* at 9-10. But the court reasoned, first, that the relevant inquiry relates to how much time the plaintiff had to consider the agreement, not how much time the plaintiff actually spent. *Id.* at 10. Second, there is no bright-line test for determining sufficient time, and 14 days suffices under the totality of circumstances. *Id.*

Turning to Allen's argument that there is no record evidence that he has certain degrees, the district court reasoned that the focus of *Puentes*'s first factor, education and business experience, is whether he is educated enough to understand the release. *Id.* The court found that Allen produced no evidence that he could not understand the release, and his verified complaint alleged that he had five years of management experience and was qualified to perform his job. *Id.*

Turning to the fifth *Puentes* factor, the employer's encouragement or discouragement of the employee's consultation with counsel, the court addressed Allen's claim that a statement by Scott Noonan, a senior vice president, that Allen "could sue after he signed and executed the Severance Agreement," signaled discouragement. *Id.* at 11. The court reasoned that the severance agreement itself contains a provision that affirms that Allen has either relied on, or had an opportunity to rely on, the advice of counsel of his choosing, or has been given an opportunity to review the agreement with counsel and opted not to. *Id.* Further, the court found no evidence that Reliaquest did or said anything to impede Allen's

ability to consult with counsel. *Id.* A claim of subjective misunderstanding by a party, by itself, does not defeat a valid release. *Id.* Finally, the court noted that Allen's complaint alleges that he contacted several attorneys after Noonan's statement, reflecting that it did not discourage Allen. *Id.*

Accordingly, the district court concluded that no reasonable jury could find, under the totality of the circumstances, that Allen did not sign the agreement knowingly and voluntarily. *Id.* at 12. Thus, the court granted summary judgment on all of Allen's discrimination (and one retaliation) claims, in Counts 1-VII. *Id.*

The district court then turned to the contract-related claims in Counts VIII – XI. *Id.* First, relying on Florida law, the district court noted that, under the parol evidence rule, when a contract is unambiguous, parties cannot offer extrinsic evidence to vary the plain terms of a contract. *Id.* The parol evidence rule does not, however, apply when fraud induces a written contract (Count VIII), when extrinsic evidence is offered to show mutual mistake (Count X), or when there is negligent misrepresentation (Count IX). *Id.* The court noted that all of Allen's contract claims hinge solely on Noonan's extracontractual statement. *Id.* at 13.

Addressing Allen's claim of rescission based on unilateral mistake in Count XI, the district court noted that the parol evidence rule, first, applies, and second, barred the claim because the contract is unambiguous. *Id.*

Although the court reasoned that the parol evidence rule does not prevent

extrinsic statements from being offered to prove the remaining three contract claims, the court concluded that they fail for other reasons.

Addressing Count X, the court noted that a mistake is mutual when they agree to one thing but, due to inadvertence or scrivener's error, express something different in the contract. *Id.* The party seeking rescission must prove by clear and convincing evidence that a mistake in fact occurred. *Id.* at 13-14. Allen, the court reasoned, failed to meet his burden for two reasons. *Id.* at 14. First, Noonan's statement does not expressly contradict the exception for "claims and relief with the [EEOC]." *Id.* So, what is expressed in the written release is not necessarily different from what the parties agreed to. *Id.* Second, Noonan's alleged statement does not reflect an agreement between Allen and Reliaquest about the meaning of the release provision, but that Noonan informed him about its meaning. *Id.* Thus, Allen failed to show that a mistake of fact occurred in the transaction. *Id.*

Addressing Count VIII (fraud in the inducement) and Count IX (negligent misrepresentation), the court noted that a plaintiff must demonstrate justifiable reliance. *Id.* Objective corroboration for a claim of justifiable reliance is necessary, and objective corroboration cannot be shown when '"the representation is obviously false.'" *Id.* at 15, *quoting Billington v. Ginn-La Pine Island, Ltd., LLLP,* 192 So. 3d 77, 81 n. 4 (Fla. 5th DCA 2016). Additionally, the court reasoned that Allen cannot objectively show justifiable reliance on Noonan's statement, given

the unambiguous release provision. *Id.* By signing the agreement, the court found, Allen agreed that he released Reliaquest from "any and all claims... and causes of action" relating to his employment and termination at by Reliaquest. *Id., quoting* severance agreement, ¶ 6 (Doc. 13-1). The only "relevant carveout," according to the district court, was for pursuing "claims and relief" with the EEOC. *Id.* Noonan's statement – that the release provision '"does not apply to federal claims such as with the EEOC or other federal labor rights'" – does not, according to the court, directly contradict that exception. *Id., quoting* Amended Complaint (Doc. 32), ¶ 31. But even if the statement did contradict the exception, or if Allen construed it to mean that he could bring any claim, Noonan's representation was "obviously false" when compared to the release provision, and Allen cannot have justifiably relied on Noonan's statement. *Id.* at 16.

The district court accordingly granted Reliaquest's motion for summary judgment on the contract-related claims as well.

## II. *Statement of the Facts*

According to the facts alleged in Allen's verified complaint (Doc. 32), but treated as evidence in the summary judgment record, Allen began his employment with Reliaquest on November 1, 2021, in the role of "detection architect" in the detection operations team. *Id.* at 4. He was qualified to perform his job with Reliaquest within its legitimate expectations. *Id.* Prior to his termination, Allen was an employee in good standing. *Id*. Reliaquest, however, terminated Allen on March 21, 2022, fewer than five months later. *Id.*

The reasons Reliaquest provided Allen for his termination were that he "made mistakes" and he "did not talk during a meeting with a customer who was threatening to leave" Reliaquest. *Id.* At the time, Reliaquest employed fewer than five Black employees in Allen's department, and none of them, including Allen, occupied leadership roles. *Id*. Within the higher-paying, management levels of Reliaquest, Blacks are rarely, if ever, represented. *Id.* Black employees are limited in promotion to upper-level positions. *Id.* For example, one Black manager, F.H., was terminated despite praise from his fellow employees. *Id.*

During his service as a member of Reliaquest's detection operation team, Allen was subjected to constant discriminatory and harassing treatment that pervades the company. *Id.* At least twice, Reliaquest managers in the detection

operations team referred to Allen as a "work horse." *Id.* Allen was subjected to a racially-charge meme objectively interpreted as a racial and cultural insult directed at Blacks. *Id.* at 5. When Allen responded, "Racial stereotypes [are] not a good look," a co-worked responded to Allen's post with a laughing face emoji. Id. In addition, Allen's direct supervisor, Ray Miller, informed Allen virtually from the beginning of his employment that he would not be a manager within a year, although Allen had five years of management experience before his employment by Reliaquest. *Id.* Further, Miller discouraged Allen from applying for management positions at Reliaquest. *Id.*

Moreover, Allen was informed that he could not participate in "upsell opportunities" that would lead to additional income, despite other similarly situated employees being allowed to participate. *Id.* Allen was likewise denied compensation for any referrals he made despite promises on multiple occasions that each successful referral is worth $5,000.00. *Id.* Allen was also denied access to training opportunities that were directly related to the skills Reliaquest asked Allen to accomplish. *Id.* Likewise, Allen was denied the opportunity to transfer to a different role, which had been promised by manager Casey Martin. *Id*. Finally, Allen was falsely accused of failing to comply with a customer's request for review detection operations rules with them. *Id.*

Other similarly situated non-Black and non-Native American Reliaquest

employees were treated differently than Allen when they were accused of similar wrongdoing. *Id.*

During his March 21, 2022, termination, he was presented with a severance agreement and told to sign it. *Id*. at 6. Allen did not participate in creating the document but requested a minor change – the removal of the word "covenant" – which Reliaquest granted. *Id.* Section 6 of the severance agreement states, in pertinent part that, "This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission [EEOC], the National Labor Relations Board, and the Security and Exchange Commission." *Id.*

On the same date, and prior to signing the severance agreement, Allen met with Scott Noonan, Senior Vice President of Development and Engagement at Reliaquest, and two additional managers. *Id.* Noonan explained the severance agreement and stated further that by signing the agreement, Allen would waive all claims against Reliaquest, except those protected by law such as racial discrimination claims falling under the EEOC. *Id.* Noonan specifically stated that the agreement does not apply to any federal claims such as with the EEOC or other federal labor rights. *Id.* Finally, Noonan explained that Allen would have seven days to sign the agreement. *Id.* Allen was unable to consult with counsel over the next seven days. *Id.*

On April 4, 2022, Allen relied on Noonan's statements regarding the agreement, including his statement that his EEOC claims were excluded from the general release in Section 6, and that he could bring suit despite signing and executing the agreement. *Id.* at 7. Allen filed a discrimination claim against Reliaquest with the EEOC, which issued a right to sue letter. *Id.*

Allen also alleged that he participated in an activity protected by Title VII by raising his concerns regarding a racially charged meme during a Microsoft Teams meeting in March 2022. *Id.* at 13. He raised his concerns in writing and then experienced further acts of discrimination against him. *Id.* Instead of investigating Allen's reports, Reliaquest instead terminated him. *Id.* at 14.

Allen also alleged that he is a devoted Messianite and actively participates in his religion by attending Church at least weekly and holding the Sabbath. *Id*. at 15. Allen submitted a leave request a year in advance to recognize his religious holiday. *Id.* Reliaquest scheduled an impromptu but mandatory training session that Allen could not attend for religious religions. *Id.*

During Allen's March 21, 2002, meeting with Noonan, Allen asked whether, after signing the agreement, he would still have a right to file an EEOC claim, and Noonan made a false statement of material fact that the agreement does not apply to any federal claims such as with the EEOC or other federal labor rights. *Id.* at 17. Noonan made the statement within the scope of his employment with Reliaquest.

*Id.* Noonan knew, or should have known, that the statement was false when he made it, and made the statement to induce Allen to rely upon it and to execute the severance agreement. *Id.* (Alternatively, Allen alleged that Noonan made the misrepresentation without knowledge of its truth or falsity. *Id.* at 18.) Allen justifiably relied on the false statement, to his detriment. *Id.*

Alternatively, and seeking rescission, Allen alleged that he and Noonan made a mutual mistake in concluding that the language in Section 6 of the agreement excluded Allen's discrimination claims so that he could file a discrimination claim against Reliaquest with the EEOC, and that Allen has offered Reliaquest the return of the benefits he obtained under the agreement. *Id.* at 19. As a second alternative in seeking rescission, Allen alleged that he committed a unilateral mistake that was not made as a result of an inexcusable lack of care, and that it would not be inequitable to require repayment by Allen. *Id.* at 20.

III. *Standard of Review*

The standard of review is de novo, and this Court applies the same legal standard the district courts apply under Fed. R. Civ. P. 56. *Butler v. Gualtieri*, 41 F. 4th 1329, 1334 (11th Cir. 2022). *See also Butler v. Smith*, 85 F. 4th 1102, 1111 (11th Cir. 2023), *citing Hardigree v. Lofton*, 992 F. 3d 1216, 1223 (11th Cir. 2021) (same); *Edger v. McCabe*, 84 F. 4th 1230, 1235 (11th Cir. 2023), *citing Smith v. Owens*, 848 F. 3d 975, 978 (11th Cir. 2017) (same).

This standard is well established. According to *Butler v. Gualtieri*, "Summary judgment is warranted only when, 'after construing the evidence in the light most favorable to the non-moving party, [the court] find[s] that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" *Id.* (quotations omitted). "At summary judgment, the key issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it so one-sided that one party must prevail as a matter of law.'" *Id.* (quotations omitted). Further, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences form the facts are jury functions, not those of a judge,' so they are not appropriate determinations to make at the summary judgment stage." *Id.* (quotation omitted). Moreover, "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* (quotation omitted). "Summary judgment may be inappropriate even when the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Id.* (citation omitted).

## SUMMARY OF ARGUMENT

The district court erred in concluding that no reasonable jury could find that the exclusion language of the parties' severance agreement did not cover Allen's discrimination and retaliation claims.

## ARGUMENT

### THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO RELIAQUEST ON AARON ALLEN'S EMPLOYMENT DISCRIMINATION AND RETALIATION CLAIMS

On appeal, Allen asserts that the district court erroneously granted summary judgment to Reliaquest on his employment discrimination and retaliation claims, Counts I – VII.

The central issue is not especially complex. The district court interpreted the terms of a document, the "Severance Agreement and General Release," (Doc. 13-1), to conclude that Allen, in exchange for a severance payment, released Reliaquest from the specific claims he asserted in Counts I - VII. (These claims are employment discrimination claims brought under Title VII, Section 1981, and the Florida Civil Rights Act, as well as a retaliation claim, again brought under Title VII.) More specifically, the question is whether the carveout, or exclusion, included in the release provision embraces Allen's claims, or not.

Allen begins with the terms of the release, particularly Section 6. It provides, in its entirety,

> RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

(Doc. 13-1 at 3), ¶ 6 (emphasis added) (other punctuation in the original). In fairness, and as Judge Barber noted, also relevant is the text immediately preceding the signature block. It provides:

> YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FOR THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT HAPPENED BEFORE YOU SIGNED THIS AGREEMENT. YOU ACKNOWLEDGE THAT YOU SIGN THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

(Doc. 13-1 at 4) (punctuation in original).

Even more simply stated, the issue is whether Allen's discrimination and retaliation claims are covered by the express exclusion, found in the italicized

sentence in Section 6 above. In other words, are the claims in Counts I – VII[7] reasonably construed as "matter that may not be released by law, including Employee's right to pursue certain claims and relief with the [EEOC]..."? (Doc. 13-1).

Judge Barber reasoned that the language of release, and more specifically the language of the exclusion, is plain and unambiguous, and must be given its "ordinary meaning." But to illuminate that "ordinary meaning," Judge Barber relied on an extrinsic legal document. That is not to say that the document is not relevant to establishing the governing *law* for the exclusion, but an objectively reasonable employee would not ordinarily rely on this extrinsic legal document to understand the "ordinary meaning" of the exclusion.

Relying on an EEOC guidance document, *EEOC, No. EEOC-NVTA-2009-2, Q & A – Understanding Waivers of Discrimination Claims in Employee Severance Agreements* (July 15, 2009),[8] Judge Barber determined that the only "matter that may not be released by law" is only Allen's right to file a charge with the EEOC and his right to testify, assist, or participate in an EEOC investigation, hearing, or

[7] Allen acknowledges that only Count I, Count III, Count VI, and Count VII state claims that must be brought first to the EEOC, because they are pled as Title VII claims. But Count II, Count IV, and Count V, brought under Section 1981 and the Florida Civil Rights Act, are inextricably intertwined with Allen's Title VII claims.

[8] There is no evidence that Allen reviewed this document, or that Reliaquest or anyone else provided it to him.

proceeding regarding ReliaQuest. *Id.* According to the same EEOC document, any employee may lawfully release his right to file an individual civil action or otherwise obtain monetary relief. Id. Moreover, the court found, this interpretation is consistent with the severance agreement's acknowledgment provision (quoted above). *Id.* at 8-9.

Amplifying the error of relying on a legal document to discern ordinary meaning, the district court failed to consider additional record evidence that is relevant for determining an objective construction of the language. Exhibit 1 to Allen's operative complaint is the EEOC's "right to sue" letter. (Doc. 32-1.) Provided to Allen personally by the same agency that produced the EEOC guidance, the right to sue letter, if given its ordinary meaning, notified Allen that he could bring a lawsuit against Reliaquest. (Doc. 32-1 at 1). Allen acknowledges that this is a standard document, makes no finding as to the merits, and has no preclusive effect. But as extrinsic evidence, the right to sue letter that Allen personally received would be much more relevant to discerning the ordinary meaning of the exclusion than an EEOC interpretive guidance document.

Accordingly, the district court erred in determining that the objective, ordinary meaning of the term "excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission" does not include Allen's right to sue on

his Title VII claims. (Doc. 13-1, ¶ 6).

## CONCLUSION

Accordingly, Aaron Allen requests this Court to reverse the district court's order and remand Counts I-VII for jury trial.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 5,905 words, excluding the pages of the brief exempted by FRAP 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Wordperfect 8.0 in 14-point Times New Roman font.

/s/ *Matthew Farmer*
COUNSEL

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 8th day of September, 2026:

Richard Hanchett, Esq.
Dean Kent, Esq.
Lindsay Lopez, Esq.

/s/ *Matthew Farmer*
COUNSEL