APPEAL,CLOSED,MEDIATION,MOTREF,SL DOC,STAYED

# U.S. District Court
# Middle District of Florida (Tampa)
# CIVIL DOCKET FOR CASE #: 8:23−cv−00806−KKM−AEP

Allen v. Reliaquest, LLC
Assigned to: Judge Kathryn Kimball Mizelle
Referred to: Magistrate Judge Anthony E. Porcelli
Case in other court: 11th Circuit, 26−11298−EE
Cause: 42:1981 Job Discrimination (Race)

Date Filed: 04/12/2023
Date Terminated: 03/18/2026
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Aaron Allen** represented by

**Ian Michael Tygar**
Neil Bryan Tygar, P.A
5341 W. Atlantic Ave
Suite 303
Delray Beach, FL 33483
561−305−6510
Email: itygar@icloud.com
*TERMINATED: 12/18/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew P. Farmer**
Farmer & Fitzgerald
800 W. De Leon St.
Tampa, FL 33606
813−228−0095
Email: mattfarmer1@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy James Fitzgerald**
Farmer and Fitzgerald, P.A.
800 West De Leon St.
Tampa, FL 33606
813−228−0095
Fax: 813−224−0269
Email: fflawpafedtjf@aol.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Reliaquest, LLC** represented by

**Dean Adrian Kent**
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis,
Suite 2700
101 E Kennedy Blvd

Tampa, FL 33602
813/223−7474, ext 423
Fax: 813/229−6553
Email: dkent@trenam.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard M. Hanchett**
Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis,
Suite 2700
101 E Kennedy Blvd
Tampa, FL 33602
813/223−7474
Fax: 813−229−6553
Email: rmhanchett@trenam.com
*ATTORNEY TO BE NOTICED*

**Steven J. Pacini**
Pacini Law PLLC
5 Bellflower Street
Suite 3
Boston, MA 02125
617−600−8454
Email: steven@pacinilaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mediator**

**Neil Flaxman**
*TERMINATED: 11/12/2024*

represented by **Neil Flaxman**
Neil Flaxman Professional
Suite 3100
80 SW 8th Street
Miami, FL 33130
305/810−2786
Fax: 305/810−2824
Email: neil@flaxmanmediations.com
*TERMINATED: 11/12/2024*

**Third Party Custodian**

**Wenzel Fenton Cabassa, P.A.**

represented by **Steven Greg Wenzel**
Wenzel Fenton Cabassa, PA
1110 N Florida Ave Ste 300
Tampa, FL 33602−3343
813−224−0431
Fax: 813−229−8712
Email: swenzel@wfclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Reliaquest, LLC** represented by **Dean Adrian Kent**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard M. Hanchett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven J. Pacini**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Aaron Allen** represented by **Aaron Allen**
933 Branch Court #122
Grovetown, AL 30813
Email: ineedalawyer@sudomail.com
PRO SE

**Ian Michael Tygar**
(See above for address)
*TERMINATED: 12/18/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew P. Farmer**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2023 | 1 | COMPLAINT against Reliaquest, LLC with Jury Demand (Filing fee $402 receipt number AFLMDC−20718744) filed by Aaron Allen. (Attachments: # 1 Exhibit A Right to Sue Letter, # 2 Proposed Summons, # 3 Civil Cover Sheet)(Tygar, Ian) (Entered: 04/12/2023) |
| 04/13/2023 | 2 | NEW CASE ASSIGNED to Judge Kathryn Kimball Mizelle and Magistrate Judge Anthony E. Porcelli. New case number: 8:23−cv−806−KKM−AEP. (AM) (Entered: 04/13/2023) |
| 04/13/2023 | 3 | **CIVIL CASE STANDING ORDER. The parties shall meet and file a Case Management Report using the standard form on the undersigned's website within forty days after any defendant appears. Each party must also file a Corporate Disclosure Statement using the standard template on the undersigned's website under the "forms" tab within fourteen days after appearing. Signed by Judge Kathryn Kimball Mizelle on 4/13/2023. (MEV)** (Entered: 04/13/2023) |
| 04/14/2023 | 4 | SUMMONS issued as to Reliaquest, LLC. (LNR) (Entered: 04/14/2023) |
| 04/27/2023 | 5 | |

| | | |
|---|---|---|
| | | NOTICE of a related action per Local Rule 1.07(c) by Aaron Allen. Related case(s): No (Tygar, Ian) (Entered: 04/27/2023) |
| 04/27/2023 | 6 | CERTIFICATE of interested persons and corporate disclosure statement re 3 Standing Order, by Aaron Allen. (Tygar, Ian) (Entered: 04/27/2023) |
| 05/18/2023 | 7 | NOTICE of Appearance by Dean Adrian Kent on behalf of Reliaquest, LLC. (Kent, Dean) (Entered: 05/18/2023) |
| 05/18/2023 | 8 | Unopposed MOTION for Steven J. Pacini to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC−20851215 for $150 by Reliaquest, LLC. (Kent, Dean) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 05/18/2023) |
| 05/18/2023 | 9 | RETURN of service executed on 4/28/23 by Aaron Allen as to Reliaquest, LLC. (Tygar, Ian) (Entered: 05/18/2023) |
| 05/19/2023 | 10 | CERTIFICATE of interested persons and corporate disclosure statement re 3 Standing Order, by Reliaquest, LLC identifying Corporate Parent ReliaQuest Holdings, LLC for Reliaquest, LLC. (Kent, Dean) (Entered: 05/19/2023) |
| 05/19/2023 | 11 | **ENDORSED ORDER: Neither party's Corporate Disclosure Statement meets the standards this Court requires to effectively screen cases for potential conflicts. Both parties must submit a proper disclosure statement using the standard template attached to Doc. 3 (also available on the undersigned's website under the "forms" tab) by June 2, 2023. Signed by Judge Kathryn Kimball Mizelle on 5/19/2023. (MEV)** (Entered: 05/19/2023) |
| 05/19/2023 | 12 | AMENDED CERTIFICATE of interested persons and corporate disclosure statement re 3 Standing Order, by Reliaquest, LLC identifying Corporate Parent ReliaQuest Holdings, LLC for Reliaquest, LLC. (Kent, Dean) (Entered: 05/19/2023) |
| 05/19/2023 | 13 | ANSWER and affirmative defenses to 1 Complaint, COUNTERCLAIM against Aaron Allen by Reliaquest, LLC. (Attachments: # 1 Exhibit A)(Kent, Dean) (Entered: 05/19/2023) |
| 05/22/2023 | 14 | **ENDORSED ORDER granting 8 Motion for Steven J. Pacini to Appear Pro Hac Vice. Attorney Steven J. Pacini may appear pro hac vice on behalf of Defendant. Within twenty−one (21) days of the date of this Order, counsel shall comply with the fee and electronic filing requirements and file a notice of compliance with said requirements. Signed by Magistrate Judge Anthony E. Porcelli on 5/22/2023. (BMM)** (Entered: 05/22/2023) |
| 05/24/2023 | 15 | NOTICE of compliance re 14 Order on Motion to Appear Pro Hac Vice, by Reliaquest, LLC (Pacini, Steven) (Entered: 05/24/2023) |
| 05/30/2023 | 16 | NOTICE of a related action per Local Rule 1.07(c) by Reliaquest, LLC. Related case(s): Yes (Kent, Dean) (Entered: 05/30/2023) |
| 06/02/2023 | 17 | CERTIFICATE of interested persons and corporate disclosure statement re 3 Standing Order, 11 Order, *Amended* by Aaron Allen. (Tygar, Ian) (Entered: 06/02/2023) |
| 06/11/2023 | 18 | REPLY to 13 Counterclaim by Aaron Allen. (Attachments: # 1 Exhibit A)(Tygar, Ian) (Entered: 06/11/2023) |
| 06/14/2023 | 19 | |

| | | |
|---|---|---|
| | | MOTION for Sanctions *and Memorandum of Law in Support* by Reliaquest, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kent, Dean) (Entered: 06/14/2023) |
| 06/22/2023 | 20 | CASE MANAGEMENT REPORT. (Tygar, Ian) (Entered: 06/22/2023) |
| 06/27/2023 | 21 | **ENDORSED ORDER setting setting preliminary pretrial conference based on parties' request in the Case Management Report 20. Telephonic Conference set for 7/5/2023 at 01:00 PM before Judge Kathryn Kimball Mizelle. Counsel shall call the AT&T Toll−Free Teleconferencing Services line at 1−877−402−9753 and enter Access Code 5252356. The parties are advised to use a land−based telephone to access the conference. Signed by Judge Kathryn Kimball Mizelle on 6/27/2023. (MEV)** (Entered: 06/27/2023) |
| 06/27/2023 | 22 | RESPONSE to Motion re 19 MOTION for Sanctions *and Memorandum of Law in Support* filed by Aaron Allen. (Attachments: # 1 Exhibit "A" Declaration of Aaron Allen)(Tygar, Ian) Modified on 6/30/2023. Counsel notified re: blank page 10 (SMG). (Entered: 06/27/2023) |
| 07/05/2023 | 23 | MINUTE ENTRY for 7/5/2023 telephonic Preliminary Pretrial Conference before Judge Kathryn Kimball Mizelle. Court Reporter: Bill Jones (GSO) (Entered: 07/05/2023) |
| 07/05/2023 | 24 | MOTION for Judgment on the Pleadings by Reliaquest, LLC. (Pacini, Steven) (Entered: 07/05/2023) |
| 07/07/2023 | 25 | **ENDORSED ORDER: Upon review of Reliaquest's motion for judgment on the pleadings 24, and after the Court's telephonic hearing, the Court stays discovery until the pending motions (19, 24) are ruled on. Should the motion for judgment on the pleadings be denied, the parties should file a new Case Management Report within seven days of the Court's ruling. Signed by Judge Kathryn Kimball Mizelle on 7/7/2023. (MEV)** (Entered: 07/07/2023) |
| 07/07/2023 | 26 | MOTION for Ian Tygar to Withdraw as Attorney by Aaron Allen. (Tygar, Ian) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 07/07/2023) |
| 07/10/2023 | 27 | RESPONSE in Opposition re 26 MOTION for Ian Tygar to Withdraw as Attorney filed by Reliaquest, LLC. (Pacini, Steven) (Entered: 07/10/2023) |
| 07/13/2023 | 28 | **ENDORSED ORDER denying without prejudice 26 Motion to Withdraw as Attorney pending the resolution of Defendant's Motion for Sanctions (Doc. 19) and Motion for Judgment on the Pleadings (Doc 24). Signed by Magistrate Judge Anthony E. Porcelli on 7/13/2023. (BMM)** (Entered: 07/13/2023) |
| 07/24/2023 | 29 | RESPONSE to Motion re 24 MOTION for Judgment on the Pleadings filed by Aaron Allen. (Tygar, Ian) (Entered: 07/24/2023) |
| 07/28/2023 | 30 | AFFIDAVIT of Aaron Allen by Aaron Allen. (Tygar, Ian) (Entered: 07/28/2023) |
| 01/25/2024 | 31 | **ORDER. Defendant's 24 Motion for Judgment on the Pleadings is DENIED WITHOUT PREJUDICE. Defendant's 19 Motion for Sanctions is DENIED. Plaintiff shall file an amended complaint by February 9, 2024. The parties shall file an amended Case Management Report by February 23, 2024. Signed by Judge Kathryn Kimball Mizelle on 1/25/2024. (ALE)** (Entered: 01/25/2024) |
| 02/09/2024 | 32 | |

| | | |
|---|---|---|
| | | AMENDED COMPLAINT against Reliaquest, LLC with Jury Demand. filed by Aaron Allen. (Attachments: # 1 Exhibit A "Right to Sue Letter")(Tygar, Ian) Modified on 2/12/2024 (CTR). (Entered: 02/09/2024) |
| 02/21/2024 | 33 | NOTICE of Appearance by Richard M. Hanchett on behalf of Reliaquest, LLC (Hanchett, Richard) (Entered: 02/21/2024) |
| 02/23/2024 | 34 | CASE MANAGEMENT REPORT. (Tygar, Ian) (Entered: 02/23/2024) |
| 02/23/2024 | 35 | MOTION to Dismiss Amended Complaint by Reliaquest, LLC. (Kent, Dean) (Entered: 02/23/2024) |
| 02/26/2024 | 36 | **ENDORSED ORDER: This case is referred to Judge Anthony E. Porcelli to conduct a preliminary pretrial conference, *see* (Doc. 34) (requesting a preliminary pretrial conference prior to the entry of a scheduling order). Signed by Judge Kathryn Kimball Mizelle on 2/26/2024. (ALE)** (Entered: 02/26/2024) |
| 02/27/2024 | 37 | NOTICE of hearing: Preliminary Pretrial Conference set for 3/6/2024 at 10:30 AM VIA ZOOM before Magistrate Judge Anthony E. Porcelli. Zoom information to be sent via email to counsel of record. (LV) (Entered: 02/27/2024) |
| 03/06/2024 | 38 | Minute Entry. Virtual Proceedings held before Magistrate Judge Anthony E. Porcelli: PRELIMINARY PRETRIAL CONFERENCE held on 3/6/2024. (digital) (LV) (Entered: 03/06/2024) |
| 03/15/2024 | 40 | RESPONSE to Motion re 35 MOTION to Dismiss Amended Complaint filed by Aaron Allen. (Tygar, Ian) (Entered: 03/15/2024) |
| 04/12/2024 | 41 | ***VACATED PER 79 ORDER*** **CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by November 15, 2024. Dispositive motions due by December 27, 2024. Pretrial Conference scheduled for June 12, 2025, at 1:30 PM in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. Jury Trial scheduled for the July 2025 trial calendar in Tampa Courtroom 13B before Judge Kathryn Kimball Mizelle. Conduct mediation by December 13, 2024. Lead counsel to coordinate dates. Signed by Judge Kathryn Kimball Mizelle on 4/12/2024. (GSO)** Modified on 6/12/2025 (AA). (Entered: 04/12/2024) |
| 05/20/2024 | 42 | JOINT NOTICE OF SELECTION of Neil Flaxman as Mediator by Aaron Allen. (Tygar, Ian) (Modified on 5/21/2024, to edit text) (BGR). (Entered: 05/20/2024) |
| 05/21/2024 | 43 | **MEDIATION ORDER: This case is set for mediation on November 12, 2024. Within seven days following the mediation conference, Lead Counsel shall file a Mediation Report. Signed by Judge Kathryn Kimball Mizelle on 5/21/2024. (ALE)** (Entered: 05/21/2024) |
| 07/22/2024 | 44 | **ENDORSED ORDER: Upon review of the Defendant's 35 Motion to Dismiss and Plaintiff's 40 Response, and to expedite the resolution of this case and interpret the parties' severance agreement, the Court hereby converts the motion to dismiss into one for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005) (explaining that a court must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint); *see also Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, No. 10−60170, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a[ ] motion to dismiss."). Accordingly, no** |

| | | |
|---|---|---|
| | | **later than July 26, 2024, the parties may each submit a supplemental brief, not to exceed five (5) pages, discussing the proper interpretation of the release provision of the severance agreement. Signed by Judge Thomas P. Barber on 7/22/2024. (ALE)** (Entered: 07/22/2024) |
| 07/26/2024 | 45 | PLAINTIFF'S BRIEF re 44 Order filed by Aaron Allen. (Tygar, Ian) (Entered: 07/26/2024) |
| 07/26/2024 | 46 | DEFENDANT'S BRIEF re 44 Order filed by Reliaquest, LLC. (Kent, Dean) (Entered: 07/26/2024) |
| 08/01/2024 | 47 | **ORDER. Defendant's 35 Motion to Dismiss, which the Court construes as a motion for summary judgment, is GRANTED IN PART. Signed by Judge Thomas P. Barber on 8/1/2024. (ALE)** (Entered: 08/01/2024) |
| 08/16/2024 | 48 | *ReliaQuest, LLC's* ANSWER and affirmative defenses to 32 Amended Complaint *and,* Amended COUNTERCLAIM against Aaron Allen by Reliaquest, LLC.(Kent, Dean) (Entered: 08/16/2024) |
| 08/19/2024 | 49 | NOTICE of Filing Omitted Exhibit "A" by Reliaquest, LLC re 48 ANSWER and affirmative defenses, Amended COUNTERCLAIM (Kent, Dean) (Modified on 8/19/2024, to edit text) (BGR). (Entered: 08/19/2024) |
| 09/05/2024 | 50 | MOTION to Dismiss by Aaron Allen. (Attachments: # 1 Text of Proposed Order)(Tygar, Ian) (Entered: 09/05/2024) |
| 09/05/2024 | 51 | MOTION to Strike by Aaron Allen. (Attachments: # 1 Text of Proposed Order)(Tygar, Ian) (Entered: 09/05/2024) |
| 09/19/2024 | 52 | RESPONSE in Opposition re 50 MOTION to Dismiss filed by Reliaquest, LLC. (Kent, Dean) (Entered: 09/19/2024) |
| 09/19/2024 | 53 | RESPONSE in Opposition re 51 MOTION to Strike filed by Reliaquest, LLC. (Kent, Dean) (Entered: 09/19/2024) |
| 09/24/2024 | 54 | MOTION for Leave to File Reply to Defendant's Response to Plaintiff's Motion to Dismiss by Aaron Allen. (Attachments: # 1 Text of Proposed Order)(Tygar, Ian) Modified text on 9/25/2024 (MCB). (Entered: 09/24/2024) |
| 09/24/2024 | 55 | MOTION for Leave to File Reply to Defendant's Response to Plaintiff's Motion to Strike by Aaron Allen. (Attachments: # 1 Text of Proposed Order)(Tygar, Ian) Modified text on 9/25/2024 (MCB). (Entered: 09/24/2024) |
| 09/30/2024 | 56 | **ENDORSED ORDER: Plaintiff's 54 Motion for Leave to File Reply to Defendant's Response to Plaintiff's Motion to Dismiss is denied. If necessary to resolve the pending motion, the Court will direct the parties to file supplemental memoranda or set a hearing to further address the legal issues and arguments in this case. Signed by Judge Thomas P. Barber on 9/30/2024. (KMP)** (Entered: 09/30/2024) |
| 09/30/2024 | 57 | **ENDORSED ORDER: Plaintiff's 55 Motion for Leave to File Reply to Defendant's Response to Plaintiff's Motion to Strike is denied. If necessary to resolve the pending motion, the Court will direct the parties to file supplemental memoranda or set a hearing to further address the legal issues and arguments in this case. Signed by Judge Thomas P. Barber on 9/30/2024. (KMP)** (Entered: 09/30/2024) |

| | | |
|---|---|---|
| 10/16/2024 | 58 | MOTION for Thirty Day Enlargement of Discovery Deadlines in Case Management and Scheduling Order by Reliaquest, LLC. (Kent, Dean) Modified on 10/17/2024 to edit docket text and motion text (JDR). (Entered: 10/16/2024) |
| 10/16/2024 | 59 | MOTION for Summary Judgment *on the Amended Complaint (Doc. 32)* by Reliaquest, LLC. (Kent, Dean) (Entered: 10/16/2024) |
| 10/18/2024 | 60 | **ENDORSED ORDER granting 58 Motion for Extension of Time to Complete Discovery. The parties shall complete all discovery no later than December 16, 2024. All other deadlines in the governing scheduling order remain the same. Signed by Judge Kathryn Kimball Mizelle on 10/18/2024. (Mizelle, Kathryn)** (Entered: 10/18/2024) |
| 11/06/2024 | 61 | RESPONSE to Motion re 59 MOTION for Summary Judgment *on the Amended Complaint (Doc. 32)* filed by Aaron Allen. (Attachments: # 1 Exhibit Declaration of Aaron Allen)(Tygar, Ian) (Entered: 11/06/2024) |
| 11/12/2024 | 62 | MEDIATION report Hearing held on 11/12/2024. Hearing outcome: Impasse. (Flaxman, Neil) (Entered: 11/12/2024) |
| 11/26/2024 | 63 | NOTICE by Reliaquest, LLC of Issuance of Non−Party Subpoenas (Kent, Dean). (Entered: 11/26/2024) |
| 11/30/2024 | 64 | MOTION for Ian Tygar to Withdraw as Attorney by Aaron Allen. (Tygar, Ian) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 11/30/2024) |
| 12/04/2024 | 65 | MOTION to Quash Subpoena to Produce Documents by Wenzel Fenton Cabassa, P.A.. (Attachments: # 1 Exhibit)(Wenzel, Steven) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 12/04/2024) |
| 12/05/2024 | 66 | NOTICE of hearing on motion re 65 MOTION to Quash Subpoena to Produce Documents . Motion Hearing set for 12/18/2024 at 10:00 AM VIA ZOOM before Magistrate Judge Anthony E. Porcelli. (LV) (Entered: 12/05/2024) |
| 12/07/2024 | 67 | MOTION for Extension of Time to Complete Discovery by Aaron Allen. (Attachments: # 1 Exhibit "A")(Tygar, Ian) (Entered: 12/07/2024) |
| 12/09/2024 | 68 | SUPPLEMENT re 65 MOTION to Quash Subpoena to Produce Documents by Wenzel Fenton Cabassa, P.A.. (Wenzel, Steven) (Entered: 12/09/2024) |
| 12/09/2024 | 69 | NOTICE of WITHDRAWAL of motion 67 by Aaron Allen. (Tygar, Ian) Modified text and linked entries on 12/10/2024 (GL). (Entered: 12/09/2024) |
| 12/10/2024 | 70 | **ENDORSED ORDER denying as moot 67 Motion for Extension of Time to Complete Discovery in the light of the 69 Notice of Withdrawal. Signed by Judge Kathryn Kimball Mizelle on 12/10/2024. (KMP)** (Entered: 12/10/2024) |
| 12/16/2024 | 71 | RESPONSE in Opposition re 64 MOTION for Ian Tygar to Withdraw as Attorney filed by Reliaquest, LLC. (Kent, Dean) (Entered: 12/16/2024) |
| 12/18/2024 | 72 | Minute Entry. Virtual Proceedings held before Magistrate Judge Anthony E. Porcelli: MOTION HEARING held on 12/18/2024 re 64 MOTION for Ian Tygar to Withdraw as Attorney filed by Aaron Allen, 65 MOTION to Quash Subpoena to Produce Documents filed by Wenzel Fenton Cabassa, P.A. (digital) (LV) (Entered: 12/18/2024) |
| 12/18/2024 | 74 | |

| | | |
|---|---|---|
| | | **ENDORSED ORDER denying as moot 65 Motion to Quash. In light of Defendant's pending Motion for Summary Judgment (Doc. 59) and the parties' agreement to stay discovery, the matter is denied as moot. If the Motion for Summary Judgement is denied, the matter shall be reopened upon Defendant's request. At such time, Defendant is further directed to contact nonparty Steven Wenzel of Wenzel Fenton Cabassa, P.A. and inform him of the matter's status. Signed by Magistrate Judge Anthony E. Porcelli on 12/18/2024. (KBP)** (Entered: 12/18/2024) |
| 12/18/2024 | 75 | **ORDER granting 64 Motion to Withdraw as Attorney. See Order for further details. Signed by Magistrate Judge Anthony E. Porcelli on 12/18/2024. (KBP)** (Entered: 12/18/2024) |
| 04/17/2025 | 76 | **ORDER denying the plaintiff's 50 Motion to Dismiss and 51 Motion to Strike. Signed by Judge Kathryn Kimball Mizelle on 4/17/2025. (KMP)** (Entered: 04/17/2025) |
| 05/01/2025 | 77 | **ORDER granting the 59 Motion for Summary Judgment. Because the defendant's counterclaims remain pending and the plaintiff proceeds pro se, the parties are directed, no later than May 8, 2025, to file a notice informing the Court whether another mediation would prove more efficient than proceeding to trial. Signed by Judge Kathryn Kimball Mizelle on 5/1/2025. (KMP)** (Entered: 05/01/2025) |
| 05/08/2025 | 78 | NOTICE Regarding Mediation by Reliaquest, LLC re 77 Order on Motion for Summary Judgment (Kent, Dean) Modified text on 5/9/2025 (MGB). (Entered: 05/08/2025) |
| 05/28/2025 | 79 | **ENDORSED ORDER: In the light of the parties' representations in the 78 Notice Regarding Mediation, the 41 Case Management and Scheduling Order is VACATED. ReliaQuest must move for default against Allen for its counterclaims under Local Rule 1.10 no later than June 4, 2025. Signed by Judge Kathryn Kimball Mizelle on 5/28/2025. (KMP)** (Entered: 05/28/2025) |
| 06/04/2025 | 80 | MOTION for Default Judgment against Aaron Allen *on Liability on Amended Counterclaims and Incorporated Memorandum of Law* by Reliaquest, LLC. (Kent, Dean) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 06/04/2025) |
| 06/16/2025 | 81 | NOTICE of Appearance by Matthew P. Farmer on behalf of Aaron Allen (Farmer, Matthew) (Entered: 06/16/2025) |
| 06/18/2025 | 82 | RESPONSE in Opposition re 80 MOTION for Default Judgment against Aaron Allen *on Liability on Amended Counterclaims and Incorporated Memorandum of Law* filed by Aaron Allen. (Farmer, Matthew) (Entered: 06/18/2025) |
| 06/26/2025 | 83 | NOTICE of hearing: Status Conference set for 7/1/2025 at 02:30 PM VIA ZOOM before Magistrate Judge Anthony E. Porcelli. Zoom information to be sent via email to counsel of record.(LV) (Entered: 06/26/2025) |
| 07/01/2025 | 84 | Minute Entry. In Person Proceedings held before Magistrate Judge Anthony E. Porcelli: STATUS CONFERENCE held on 7/1/2025. (DIGITAL) (LV) (Entered: 07/01/2025) |
| 07/10/2025 | 85 | NOTICE of hearing: Settlement Conference set for 7/21/2025 at 02:00 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson. (Note: Please email |

| | | |
|---|---|---|
| | | your individual mediation statement to CHAMBERS_FLMD_WILSON@flmd.uscourts.gov by Friday, July 18, 2025 at 2:30pm.) (KMN) (Entered: 07/10/2025) |
| 07/14/2025 | 86 | MOTION to Continue *Settlement Conference* by Aaron Allen. (Farmer, Matthew) (Entered: 07/14/2025) |
| 07/14/2025 | 87 | **ENDORSED ORDER REFERRING MOTION: 86 MOTION to Continue *Settlement Conference* filed by Aaron Allen. Signed by Judge Kathryn Kimball Mizelle on 7/14/2025. (KMP) Motions referred to Magistrate Judge Anthony E. Porcelli.** (Entered: 07/14/2025) |
| 07/16/2025 | 88 | Unopposed MOTION to Continue *Settlement Conference* by Aaron Allen. (Farmer, Matthew) (Entered: 07/16/2025) |
| 07/17/2025 | 89 | **ENDORSED ORDER granting 86 Motion to Continue. Signed by Magistrate Judge Thomas G. Wilson on 7/17/2025. (KMN)** (Entered: 07/17/2025) |
| 07/17/2025 | 90 | **ENDORSED ORDER granting 88 Motion to Continue. Signed by Magistrate Judge Thomas G. Wilson on 7/17/2025. (KMN)** (Entered: 07/17/2025) |
| 07/17/2025 | 91 | NOTICE OF RESCHEDULING HEARING: The Settlement Conference hearing previously scheduled for 7/21/2025 is rescheduled. New scheduling date and time: Settlement Conference set for 7/30/2025 at 02:00 PM in Tampa Courtroom 12 A before Magistrate Judge Thomas G. Wilson (KMN) (Entered: 07/17/2025) |
| 07/28/2025 | 92 | Unopposed MOTION to Continue *Settlement Conference* by Aaron Allen. (Farmer, Matthew) (Entered: 07/28/2025) |
| 07/29/2025 | 93 | **ORDER granting 92 Motion to Continue. Signed by Magistrate Judge Thomas G. Wilson on 7/29/2025. (KMN)** (Entered: 07/29/2025) |
| 07/29/2025 | 94 | NOTICE canceling Settlement Conference hearing scheduled for 7/30/2025. (KMN) (Entered: 07/30/2025) |
| 11/03/2025 | 95 | **ENDORSED ORDER: By November 7, 2025, the parties are directed to propose a new date for the settlement conference, to take place no later than December 12, 2025. If the parties decline to participate in the previously scheduled settlement conference, the Court will adjudicate the pending 80 Motion for Default Judgment. Signed by Judge Kathryn Kimball Mizelle on 11/3/2025. (PBH)** (Entered: 11/03/2025) |
| 11/06/2025 | 96 | NOTICE by Reliaquest, LLC re 95 Order (Kent, Dean) (Entered: 11/06/2025) |
| 11/06/2025 | 97 | NOTICE by Aaron Allen re 95 Order (Farmer, Matthew) (Entered: 11/06/2025) |
| 11/13/2025 | 98 | **ORDER scheduling mediation conference. Mediation Conference set for 12/10/2025 at 10:00 AM in Tampa Courtroom 11B before Magistrate Judge Sean P. Flynn. Signed by Magistrate Judge Sean P. Flynn on 11/13/2025. (WFM)** (Entered: 11/13/2025) |
| 12/04/2025 | 99 | NOTICE of Appearance by Timothy James Fitzgerald on behalf of Aaron Allen (Fitzgerald, Timothy) (Entered: 12/04/2025) |
| 12/05/2025 | 100 | MOTION to appear by video by Aaron Allen. (Farmer, Matthew) (Entered: 12/05/2025) |

| | | |
|---|---|---|
| 12/08/2025 | 101 | **ENDORSED ORDER denying 100 Plaintiff/Counter−Defendant's Motion to Permit Remote Attendance at Mediation. The Court expects all parties and their representatives to appear in person at the December 10, 2025 mediation. Signed by Magistrate Judge Sean P. Flynn on 12/8/2025. (WFM)** (Entered: 12/08/2025) |
| 12/10/2025 | 102 | Minute Entry. In Person Proceedings held before Magistrate Judge Sean P. Flynn: STATUS CONFERENCE held on 12/10/2025. (Digital) (ABC) (Entered: 12/10/2025) |
| 12/10/2025 | 103 | **ORDER for Plaintiff/Counter−Defendant Aaron Allen to show cause as to why he should not be held in contempt or otherwise sanctioned for failing to appear at the December 10, 2025 mediation. Show Cause Response due by 12/17/2025. Signed by Magistrate Judge Sean P. Flynn on 12/10/2025. (WFM)** (Entered: 12/10/2025) |
| 12/17/2025 | 104 | NOTICE by Reliaquest, LLC re 102 Status Conference */Mediation* (Kent, Dean) (Entered: 12/17/2025) |
| 12/17/2025 | 105 | NOTICE by Aaron Allen *Regarding Mediation* (Farmer, Matthew) (Entered: 12/17/2025) |
| 12/17/2025 | 106 | RESPONSE TO ORDER TO SHOW CAUSE re 103 Order to show cause filed by Aaron Allen. (Farmer, Matthew) (Entered: 12/17/2025) |
| 12/17/2025 | 107 | RESPONSE TO ORDER TO SHOW CAUSE re 103 Order to show cause filed by Aaron Allen. (Attachments: # 1 Exhibit 2: Airline Reservation)(Farmer, Matthew) Modified on 12/18/2025 to edit docket text (JDR). (Entered: 12/17/2025) |
| 12/17/2025 | 108 | MOTION to file DOCUMENT *Exhibit 1 to "Plaintiff/Counter−Defendant's Response to Order to Show Cause" (Doc. 103)* under seal by Aaron Allen (Attachments: # 1 Proposed Sealed Item Exhibit 1: Medical Record, # 2 Text of Proposed Order Granting Motion to Seal)(Farmer, Matthew).Motions referred to Magistrate Judge Anthony E. Porcelli. Modified on 12/18/2025 to edit docket text (JDR). (Entered: 12/17/2025) |
| 12/18/2025 | 109 | **ENDORSED ORDER granting 108 Motion to seal. The Clerk is directed to seal [108−1] Exhibit 1 to Plaintiff/Counter−Defendant's Response to Order to Show Cause. Signed by Magistrate Judge Sean P. Flynn on 12/18/2025. (Flynn, Sean)** Modified on 12/18/2025 (Flynn, Sean). (Entered: 12/18/2025) |
| 12/18/2025 | 110 | MOTION to file Supplement under seal by Aaron Allen (Attachments: # 1 Supplement to Plaintiff/Counter−Defendant's Response to Order to Show Cause, # 2 Exhibit 1 To Supplement to Plaintiff/Counter−Defendant's Response to Order to Show Cause, # 3 Text of Proposed Order)(Farmer, Matthew).Motions referred to Magistrate Judge Anthony E. Porcelli. Modified on 12/19/2025 to edit docket text (ELA). (Entered: 12/18/2025) |
| 12/19/2025 | 111 | **ENDORSED ORDER granting 110 Motion to seal. Signed by Magistrate Judge Anthony E. Porcelli on 12/19/2025. (SEC)** (Entered: 12/19/2025) |
| 01/06/2026 | 112 | **ORDER re 103 Order to show cause. Aaron Allen is directed to pay Reliaquest's reasonable expenses in traveling to and attending the December 10, 2025, mediation. Signed by Magistrate Judge Sean P. Flynn on 1/6/2026. (WFM)** (Entered: 01/06/2026) |
| 01/09/2026 | 113 | |

| | | |
|---|---|---|
| | | NOTICE of hearing on motion re 80 MOTION for Default Judgment against Aaron Allen *on Liability on Amended Counterclaims and Incorporated Memorandum of Law*. Motion Hearing set for 1/14/2026 at 10:00 AM VIA ZOOM before Magistrate Judge Anthony E. Porcelli. (LV) (Entered: 01/09/2026) |
| 01/14/2026 | 114 | Minute Entry. Virtual Proceedings held before Magistrate Judge Anthony E. Porcelli: MOTION HEARING held on 1/14/2026 re 80 MOTION for Default Judgment against Aaron Allen *on Liability on Amended Counterclaims and Incorporated Memorandum of Law* filed by Reliaquest, LLC. (digital) (LV) (Entered: 01/14/2026) |
| 01/14/2026 | 115 | **ORDER denying 80 Motion for Default Judgment. See Order for further details. Signed by Magistrate Judge Anthony E. Porcelli on 1/14/2026. (CPK)** (Entered: 01/14/2026) |
| 01/15/2026 | 116 | **ENDORSED ORDER: In the light of the Court's 115 Order, the parties are directed to file a revised Case Management Report no later than January 22, 2026. Signed by Judge Kathryn Kimball Mizelle on 1/15/2026. (PBH)** (Entered: 01/15/2026) |
| 01/20/2026 | 117 | REPLY to 48 Amended Counterclaim by Aaron Allen. Related document: 48 Answer to Amended Complaint, Amended Counterclaim filed by Reliaquest, LLC. (Farmer, Matthew) (Entered: 01/20/2026) |
| 01/22/2026 | 118 | MOTION re Expenses Incurred in Connection with Preparing for and Attending December 10, 2025 Mediation (Kent, Dean) Modified on 1/26/2026 to construe notice as motion at request of chambers (GSO). (Entered: 01/22/2026) |
| 01/22/2026 | 119 | CASE MANAGEMENT REPORT. (Kent, Dean) (Entered: 01/22/2026) |
| 01/30/2026 | 120 | RESPONSE re 118 Motion for Miscellaneous Relief filed by Aaron Allen. (Farmer, Matthew) (Entered: 01/30/2026) |
| 02/02/2026 | 121 | NOTICE of hearing: Status Conference set for 2/24/2026 at 10:30 AM VIA ZOOM before Magistrate Judge Anthony E. Porcelli.(LV) (Entered: 02/02/2026) |
| 02/13/2026 | 122 | **ORDER granting in part and denying in part 118 Defendant/Counter−Plaintiff Reliaquest's construed motion to approve the amount Plaintiff/Counter−Defendant Aaron Allen is to reimburse it under the Court's prior Order (103). Signed by Magistrate Judge Sean P. Flynn on 2/13/2026. (WFM)** (Entered: 02/13/2026) |
| 02/24/2026 | 123 | Minute Entry. Virtual Proceedings held before Magistrate Judge Anthony E. Porcelli: STATUS CONFERENCE held on 2/24/2026. (digital) (LV) (Entered: 02/24/2026) |
| 02/26/2026 | 124 | **ENDORSED ORDER: No later than March 5, 2026, and in a brief no longer than ten pages, each party may address whether the Court should exercise supplemental jurisdiction over Defendant's state law counterclaims. *See* 28 U.S.C. 1367(c)(3); *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1249 (M.D. Fla. 2022) ("In the ordinary course, where the federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should decline supplemental jurisdiction."), *aff'd*, 124 F.4th 1273 (11th Cir. 2024). Signed by Judge Kathryn Kimball Mizelle on 2/26/2026. (PBH)** (Entered: 02/26/2026) |
| 02/28/2026 | 125 | RESPONSE re 124 Order filed by Aaron Allen. (Farmer, Matthew) (Entered: 02/28/2026) |

| | | |
|---|---|---|
| 03/05/2026 | 126 | MEMORANDUM in support re 124 Order filed by Reliaquest, LLC. (Kent, Dean) (Entered: 03/05/2026) |
| 03/11/2026 | 127 | NOTICE of change of address by Dean Adrian Kent (Kent, Dean) (Entered: 03/11/2026) |
| 03/16/2026 | 128 | **ORDER: ReliaQuest's counterclaims are DISMISSED without prejudice. The Clerk is directed to ENTER JUDGMENT, which shall read: "Judgment is entered against Aaron Allen and in favor of ReliaQuest, LLC, on all claims in Allen's Complaint. ReliaQuest's counterclaims are DISMISSED without prejudice." The Clerk is further directed to TERMINATE any pending motions or deadlines and to CLOSE this case. Signed by Judge Kathryn Kimball Mizelle on 3/16/2026. (PBH)** (Entered: 03/16/2026) |
| 03/18/2026 | 129 | **JUDGMENT in favor of Reliaquest, LLC against Aaron Allen. Signed by Deputy Clerk on 3/18/2026. (JTM)** (Entered: 03/18/2026) |
| 03/18/2026 | 130 | NOTICE of Local Rule 1.11(e), which provides that, unless an order states another time, a seal under Rule 1.11 expires ninety days after a case is closed and all appeals are exhausted. To prevent the content of a sealed item from appearing on the docket after the seal expires, a party or interested non−party must move for relief before the seal expires. (Signed by Deputy Clerk). (JTM) (Entered: 03/18/2026) |
| 04/17/2026 | 131 | NOTICE OF APPEAL as to 129 Judgment by Aaron Allen. Filing fee $605, receipt number AFLMDC−24804224. ***Case Stayed. (Farmer, Matthew) (Entered: 04/17/2026) |
| 04/20/2026 | 132 | TRANSMITTAL of initial appeal package to the U.S. Court of Appeals − 11th Circuit re 131 Notice of Appeal. Filing fee paid. (LD) (Entered: 04/20/2026) |
| 04/21/2026 | | ***11th Circuit Case Number: 26−11298−E for 131 Notice of Appeal filed by Aaron Allen. (MCB) (Entered: 04/21/2026) |
| 05/01/2026 | 133 | NOTICE by Reliaquest, LLC re 129 Judgment, 131 Notice of Appeal, 128 Order Dismissing Case *of Cross−Appeal* (Kent, Dean) Modified on 5/1/2026; Counsel notified to refile using the Notice of Cross Appeal event (ELA). (Entered: 05/01/2026) |
| 05/01/2026 | 134 | NOTICE OF CROSS APPEAL as to 129 Judgment, 128 Order Dismissing Case by Reliaquest, LLC. Filing fee paid $605, receipt number AFLMDC−24884096. (Kent, Dean) (Entered: 05/01/2026) |
| 05/03/2026 | 135 | TRANSCRIPT information form filed by Aaron Allen re 131 Notice of Appeal. USCA number: 26−11298−E. No transcript(s) requested. (Farmer, Matthew) (Entered: 05/03/2026) |
| 05/04/2026 | 136 | TRANSMITTAL of initial appeal package to the U.S. Court of Appeals − 11th Circuit re 134 Notice of Cross Appeal. Filing fee paid. (CTR) (Entered: 05/04/2026) |
| 05/04/2026 | | ***11th Circuit Case Number: 26−11298−EE for 131 Notice of Appeal filed by Aaron Allen. (SET) (Entered: 05/04/2026) |
| 09/09/2026 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Florida certifies that the record is complete for the purposes of this appeal re: 134 Notice of Cross Appeal. All documents are imaged and available. USCA number: 26−11298−E. (AW) (Entered: 09/11/2026) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AARON ALLEN )
)
Plaintiff ) Case No. 8:23-cv-806
)
vs. )
)
RELIAQUEST, LLC. )
)
Defendant )
)
)
)
)

**AMENDED COMPLAINT**

Plaintiff AARON ALLEN ("ALLEN" or Plaintiff) by and through his undersigned attorneys files this Amended Complaint against Defendant RELIAQUEST, LLC. ("RELIAQUEST" or Defendant) alleges and says as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 41 U.S.C. Section 2000e et seq., 42 U.S.C. Section 1981, and Plaintiff also joins an intertwined Florida statutory claim, the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes Section 760.01, et. Seq., and 42 U.S.C. § 1981.

2. Jurisdiction is conferred upon this Court by 42 U.S.C. Sect. 2000e-5; 28 U.S.C. Sect. 1331; and 28 U.S.C. Sect. 1343.

3. The supplemental jurisdiction of this Court is invoked with respect to ALLEN's claims under the law of Florida pursuant to:

a. Title 20 U.S.C. Sect. 1376(a), because the Florida claim is so related to the federal claims with the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution; and,

b. Title 28 U.S.C. Sect. 1343, because the claim arises out of the same operative facts as the federal claim, and is such that the parties would ordinarily expect to try them in one proceeding.

4. Venue is proper for the United States District Court for the Middle District of Florida because:

a. ALLEN was employed in the Middle District of Florida by Defendant which at all material times conducted, and continues to conduct, business in the Middle District of Florida;

b. The acts that gave rise to ALLEN's claims occurred within the Middle District of Florida pursuant to 42 U.S.C. Sect. 2000e-5(f)(3) and 42 U.S.C. Sect. 1391 "b" and "c"; and

c. The Defendant is subject to jurisdiction of the Middle District of Florida.

**CONDITIONS PRECEDENT**

5. ALLEN has complied with all conditions precedent in this case, or they have been waived.

6. ALLEN timely filed a Charge of Discrimination against the Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

7. A Notice of Right to Sue letter was issued on January 17, 2023, a copy of which is attached hereto as Exhibit "A".

8. Accordingly, this lawsuit is being filed within the 90 days' time in which to file.

**PARTIES**

9. ALLEN is a permanent resident of the United States, who during all material times resided in the Middle District of Florida.

10. At all times material hereto, ALLEN, is a Native American and African-American male.

11. Defendant is a corporation organized and existing under the laws of Florida whose principal address is 1001 Water Street Suite 1900 TAMPA, FL 33602 and all times material, conducted a continuous business in the Southern District of Florida.

12. The Defendant is an "employer" within the meaning of the Title VII and the Florida Civil Rights Act.

13. The Defendant is engaged in an " industry affecting commerce" within the meaning of Title VII.

14. During all times material, ALLEN was an "employee" of Defendant as defined by Title VII and the Florida Civil Rights Act.

15. At some or all times material to this action, the Defendant and some of its representatives engaged in unlawful discriminatory practices against ALLEN, which were motivated at least in part by ALLEN being Native American and African-American.

## FACTUAL ALLEGATIONS

16. ALLEN began working for RELIAQUEST on November 1, 2021, as a Detection Architect as part of their Detection Operations Team working at 777 S Harbor Suite 500 Tampa, FL.

17. At all times material, ALLEN was qualified to perform his job with Defendant within the legitimate expectations of his employer.

18. ALLEN was an employee in good standing with the Defendant prior to termination.

19. On March 21, 2022, ALLEN was terminated.

20. The reason RELIAQUEST gave to ALLEN for his termination was "made mistakes" and "did not talk during a meeting with a customer who was threatening to leave."

21. RELIAQUEST employed less than five African-American workers in ALLEN'S Department but none had leadership roles.

22. Within the higher paying management orientated positions blacks are only represented at a "Token" level or not at all.

23. Higher positions are kept from Blacks, and blacks are limited in promotion.

24. A former African American Manager, Freddie Holyfield Jr., was let go despite other employees complimenting his work.

25. Within the Detections Operations Team ALLEN was subject to constant discriminatory and harassing treatment that pervades RELIAQUEST including

    a. Being referred to as their "WORK HORSE" at least twice by RELIAQUEST management in the Detection Operations Team.

b. Being subject to a racially charged meme as a form of cultural insult for being black. When Allen responded to the racially charged meme with "racial stereotypes not a good look, RQ" a co-worker commented on his post with a laughing emoji.

c. Being told by his direct supervisor, Ray Miller, informing him from day one that he would probably not be a manager within a year. Further, he discouraged ALLEN from applying for management roles despite having approximately five years of management experience.

d. Being told that he could not participate in "UPSELL OPPORTUNITIES" that would lead to additional income despite other employees in similar situated roles being allowed to participate. Refused compensation for any of his referrals despite being promised on multiple occasions that submissions were worth $5,000.00 for each successful referral.

e. Being denied access to training directly related to what they asked me to accomplish.

f. Being denied opportunity to transfer to a different role, which was promised (by Casey Martin).

g. Being falsely accused of not complying with a customer request to review detection rules with them.

26. Other similarly situated non- African-American and non-Native American employees of RELIAQUEST were treated differently than the Plaintiff when accused of similar wrong doings.

27. On March 21, 2022 ALLEN was terminated and presented with a Severance Agreement and told to sign it.

28. ALLEN did not participate in the creation of the Severance Agreement but did request one single minor change that RELIAQUEST remove the word covenant as it goes against his religious beliefs.

29. Section 6 of the Severance Agreement states in part:

> "This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission."

30. On March 21, 2022, prior to signing the severance agreement, ALLEN met with Senior Vice President of Development and Engagement, Scott Noonan in a meeting office with two other managers, in which Mr. Noonan explained the Severance Agreement and further stated that by signing the severance agreement, ALLEN would waive all claims against RELIAQUEST except those protected by law such as racial discrimination claims which fell under EEOC Claims.

31. Specifically, on March 21, 2022 in the meeting, Mr. Noonan told ALLEN that: *"this does not apply to any federal claims such as with the EEOC or other federal labor rights."*

32. On March 21, 2022, Scott Noonan further represented to ALLEN that he would have seven days to sign the Severance Agreement.

33. ALLEN contacted several lawyers but was unable to schedule a consultation within a weeks' time let alone have a lawyer review the Severance Agreement therefore he was unable to hire legal counsel.

34. On April 4, 2022, ALLEN relied on the statements made by Mr. Noonan regarding the Severance Agreement, specifically that his EEOC claims were excluded from the Section 6 general release and that he could sue after he signed and executed the Severance Agreement.

35. ALLEN filed a claim against RELIAQUEST for its discriminatory conduct with the EEOC.

36. The EEOC gave ALLEN a right to sue letter and he initiated this action.

**COUNT I**
**TITLE VII CLAIM FOR DISCRIMINATION**

37. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

38. The Defendant has engaged in unlawful employment practices and policies in the terms and conditions of Plaintiff's employment in violation of 42 U.S.C. Section 2600e et. Seq. the discriminatory practices include, but are not limited to:

    a. Treating African-American employees differently from non-African-American employees in the terms and conditions of employment, including promoting, work environment, and firing; and

    b. Terminating Plaintiff's employment.

39. The effect of the practices complained of above has been to deprive Plaintiff equal employment opportunities and otherwise adversely affect his status as an employee because of his race. Specifically, Plaintiff was subject to continually harassment, was withheld opportunities to advance and was subject to disparaging treatment in the enforcement of conflicting policies that lead to his ultimate termination.

40. A direct and proximate result of the intentional and premeditated discriminatory acts by the Defendant with respect to this discrimination in the terms and conditions of ALLEN'S employment, Plaintiff has been damaged which includes but is not limited to back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages.

WHEREFORE, the Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

**COUNT II**
**FLORIDA CIVIL RIGHTS ACT CLAIM FOR DISCRIMINATION**

41. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

42. The Defendant has engaged in unlawful employment practices and policies in the terms and conditions of Plaintiff's employment in violation of The Florida Civil Rights Act. Florida Status Section 760.01, et. Seq. The discriminatory practices include, but are not limited to:

   a. Treating African-American employees differently from non-African-American employees; and

   b. Terminating Plaintiff's employment.

43. The effect of the practices complained of above has been to deprive Plaintiff equal employment opportunities and other wise adversely affect his status as an employee because of his race.

44. A direct and proximate result of the intentional and premeditated discriminatory acts by the Defendant with respect to this discrimination in the terms and conditions of ALLEN's employment, Plaintiff has been damaged which includes but is not limited to back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages, all of which injuries and losses are continuing and permanent in nature.

WHEREFORE, Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

**COUNT III**
**RACE DISCRIMINATION (TITLE VII)**

45. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

46. The Defendant discriminated against ALLEN on the basis of his race, black and Native American, by subjecting the Plaintiff to different terms and conditions of employment and terminating his employment for pretexual reasons.

47. The actions of the Defendant constitute an intentional violation of Title VII, and as a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, ALLEN has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

48. The Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

**COUNT IV**
**RACE DISCRIMINATION (SECTION 1981)**

49. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

50. The Defendant discriminated against ALLEN on account of his race, black and Native American, by subjecting the Plaintiff to different terms and conditions of employment and terminating his employment for pretexual reasons.

51. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined:
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. §1981

52. 42 U.S.C. Section 1981 forbids discrimination in the making and enforcing of contracts based on race.

53. The treatment that the Plaintiff has suffered at the hands of the Defendant was racially motivated and has breached or interfered with the Plaintiff's rights under Section 1981.

54. Plaintiff is a member of African and Native origin and was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

55. The Plaintiff's race was at least a motivating factor in the decision to terminate his employment with RELIAQUEST.

56. The Plaintiff's race was at least a motivating factor in not allowing him opportunities to advance further within the company.

57. The Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. The Defendant and its supervisory personnel were aware that discrimination on the basis of race was unlawful but acted in reckless disregard of the law.

58. The Defendant through the actions of its agents outrageously disregarded the requirements to investigate and remedy the claims of discrimination.

59. The actions of the Defendant constitute a violation of Section 1981, and as a direct, natural, foreseeable and proximate result of the actions and inactions of the Defendant, the Plaintiff has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

60. The Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, The Plaintiff requests:

(a) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(b) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(c) Any other equitable relief deemed appropriate by this Court.

**COUNT V**
**RACE DISCRIMINATION (FLORIDA CIVIL RIGHTS ACT)**

61. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

62. The Defendant discriminated against Plaintiff on the basis of his race, black and Native, by subjecting the Plaintiff to different terms and conditions of employment and terminating his employment for pretextual reasons.

63. The actions of the Defendant constitute an intentional violation of the FCRA, and as a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, the Plaintiff has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

64. The Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(d) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(e) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(f) Any other equitable relief deemed appropriate by this Court.

**COUNT VI**
**RETALIATION UNDER TITLE VII**
**42 U.S.C. § 2000e–3**

65. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

66. The Plaintiff participated in a protected activity by making known his concerns regarding a racially charged meme during a Microsoft Teams Meeting in March of 2022.

67. After making his concerns known regarding a racially charged meme in writing, the Plaintiff experienced further concentrated acts of discrimination against himself.

68. Instead of investigating the reported alleged wrongdoing, the employer defendant terminated the Plaintiff instead.

69. As a result of the above actions, the defendant employer violated U.S.C. § 2000e–3 and Plaintiff has suffered damages therefrom.

70. As a direct, natural, foreseeable and proximate result of the actions and inactions of Defendant, Plaintiff has suffered injuries and losses including a violation of his statutory rights, mental pain and suffering and extreme emotional stress; loss of ability to lead a normal life; lost wages and benefits and other economic losses, all of which injuries and losses are continuing and permanent in nature.

71. Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(g) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(h) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(i) Any other equitable relief deemed appropriate by this Court.

**COUNT VII**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**Disparate Treatment/Failure to Accommodate on the Basis of Religion**
**(42 U.S.C. § 2000e, *et seq.*)**

72. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

73. Title VII forbids an employer from refusing a job to someone because of her/his need for a religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

74. This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

75. A plaintiff can therefore make out a prima facie case under Title VII by showing (1) she/he held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision.

76. Plaintiff is a devote Messianite.

77. Plaintiff participates actively in his religion going to Church at-least once a week and holding the Sabbath.

78. Plaintiff submitted a leave request a year in advance to abide by religious holiday.

79. Defendant took adverse action against the Plaintiff by scheduling an impromptu group mandatory training session in which Plaintiff had to miss.

80. Plaintiff's religious practice was the motivating factor in Defendant's decision to schedule the mandatory training session.

81. Plaintiff has retained the services of the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

WHEREFORE, the Plaintiff requests:

(j) Entry of a judgment for restitution, compensatory and punitive damages including, but not limited to, damages for mental pain and suffering, anguish, injury of reputation and loss of capacity to enjoy life, back pay, front pay and interest;

(k) Award Plaintiff costs in this action, including reasonable attorneys' fees and expert fees as provided by Title VII; and

(l) Any other equitable relief deemed appropriate by this Court.

**COUNT VIII**
**FRAUD IN THE INDUCEMENT**

82. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

83. Florida courts have recognized that a fraud in the inducement claim may be brought where the party makes an oral promise contingent on certain circumstances and the promisor has no intention to act on that promise. See *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 304-05 (Fla. 1d DCA 1999)

84. To state a cause of action for fraud in the inducement, a complaint must allege: (i) a false statement of material fact; (ii) the maker of the false statement knew or should have known of the falsity of the statement; (iii) the maker intended that the false statement induce another's reliance; and (iv) the other party justifiably relied on the false statement to its detriment. *Sena v. Pereira*, 179 So.3d 433, 436 (Fla. 4d DCA 2015).

85. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made a false statement of material fact to ALLEN that "*this does not apply to any federal claims such as with the EEOC or other federal labor rights"* in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

86. When Mr. Noonan made the statement, he did so within the scope of his employment with the Defendant.

87. Mr. Noonan knew or should have known that his statement was false when made.

88. Mr. Noonan made the statement to induce ALLEN to rely upon it and execute the Severance Agreement.

89. ALLEN justifiably relied on the false statement to his detriment.

90. ALLEN has sustained damages as a result of the conduct of the Defendant.

91. It is a fundamental proposition that a contract induced by fraud is voidable. *Lance Holding Co. v. Ashe*, 533 So.2d 929, 930 (Fla. 5d DCA 1988).

92. Generally, the remedy for fraud in the inducement is recission of the contract. *Lower Fees, Inc. v. Bankrate, Inc*., 74 So.3d 517 (Fla. 4d DCA 2011).

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**

93. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

94. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made a misrepresentation of material fact to ALLEN that

"*this does not apply to any federal claims such as with the EEOC or other federal labor rights"* in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

95. When Mr. Noonan made the statement, he did so within the scope of his employment with the Defendant.

96. Mr. Noonan either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false.

97. Mr. Noonan made the statement to induce ALLEN to rely upon it and execute the Severance Agreement.

98. ALLEN justifiably relied on the false statement to his detriment.

99. ALLEN has sustained damages as a result of the conduct of the Defendant.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

**COUNT X**
**RECISSION OF SEVERANCE AGREEMENT (MUTUAL MISTAKE)**

100. Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein.

101. The Plaintiff and Defendant are parties to the Severance Agreement.

102. The Severance Agreement was created with little to no input from ALLEN.

103. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made statement of material fact to ALLEN that "*this does not apply to any federal claims such as with the EEOC or other federal labor rights*." in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

104. ALLEN and Noonan made a mutual mistake in concluding that the language in Paragraph 6 of the Severance Agreement excluded ALLEN'S discrimination claims so that ALLEN could file a discrimination claim against RELIAQUEST with the EEOC.

105. The mutual mistake is not the result of an excusable lack of care.

106. ALLEN has offered to restore the benefits he received under the Severance Agreement to Defendant and continues to offer such a restoration.

107. ALLEN was given a week to execute the Severance Agreement and did not have the opportunity to consult an attorney to verify the language in the Severance Agreement but did make multiple attempts to do so.

108. Moreover, neither party has not so relied on the payment in the Severance Agreement that it would be inequitable to require repayment.

109. ALLEN has no adequate remedy at law.

110. It would be inequitable to deny ALLEN's request to rescind the Severance Agreement because of ALLEN's mistake.

111. Defendant's position has not changed so that granting the relief would be unjust.

112. In granting rescission, the court should attempt to restore the parties to the status quo. Where restoration to the status quo is impossible, however, a court may still grant rescission, provided the equities between the parties can be balanced. *Braman Dodge, Inc. v. Smith*, 515 So.2d 1053, 1054 (Fla. 3d DCA 1987); *Bass v. Farish*, 616 So.2d 1146, 1147 (Fla. 4d DCA 1993) (noting an exception to the general rule when the inability of one party to restore to the status quo is caused by the fraud of the other party).

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

**COUNT XI**
**RECISSION OF SEVERANCE AGREEMENT (UNILATERAL MISTAKE)**

113.Plaintiff re-alleges paragraphs 1 through 36 as if fully set forth herein

114.The Florida Supreme Court has held that rescission of a contract may be permitted in Florida based on unilateral mistake when the mistake is not the result of an inexcusable lack of due care, and where the other party to the contract has not so far relied upon the payment that it would be inequitable to require repayment. *Maryland Cas. Co. v. Krasnek*, 174 So. 2d 541 (Fla. 1965); *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 588 (Fla. 4d DCA 1985) See also *Rachid v. Perez*, 26 So.3d 70, 71 (Fla. 3d DCA 2010) ("Under Florida law, the party seeking rescission based on unilateral mistake must establish that: (1) the mistake was induced by the party seeking to benefit from the mistake; (2) there is no negligence or want of due care on the part of the party seeking a return to the status quo; (3) denial of release from the agreement would be inequitable; and (4) the position of the opposing party has not so changed that granting the relief would be unjust."); *Joseph Buckeck Construction Corp. v. Music*, 420 So.2d 410, 414 (Fla. 1d DCA 1982). Florida law permits a party to rescind a contract based on unilateral mistake unless the mistake results from an inexcusable lack of due care or unless the other party has so detrimentally relied on the contract that it would be inequitable to order rescission. *Florida Insurance Guaranty Assoc., Inc. v. Love*, 732 So.2d 456, 457 (Fla. 2d DCA 1999).

115.The Plaintiff and Defendant are parties to the Severance Agreement.

116. The Severance Agreement was created with little to no input from ALLEN.

117. On March 21, 2022, Senior Vice President of Development and Engagement, Scott Noonan in a meeting office made statement of material fact to ALLEN that "*this does not apply to any federal claims such as with the EEOC or other federal labor rights"* in response to ALLEN questioning his right to file discrimination claims against the Defendant after signing the Severance Agreement.

118. ALLEN made a unilateral mistake in concluding that Mr. Noonan's words meant that the language in Paragraph 6 of the Severance Agreement meant that it did not include his discrimination claims so that he could file a discrimination claim against RELIAQUEST with the EEOC.

119. ALLEN's mistake was induced by Mr. Noonan seeking to benefit from ALLEN's mistaken belief.

120. ALLEN has not committed any negligent act which would preclude him from rescinding the Severance Agreement.

121. ALLEN has offered to restore the benefits he received under the Severance Agreement to Defendant and continues to offer such a restoration.

122. ALLEN mistake is not the result of an excusable lack of care.

123. ALLEN was given a week to execute the Severance Agreement and did not have the opportunity to consult an attorney to verify the language in the Severance Agreement but did make multiple attempts to do so.

124. Moreover, neither party has not so relied on the payment in the Severance Agreement that it would be inequitable to require repayment.

125. ALLEN has no adequate remedy at law.

126.It would be inequitable to deny ALLEN's request to rescind the Severance Agreement because of ALLEN's mistake.

127.Defendant's position has not changed so that granting the relief would be unjust.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to find in favor of Plaintiff and rescind the Severance Agreement together with any further relief this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated this 9 day of February, 2024.

Respectfully submitted,

/s/ Ian Tygar

Ian Tygar, Esq.
FBN: 1031848
Neil Bryan Tygar, P.A.

**VERIFICATION**

Under penalty of perjury, I declare that I have read the Amended Complaint and all the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on this 9th day of February, 2024.

Aaron R. Allen

AARON ALLEN

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 9th day of February, 2024, the foregoing document electronically filed and served upon all counsel of record via notice delivered by this Court's ECF System.

/s/ Ian Tygar
Ian Tygar, Esq.
FBN: 1031848
Neil Bryan Tygar, P.A.
Counsel for Plaintiff
5341 W. Atlantic Ave. #303
Delray Beach, FL 33130
Tel: 561-455-0280 Ext. 11
Fax: 561-455-0281
Cell: 561-305-6510
itygar@me.com

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Tampa Field Office**
501 East Polk St, Suite 1000
Tampa, FL 33602
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Aaron Allen
35246 US HWY 19 N. 182
Palm Harbor, FL 34684

Charge No: 511-2022-01475

EEOC Representative and email: STANLEY MOFFETT
Federal Investigator
stanley.moffett@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 511-2022-01475.

On behalf of the Commission,

Evangeline Hawthorne
Digitally signed by Evangeline Hawthorne
Date: 2023.01.17 10:15:55 -05'00'

Evangeline Hawthorne
District Director

**Cc:**

Reliaquest
Attn: Ms. Laura Tanner
1001 Water Street
Suite #: 1900
Tampa, FL 33602

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a “FOIA Request” or a “Section 83 Request” for Charge Number 511-2022-01475 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AARON ALLEN,

Plaintiff,

v. Case No. 8:23-cv-0806-KKM-AEP

RELIAQUEST, LLC,

Defendant.

---

# ORDER

Aaron Allen sues his former employer ReliaQuest, LLC, for race discrimination and religious discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act, FLA. STAT. § 760.01, *et seq. See* Am. Compl. (Doc. 32). Additionally, Allen raises claims for fraud in the inducement, negligent misrepresentation, and recission based on mutual mistake and unilateral mistake. *Id.* ReliaQuest contends the amended complaint should be dismissed in its entirety because Allen signed a severance agreement releasing all claims relating this his employment or termination that he may have against ReliaQuest. MTD (Doc. 35). Because the severance agreement contains a clear and unambiguous waiver of the claims Allen now asserts, the Court grants the motion in part.

## I. BACKGROUND[1]

Aaron Allen "is a Native American and African-American male." Am. Compl. (Doc. 32) ¶ 10. Allen began working for ReliaQuest in November 2021 "as a Detection Architect as part of their Detection Operations Team." *Id.* ¶ 16. Allen was terminated on March 21, 2022. *Id.* ¶ 19. The same day, ReliaQuest presented Allen with a severance agreement. *Id.* ¶ 27. Although Allen did not participate in drafting the severance agreement, Allen did request a minor change to a provision of the agreement. *Id.* ¶ 28.

Critically, Section 6 of the Severance Agreement included this waiver and release provision:

> In exchange for the consideration referred to in this Agreement, [Allen] hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which [Allen] may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including [Allen's] right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

Severance Agreement (Doc. 13-1) ¶ 6. The Severance Agreement also contained an acknowledgment provision right above Allen's signature block, which stated: "You

[1] Because the Court construes ReliaQuest's motion as one for summary judgment, the Court accepts all facts in the amended complaint as undisputed for the purposes of ruling on the instant motion.

understand you are giving up all rights you may have to recover damages from the company or reinstatement based on anything that happened before you signed this agreement. You acknowledge that you sign this agreement knowingly and voluntarily." *Id.* at 3.

Before signing the Severance Agreement, Allen met with "Senior Vice President of Development and Engagement, Scott Noonan," and two other managers. Am. Compl. ¶ 30. Noonan explained the Severance Agreement to Allen, stating that "by signing the severance agreement, Allen would waive all claims against ReliaQuest except those protected by law such as racial discrimination claims which fell under the EEOC [c]laims." *Id.* Specifically, Noon told Allen that the waiver provision "does not apply to any federal claims, such as with the EEOC or other federal labor rights." *Id.* And Noonan told Allen to take seven days to review and sign the agreement. *Id.*

Despite multiple attempts to contact legal counsel, Allen did not speak with a hired attorney before signing the Severance Agreement on April 4, 2022. *Id.* ¶¶ 33–34. As justification for signing the agreement, Allen cites to Noonan's representations. *Id.* ¶ 34.

Following the signing of the Severance Agreement, Allen filed a claim with the EEOC, alleging discriminatory behavior by ReliaQuest. *Id.* ¶ 35. The EEOC then gave Allen a right to sue letter and Allen then initiated this discrimination suit against ReliaQuest, asserting claims for (1) discrimination in violation of Title VII; (2) discrimination in violation of the Florida Civil Rights Act; (3) race discrimination in

violation of Title VII; (4) race discrimination in violation of 42 U.S.C. § 1981; (5) retaliation under Title VII; (6) religious discrimination in violation of Title VII; and (7) various contractual claims. *Id.* ¶ 36; *see also id.* ¶¶ 37–127. ReliaQuest now moves to dismiss all claims in the amended complaint. MTD at 1–3. Because resolving ReliaQuest's arguments would require the Court to interpret the parties' Severance Agreement—which is generally inappropriate at the motion to dismiss stage—I construe ReliaQuest's motion as one for summary judgment. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997) (explaining that "a district court may convert a motion to dismiss into a motion for summary judgment," if the court notifies the parties and permits the parties to submit relevant argument"). The Court notified the parties of its intent to convert ReliaQuest's motion into one for summary judgment, (Doc. 44), and the parties' submitted supplemental briefing, *see* Pl.'s Suppl. Br. (Doc. 45); Def.'s Suppl. Br. (Doc. 46).

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In a case involving contract interpretation, summary judgment is appropriate when the agreement is totally unambiguous, or when

any ambiguity may be resolved by applying the rules of construction to situations in which the parol evidence of the parties' intentions is undisputed or non-existent." *Dew Seven, LLC v. Big Lots Stores, Inc.*, 354 F. App'x 415, 416 (11th Cir. 2009) (citation and quotation omitted).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers*, 946 F.3d at 1262; *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III. ANALYSIS

At the heart of this case is the meaning of the Severance Agreement's release provision and whether it bars Allen's claims asserted in the amended complaint. The parties do not dispute the authenticity of the Severance Agreement, instead the parties disagree as to the meaning of its release provision. *See* MTD at 23; Resp. (Doc. 40) at 4–8. ReliaQuest contends the ordinary meaning of the release provision bars Allen from raising his discrimination claims asserted in the amended complaint. Def.'s Suppl. Br. at 3–4. Allen disagrees, instead arguing that the exception to the release provision carved out his right to individually sue ReliaQuest for discrimination claims that are protected by federal law. Resp. at 5–6; Pl.'s Suppl. Br. at 2–4. Upon review, the ordinary and unambiguous language of the release provision bars Allen from individually suing and seeking relief for claims relating to his employment or termination.

"The interpretation of a contract, including whether it is ambiguous, is a question of law." *S. Coal Corp. v. Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1341 (11th Cir. 2022). "Where, as here, there are no disputes of material fact concerning the terms of the relevant contracts, summary judgment is particularly appropriate." *Eaton v. Principal Life Ins. Co.*, No. 20-cv-0061, 2022 WL 972452, at *5 (M.D. Fla. Mar. 31, 2022) (citing *Kohlheim v. Glynn Cnty.*, 915 F.2d 1473, 1480 n.33 (11th Cir. 1990)); *see also Dew Seven, LLC*, 354 F. App'x at 416. For the reasons explained below, the Severance Agreement's release

provision is not ambiguous and therefore the Court may rule on the appropriate interpretation of the contract as a matter of law. *See Pan Am. W., Ltd. v. Cardinal Com. Dev., LLC*, 50 So. 3d 68, 71 (Fla. 3d DCA 2010) ("Where a contractual provision is unambiguous, no issue of fact is presented as to the meaning of the language or the parties' intent, and the moving party is entitled to judgment as a matter of law.").

### A. The Terms of the Severance Agreement, Including the Release Provision, are Clear and Unambiguous

"The cardinal rule of contract law is that a court should strive to effectuate the intent of the parties. When a contract term is clear and unambiguous, the best evidence of this intent is the term itself . . . ." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen and Firemen Retirement Sys. of the City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995). Accordingly, when interpreting a contract under Florida law, a court should first look to the language of the contract, as it is the best evidence of the parties' intent. *See Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980); *White v. Fort Myers Beach Fire Control Dist.*, 302 So. 3d 1064, 1071 (Fla. 2d DCA 2020) (citation omitted); *see also Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992) (explaining that the "intent of the parties to the contract should govern the construction of a contract" (citation omitted)). If the terms of a contract "are clear and definite, they must be understood according to their ordinary meaning." *Institutional & Supermarket*

*Equip., Inc. v. C & S Refrigeration, Inc.*, 609 So. 2d 66, 68 (Fla. 4th DCA 1992) (citation omitted).

Beginning with the plain language, the release provision is clear that Allen "release[d] and forever discharge[d] ReliaQuest from any and all claims, actions, demands, and causes of action in law or equity" that were "based on or in any way related to [Allen's] employment with ReliaQuest or the termination of that employment." Severance Agreement ¶ 6. The Severance Agreement plainly states that the only exception to this general and broad release provision is "matter that may not be released by law, including [Allen's] right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Relations Board, and the Security & Exchange Commission." *Id.* The "matter that may not be released by law" pertains only to Allen's right to file a charge or discrimination with the EEOC or Allen's right to testify, assist, or participate in an EEOC investigation, hearing, or proceeding regarding ReliaQuest. *See* EEOC, No. EEOC-NVTA-2009-2, *Q&A – Understanding Waivers of Discrimination Claims in Employee Severance Agreements* (July 15, 2009). An employee may by law release their right to file an individual lawsuit or obtain monetary relief. *Id.* Thus, the exception to the Severance Agreement's general release provision does not extend to Allen individually filing a lawsuit or individually recovering against ReliaQuest. This interpretation of the release provision is consistent with the Severance Agreement's acknowledgment provision, which

states that Allen is "giving up all rights [he] may have to recover damages from [ReliaQuest] or reinstatement based on anything that happened before you signed this agreement." *See* Severance Agreement at 3.

In sum, the release provision is clear and unambiguous, and I need not consider extrinsic evidence to determine its meaning. *See Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. 1st DCA 2005) ("[I]f a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract." (quoting *Quarterman v. City of Jacksonville*, 347 So. 2d. 1036, 1041 (Fla. 1st DCA 1977))). Simple review of the release provision makes clear that its exception does not sweep so broad to include Allen's right to file an individual lawsuit and seek relief against ReliaQuest for discrimination that occurred during his employment.

**B. Allen's Attempts to Create Ambiguity Fail**

To avoid the clear language of the Severance Agreement, Allen raises two arguments as to why the release provision's language is ambiguous. First, Allen contends that "[i]t is uncertain if the 'and' between the words 'claim' and 'relief' connects those words or separates them into different matters that are excluded from the general release." Pl.'s Suppl. Br. (Doc. 45) at 2. Second, Allen contends that the words "matter that may not be released by law" are ambiguous as to whether they apply to the word "including" or "waiver and release." *Id.* Neither argument is persuasive. Allen cannot inject ambiguity into the

unambiguous release provision just by disagreeing as to its proper interpretation. *See AECOM Tech. Servs., Inc. v. Pro. Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1185–86 (M.D. Fla. 2021) (explaining that although "[a] contract is ambiguous when there are competing reasonable interpretations of the instrument," " 'fanciful, inconsistent, and absurd interpretations' do no not create ambiguity." (quoting *Nabbie v. Orlando Outlet Owner, LLC*, 237 So. 3d 463, 467 (Fla. 5th DCA 2018))).

First, Allen's interpretation fails because it discards the ordinary meaning of the word "and," which is a conjunctive, not disjunctive, term. *See United States v. Garcon*, 54 F.4th 1274, 1278 (11th Cir. 2022) (explaining that " '[a]nd' means 'along with or together with,' which ordinarily [used in] a "conjunctive" sense (citations and quotations omitted)), *abrogated on other grounds by Pulsifer v. United States*, 601 U.S. 124 (2024). Allen's offered reading assigns the word "and" a disjunctive meaning, which violates its ordinary meaning. Under Florida law, courts should not interpret unambiguous terms in a manner that contradicts their ordinary meaning. *See Institutional & Supermarket Equip.*, 609 So. 2d at 68 (Fla. 4th DCA 1992) ("Where contracts are clear and unambiguous, they should be construed as written, and the court can give it no other meaning. Where words of a contract are clear and definite, they must be understood according to their ordinary meaning." (citation omitted)).

Second, Allen's interpretation also discards the plain reading of last sentence of the waiver provision, which indicates that Allen's "right to pursue certain claims and relief" with the EEOC is an example of "matter that may not be released by law." Allen's mistaken belief as to what claims may be released by law does not change the meaning of the provision's plain and unambiguous language.

Third, in addition to being textually flawed, Allen's argument violates basic contract interpretation principles. For example, accepting Allen's reading would render superfluous the last provision of the agreement which states that Allen, by signing the Severance Agreement, was "giving up all rights [he] may have to recover damages from [ReliaQuest] or reinstatement based on anything that happened before you signed this agreement." *See* Severance Agreement at 3. The Court declines to adopt such an interpretation. *See* *Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013) (explaining that "[a] contract is not to be read so as to make one section superfluous" or "interpreted in such a way as to render a provision meaningless when there is a reasonable interpretation that does not do so," instead "all the various provisions of a contract must be so construed . . . as to give effect to each" (citations and quotations omitted)).

In short, the Court rejects Allen's strained interpretation of the Severance Agreement because it contradicts the plain language of the release provision and violates

basic contract interpretation principles. The natural reading of a contractual provision is preferred.

## IV. CONCLUSION

The Court grants Defendant's construed motion for summary judgment (Doc. 35) in part. Because the parties have not formally briefed the issue of whether the release was knowing and voluntary under the summary judgment standard, the Court declines to resolve that issue now. The parties are permitted to address in a subsequent summary judgment motion whether the release was knowing and voluntary, and whether summary judgment as to Counts VIII–XI is appropriate in the light of this Order.

Accordingly, the following is **ORDERED:**

1. ReliaQuest's Motion to Dismiss (Doc. 35), construed by the Court as a motion for partial summary judgment, is **GRANTED IN PART**. The Court's ruling should not be construed as ruling on any issues other than the proper interpretation of the Severance Agreement's release provision.

2. The parties may move to amend the Court's Case Management and Scheduling Order (Doc. 41) to permit bifurcated discovery and summary judgment on issues pertaining to the Severance Agreement.

3. No later than **August 16, 2024**, ReliaQuest must file an answer to Allen's Amended Complaint.

**ORDERED** in Tampa, Florida, on August 1, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE*

* Signed by Judge Thomas P. Barber to expedite the resolution of this motion. This case remains assigned to Judge Kathryn Kimball Mizelle.

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

AARON ALLEN,

Plaintiff/Counter Defendant,

v. Case No.: 23-cv-00806-KKM-MEP

RELIAQUEST, LLC.

Defendant/Counterclaimant.
_______________________________/

**RELIAQUEST, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT (Doc. 32) AND AMENDED COUNTERCLAIMS[1]**

Pursuant to this Court's Order dated August 1, 2024, (Doc. 47), Defendant, ReliaQuest, LLC ("ReliaQuest") hereby responds to the corresponding numbered paragraphs of Aaron Allen's ("Allen") Amended Complaint (Doc. 32), as follows:

**JURISDICTION AND VENUE**

1. Admits that Allen purports to assert such actions in this Amended Complaint, but denied that ReliaQuest violated any of the laws set forth in the Amended Complaint and that any such claims state a claim upon which relief may

[1] ReliaQuest previously filed its Counterclaim against Allen as part of Doc. 13, which was responded to by Allen in Doc. 18. However, in an abundance of caution, it is repleading such counterclaims herein.

be granted or are actionable under the law and the facts, especially given this Court's Order dated August 1, 2024.

2. Contains legal conclusions to which no response is required; otherwise denied.

3. Contains legal conclusions to which no response is required; otherwise denied.

4. Contains legal conclusions to which no response is required; otherwise denied.

**CONDITIONS PRECEDENT**

5. Contains legal conclusions to which no response is required; otherwise denied.

6. Without knowledge, therefore denied.

7. Without knowledge, therefore denied.

8. Without knowledge, therefore denied.

**PARTIES**

9. Without knowledge, therefore denied.

10. Without knowledge, therefore denied.

11. Denied that ReliaQuest is a corporation. ReliaQuest is a limited liability company. Admitted that ReliaQuest is existing and organized under the laws of Florida, with its principal address in Tampa, Florida. Denied that it has conducted

continuous business in the Southern District of Florida, a district not relevant nor implicated in this action. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 11.

12. Contains legal conclusions to which no response is required; otherwise denied.

13. Contains legal conclusions to which no response is required; otherwise denied.

14. Contains legal conclusions to which no response is required; otherwise denied.

15. Denied.

## FACTUAL ALLEGATIONS

16. Admitted that Allen began working for ReliaQuest on November 1, 2021 as a Detection Architect and that Plaintiff was part of its Detection Team, with an office at 777 S. Harbor Island Blvd., Suite 500, Tampa, FL. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 16

17. Denied. Allen's performance was significantly below expectations. Allen failed to perform his job responsibilities with the requisite skill, knowledge, and diligence required to remain employed by ReliaQuest.

18. Denied. Allen was not an employee in good standing prior to his termination due to significant and unremedied deficiencies in his job performance.

19. Admitted.

20. ReliaQuest admits that Allen's poor job performance, including his poor client relationship skills, was discussed at the termination meeting. ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Allen remaining allegations in Paragraph 20, and on that basis denies the same.

21. ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations in Paragraph 21, and on that basis denies the same.

22. Denied.

23. Denied.

24. ReliaQuest cannot provide details relating to another employee's separation from ReliaQuest in a public forum. ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Allen's remaining allegations in Paragraph 24, and on that basis denies the same.

25. Denied.

a) Without knowledge, therefore denied.

b) Without knowledge, therefore denied.

c) Admitted Allen had approximately five years of management experience. Except as expressly admitted, without knowledge and therefore denied.

d) Without knowledge, therefore denied.

e) Without knowledge, therefore denied.

f) Without knowledge, therefore denied.

g) Without knowledge, therefore denied.

26. Denied.

27. Admitted that Allen was terminated on March 21, 2022 and presented the Severance Agreement; ReliaQuest lacks knowledge or information sufficient to form a belief as to the truth or falsity of Allen's remaining allegations in Paragraph 27 and on that basis denies.

28. Admitted that Allen did not draft the first version of the Severance Agreement. Further admitted that Allen, prior to execution, reviewed, negotiated, and requested changes to the wording of the Severance Agreement, which requested changes were accepted and agreed to by the parties. Otherwise, denied.

29. Admitted to the extent that Section 6 of the Severance Agreement speaks for itself; otherwise denied.

30. Admitted that prior to execution of the Severance Agreement, Allen met with ReliaQuest's agents to address the Severance Agreement. Otherwise denied.

31. Denied.

32. Without knowledge, therefore denied. Further, denied to the extent that the terms of the Severance Agreement regarding execution speak for themselves.

33. Without knowledge, therefore denied.

34. Denied. Further specifically denied that any such statements were ever made, and the Severance Agreement speaks for itself on such issues.

35. Without knowledge, therefore denied.

36. Without knowledge, therefore denied.

**COUNT I – Title VII Discrimination**

37. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 37.

38. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

a) To the extent a response is required, ReliaQuest denies the allegations.

b) To the extent a response is required, ReliaQuest denies the allegations.

39. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

40. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

**COUNT II – FCRA Discrimination**

41. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 41.

42. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

a) To the extent a response is required, ReliaQuest denies the allegations.

b) To the extent a response is required, ReliaQuest denies the allegations.

43. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

44. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

**COUNT III – Title VII Race Discrimination**

45. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates

the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 45.

46. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

47. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

48. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

**COUNT IV – Race Discrimination Section 1981**

49. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 49.

50. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

51. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 51 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

52. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 52 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

53. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

54. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

55. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

56. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

57. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

58. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

59. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

60. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

**COUNT V– FCRA Race Discrimination**

61. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 61.

62. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

63. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

64. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

**COUNT VI – Title VII Retaliation**

65. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 65.

66. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

67. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

68. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required

by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

69. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

70. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

71. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

**COUNT VII – Title VII Disparate Treatment**

72. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest hereby incorporates the answers heretofore set forth Paragraph 1 through 36, as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 72.

73. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 73 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

74. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 74 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

75. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. Additionally, Paragraph 75 contains legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

76. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

77. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

78. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

79. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

80. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest denies the allegations.

81. Based on this Court's August 1, 2024, Order regarding the scope of the release contained in the Severance Agreement of this claim, no response is required by ReliaQuest. To the extent a response is required, ReliaQuest is without knowledge of the allegations, and therefore denies them.

## COUNT VIII FRAUD IN THE INDUCEMENT

82. ReliaQuest reincorporates its responses to Paragraphs 1-36 as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 82.

83. The allegations contained in Paragraph 83 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

84. The allegations contained in Paragraph 84 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegations.

85. Admit that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

86. Denied that any such statements were made as phrased. The allegations contained in Paragraph 86 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest otherwise denies the allegation.

87. Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's knowledge regarding any alleged statements and therefore denied.

88. Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's intent and therefore denied.

89. Denied.

90. Denied. In fact, irrespective of the released claims and falsity of his asserted claims, Allen has received a benefit, via compensation under the Severance Agreement to which he was not otherwise entitled, as alleged in ReliaQuest's counterclaim.

91. The allegations contained in Paragraph 91 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

**92.** The allegations contained in Paragraph 92 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

**<u>COUNT IX – Negligent Misrepresentation</u>**

93. ReliaQuest reincorporates its responses to paragraphs 1-36 as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 93.

94. Admitted that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

95. Denied that any such statements were made as phrased. The allegations contained in Paragraph 95 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

96. Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's knowledge regarding any alleged statements and therefore denied.

97. Denied that any such statements were made as phrased. Without knowledge as to Mr. Noonan's intent and therefore denied.

98. Denied.

99. Denied. In fact, irrespective of the released claims and falsity of his asserted claims, Allen has received a benefit, via compensation under the Severance Agreement to which he was not otherwise entitled, as alleged in ReliaQuest's counterclaim.

## COUNT X – Mutual Mistake

100. ReliaQuest reincorporates its responses to Paragraphs 1-36 as if set forth fully herein.

101. Admitted.

102. Denied.

103. Admitted that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

104. Denied.

105. Denied.

106. Denied.

107. Denied that Allen received seven days to review the Severance Agreement; Allen received fourteen days. Admitted that Allen was given sufficient time to review and consider the Severance Agreement's terms, alone and with any attorney of his choice, before its execution. Without knowledge as to Allen's efforts and diligence and/or whether Allen did in fact consult with any attorneys. Except as otherwise expressly admitted, ReliaQuest denies the allegations in Paragraph 107.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. The allegations contained in Paragraph 83 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

**COUNT XI – Unilateral Mistake**

113. ReliaQuest reincorporates its responses to Paragraphs 1-36 as if set forth fully herein. Except as expressly admitted, ReliaQuest denies the allegations in Paragraph 113.

114. The allegations contained in Paragraph 114 contain legal conclusions to which no response is required; to the extent a response is required, ReliaQuest denies the allegation.

115. Admitted.

116. Denied.

117. Admitted that Scott Noonan was present at a meeting with Allen and other persons on March 21, 2022, otherwise denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied that Allen was given seven days; Allen was given fourteen days. Admitted that Allen was given sufficient time to review and consider the Severance Agreement's terms, alone and with any attorney of his choice, before its execution. Without knowledge as to Allen's efforts and diligence and/or whether Allen did in

fact consult with any attorneys. Except as expressly admitted, ReliaQuest otherwise denies the allegations in Paragraph 123.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

***All allegations not expressly admitted are hereby denied.***

## AFFIRMATIVE DEFENSES

For its affirmative defenses to the claims asserted in this matter, ReliaQuest states as follows:

## FIRST AFFIRMATIVE DEFENSE

All decisions, actions, or failures to act by ReliaQuest with respect to Allen and his employment were justified by legitimate, non-discriminatory, non-retaliatory reasons and were based on factors other than Allen's race, religion, or his alleged reporting of discriminatory conduct in the workplace—including, but not limited to, Allen's significant and unremedied underperformance, including inability to perform basic job duties with the requisite skill and knowledge, which jeopardized ReliaQuest's client relations and business.

## SECOND AFFIRMATIVE DEFENSE

Allen's claims are barred by the affirmative defense of release. ReliaQuest presented Allen with an optional severance agreement with a standard release. Allen knowingly and voluntarily released the claims he now alleges in the Amended Complaint when he executed the Severance Agreement. All of Allen's claims fall within the terms of the Release, are barred, and should be dismissed with prejudice, with costs and fees awarded to ReliaQuest.

## THIRD AFFIRMATIVE DEFENSE

Allen fails to allege facts sufficient to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

Allen's claims of discrimination and retaliation are barred to the extent that Allen has failed to fulfill conditions precedent to filing the Amended Complaint, or to otherwise satisfy statutory prerequisites to instituting this lawsuit.

## FIFTH AFFIRMATIVE DEFENSE

Allen's claims are barred, in whole or in part, to the extent that they stem from events which occurred more than 300 days before the filing of Allen's Charge of discrimination with the EEOC and/or state or local agency as they are untimely under the law and not properly asserted in the Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Allen's claims are barred, in whole or in part, to the extent that they fail to comply with applicable statute of limitations.

**SEVENTH AFFIRMATIVE DEFENSE**

ReliaQuest asserts that Allen was, at all material times, an at-will employee of ReliaQuest and, therefore, Allen was subject to discharge at any time, with or without cause, so long as said action was not for an unlawful reason.

**EIGHTH AFFIRMATIVE DEFENSE**

ReliaQuest, at all times, acted in good faith and with reasonable grounds for believing that any actions taken with regard to Allen complied with all applicable state and federal anti-discrimination and anti-retaliation statutes.

**NINTH AFFIRMATIVE DEFENSE**

At all times relevant hereto, ReliaQuest had specific policies against unlawful discrimination in the work place, and such policies were well-known to ReliaQuest's employees, including Allen. Allen failed to comply with those policies and did not report the alleged discriminatory action to ReliaQuest in accordance with those policies.

**TENTH AFFIRMATIVE DEFENSE**

If any allegations of unlawful conduct were found to be true, ReliaQuest's employees acted on their own, in violation of ReliaQuest's strict policies prohibiting such conduct, and acted outside the scope of their employment.

**ELEVENTH AFFIRMATIVE DEFENSE**

ReliaQuest made good-faith efforts to comply with the law and should not be liable for any discriminatory or retaliatory acts by its employees, whether managerial or not.

**TWELFTH AFFIRMATIVE DEFENSE**

Allen's alleged damages, if any, are too speculative to permit recovery.

**THIRTEENTH AFFIRMATIVE DEFENSE**

To the extent that Allen seeks an award of punitive damages, Allen's Amended Complaint fails to allege facts sufficient to support a claim upon which punitive damages may be granted. Any actions taken by ReliaQuest regarding Allen were taken in good faith, in accordance with ReliaQuest's internal policies, and not taken intentionally, recklessly, or with gross negligence. ReliaQuest's good-faith efforts to prevent discrimination and retaliation bars an award of such damages.

**FOURTEENTH AFFIRMATIVE DEFENSE**

The Amended Complaint fails to state a claim upon which an award of attorneys' fees and costs may be granted.

**FIFTEENTH AFFIRMATIVE DEFENSE**

The Amended Complaint, and every purported claim alleged therein, is barred because any recovery from ReliaQuest would result in Plaintiff's unjust enrichment.

**SIXTEENTH AFFIRMATIVE DEFENSE**

ReliaQuest denies every allegation in the Amended Complaint that ReliaQuest has not specifically admitted and demands strict proof thereof with respect to all allegations.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Allen's claims for fraud and misrepresentation fail as a matter of law because the purported statements made by ReliaQuest that are the basis of such claims were not statements of material fact, but rather a recitation of the clear and unambiguous terms of the Severance Agreement presented to him, which he executed knowingly and voluntarily.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Allen's claims for fraud and misrepresentation fail as a matter of law because the purported statements made by ReliaQuest in the Amended Complaint, which are disputed, but if they were true, were not relied upon and could not be statements that were reasonably or unreasonably relied upon by Allen given the adversarial nature of their relationship, the facts and circumstances surrounding the basis for his termination of employment, and the clear and unambiguous terms of the Severance Agreement presented to him, which he knowingly and voluntarily executed after being given sufficient time with such agreement.

**NINETEENTH AFFIRMATIVE DEFENSE**

Allen's claims for fraud and misrepresentation fail as a matter of law because the purported statements made by ReliaQuest that are the basis of such claims were actually true and not intended to, nor reasonably or unreasonably known to be false. Because the statements by ReliaQuest's agents were a correct recitation of applicable law and the clear and unambiguous terms of the Severance Agreement presented to him, which he executed knowingly and voluntarily, such claims all fail.

**TWENTY AFFIRMATIVE DEFENSE**

Allen's claims for rescission based on mutual mistake are improper because there was no mistake of material fact, there is no mistake on ReliaQuest's part, any such alleged mistake was caused by Allen's lack of diligence and lack of prudence in connection with his negotiation, review and execution of the Severance Agreement, and Allen has completely failed and refused to take any action(s) to rescind such Severance Agreement or otherwise deny the agreement as being binding upon him, other than asserting the claims in this lawsuit, including but not limited to, tendering or seeking to return to ReliaQuest the compensation he received from its execution.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Allen's claims for rescission based on unilateral mistake are improper because there is no mistake, any such alleged mistake was unreasonable and a convenient litigation position that was really caused by Allen's lack of diligence and lack of

prudence in connection with his negotiation, review and execution of the Severance Agreement, and ReliaQuest has changed its position in reliance on the agreement, by issuing Allen the compensation he received from its execution.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Allen's claims, including hi equitable claims seeking rescission, the existence of which are expressly denied, are barred by his own unclean hands and wrongful conduct including, but not limited to, asserting spurious claims that were released by the Severance Agreement and by improperly retaining, and continuing to retain, ReliaQuest's funds as asserted in ReliaQuest's counterclaims despite seeking rescission.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

To the extent any valid damages were incurred as a result of the claims in the Amended complaint, which ReliaQuest vehemently disputes, Allen has failed to mitigate any such damages and any such damages should be setoff for the amounts Allen owes to ReliaQuest as alleged in its counterclaim.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

To the extent Allen seeks non-monetary relief, any such relief is precluded because he has an adequate remedy at law.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

To the extent Allen relies upon negligence principles to assert his amended claims, Allen is greater than fifty percent (50%) at fault for the damages being claimed and, as a result, is precluded from any recovery of damages under Chapter 768 Florida Statutes.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

To the extent Allen relies upon negligence principles to assert his amended claims, Allen recovery of any damages, assuming he is less than fifty percent (50%) at fault, should be reduced by his percentage of fault pursuant to Chapter 768 Florida Statutes.

**RESERVATION OF DEFENSES**

ReliaQuest has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on such other applicable defenses, including, but not limited to, inequitable conduct, as may become available or apparent as facts become known through discovery. ReliaQuest reserves the right to amend or supplement its defenses and Counterclaims when and if appropriate after an opportunity for investigation and discovery.

## AMENDED COUNTERCLAIMS

Allen (the "Counter-Defendant") has filed the Complaint, and then an Amended Complaint, seeking relief on various employment and discrimination based claims, in brazen disregard of a severance agreement and release he knowingly and voluntarily signed, which release was unambiguous as a matter of law, as found by this Court's recent August 1, 2024, Order. Because the release is unambiguous as a matter of law, per the Court's August 1 Order, Allen's newly added counts of unilateral mistake, mutual mistake, and fraud in the inducement also fail as a matter of law: there can be no mistake by either party, nor fraud in the inducement, when the Severance Agreement is unambiguous as a matter of law.

After knowingly and voluntarily executing the unambiguous Severance Agreement, Allen collected, and retains, a generous severance payment from ReliaQuest. He then turned around and filed claims that he released, knowing he had released them, and in his Amended Complaint, added entirely frivolous claims of unilateral mistake, mutual mistake, and fraud in the inducement, which fail as a matter of law, and as a factual matter, because Allen knowingly and voluntarily signed an unambiguous severance agreement that released all claims against ReliaQuest relating to his employment or termination.

Not only has Allen harmed ReliaQuest by causing it to incur legal fees and costs in responding to released claims, but he has harmed ReliaQuest's because he

made knowingly false, salacious, and outrageous allegations against ReliaQuest, including alleging that it is a racist and discriminatory employer who, *inter alia*, discriminates against employees and then fraudulently induces them to sign releases.

Counter-Defendant was not the victim of any discrimination or hostile work environment, and even if he was, which he was not, such claims were released in consideration for good and valuable severance pay to which he was not otherwise entitled. He did not report any discrimination and was not terminated for reporting any discrimination while an employee of ReliaQuest. Instead, ReliaQuest terminated Counter-Defendant because he failed to perform his job duties with the requisite skill and care, and—despite being on notice that he needed to improve and being given ample support and opportunity to do so—he continued to perform far below expectations. ReliaQuest had no choice but to terminate Counter-Defendant to protect its business from further damage and disruption from Counter-Defendant's substantial performance deficiencies.

Despite Counter-Defendant's subpar performance and short tenure of five months, ReliaQuest offered him a severance payment in consideration for a standard release of claims in a Severance Agreement and General Release, which Counter-Defendant signed on April 4, 2022 (the "Severance Agreement"). ReliaQuest did not in any way pressure Counter-Defendant to sign this proposed agreement. He agreed in it that he had the opportunity to consult with an attorney, which he also

admits in this Amended Complaint. Ultimately, after the passage of two weeks and negotiation of the terms, Counter-Defendant signed the agreement, and ReliaQuest paid him the equivalent of four-weeks' salary.[2] Counter-Defendant accepted the funds paid by ReliaQuest under the Severance Agreement and retains them to this date with no attempt to return or tender such funds to ReliaQuest.

Despite collecting this payment, Counter-Defendant ignored the release provision in the Severance Agreement, found by this Court to preclude the majority of Allen's claims, and filed a multi-count suit against ReliaQuest in this Court. Counter-Defendant's suit, in and of itself, is a material breach and repudiation of the Severance Agreement. He must return the severance payment given that he has plead that the Severance Agreement is invalid, induced by fraud, and/or subject to rescission. Additionally, Counter-Defendant and his counsel have caused ReliaQuest to incur substantial legal fees and costs in responding to the Complaint and Amended Complaint. Counter-Defendant and his counsel were aware of the Severance Agreement prior to filing and have been aware of controlling Eleventh Circuit and Florida law that upholds the validity of the Severance Agreement since at least April 14, 2023, when ReliaQuest's counsel informed him of it. ReliaQuest's counsel repeatedly reminded Counter-Defendant's counsel of this fact, including in

[2] This Counterclaim omits references to the amount paid to Counter-Defendant by ReliaQuest pursuant to the Severance Agreement to protect sensitive salary and payment information. Accordingly, the Severance Agreement, attached as Exhibit A, has been redacted in relevant parts.

an April 21, 2023 letter. Counter-Defendant and his counsel have ignored ReliaQuest's warnings that Counter-Defendant's filing violates the Severance Agreement, explanations that it is false and without factual and legal basis, and requests that they dismiss the action before ReliaQuest is damaged any further. In addition to legal fees and costs, Counter-Defendant's released and frivolous claims have caused and will continue to cause significant damage to ReliaQuest's reputation, goodwill, and ability to hire and retain employees, all of which are of utmost important to ReliaQuest's mission. This amended counterclaim action seeks to recover these damages arising from Counter-Defendant's pursuit of the Action and his continued actions in proceeding with claims in violation of the Severance Agreement.

For these reasons, Counter-Plaintiff, ReliaQuest ("Counter-Plaintiff"), by and through the undersigned counsel, incorporates its answer and affirmative defense to the Amended Complaint as set forth above, and brings these amended counterclaims (the "Counterclaims") against Counter-Defendant (Counter-Defendant, together with Counter-Plaintiff, the "Parties") as follows:

## THE PARTIES

1. Counter-Plaintiff is a limited liability company organized and existing under the laws of Florida, with its principal place of business at 1001 Water Street, Suite 1900, Tampa, FL 33602.

2. Based on Counter-Defendant's allegations in the Complaint and Amended Complaint, Counter-Plaintiff is informed and believes that Counter-Defendant, an individual, resides in the Middle District of Florida.

## JURISDICTION AND VENUE

3. This Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a) as ReliaQuest's counterclaims are so related to the primary claims in Counter-Defendant's Amended Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

4. Counter-Defendant has chosen this venue to bring its claim against ReliaQuest. Venue is proper in this judicial district for these Counterclaims under 28 U.S.C. § 1391 as Counter-Defendant, in the Complaint and Amended Complaint, names this district as his place of residency and a substantial part of the events giving rise to these Counterclaims occurred in this district.

5. This Court has personal jurisdiction over Counter-Defendant as Counter-Defendant chose to avail himself of this forum by filing the Complaint and Amended Complaint here and, upon information and belief, resides within this jurisdiction.

## FACTUAL BACKGROUND

### A. Counter-Defendant's Employment at ReliaQuest

6. Counter-Defendant applied to work at ReliaQuest in or around August 2021.

7. Counter-Defendant provided ReliaQuest with a copy of Counter-Defendant's resume, a copy of which is attached hereto as Exhibit A and incorporated by reference as if fully restated herein, and underwent interviews with ReliaQuest.

8. Counter-Defendant holds a bachelor's degree from Clemson University.

9. Counter-Defendant holds a master's degree from the University of Rochester.

10. Counter-Defendant had approximately six years of workplace experience.

11. ReliaQuest employed Counter-Defendant as a Detection Architect from November 1, 2021, to March 21, 2022.

12. Counter-Defendant signed an employment agreement on October 21, 2022 (the "Employment Agreement").

13. Counter-Defendant was, at all times, an at-will employee of ReliaQuest.

**B. Termination of Counter-Defendant's Employment**

14. Five months into his employment, ReliaQuest terminated Counter-Defendant's at-will employment.

15. ReliaQuest terminated Counter-Defendant because of the significant and unremedied, material deficiencies in his job performance.

16. Counter-Defendant repeatedly failed to meet ReliaQuest's expectations for his role, including, but not limited to:

a) Counter-Defendant did not communicate with clients at a level of professionalism acceptable to ReliaQuest.

b) Counter-Defendant's supervisor spoke to Counter-Defendant about his unprofessional email communications and outlined expectations.

c) Even after this conversation, Counter-Defendant's email communications still failed to meet ReliaQuest's expectations.

d) During a client meeting, Counter-Defendant failed to present his portion of the presentation, despite having received coaching on this portion before the meeting.

e) During that same client meeting, the client commented on Counter-Defendant's silence.

f) Counter-Defendant refused to perform job duties. He refused to make minor and reasonable changes requested by a client to a client's content deployment process.

g) Counter-Defendant's supervisor spoke to him about his inadequate work product and outlined expectations.

17. The level of Counter-Defendant's work product and email communications were significantly below ReliaQuest's reasonable and justified expectations for an employee, which demanded that ReliaQuest terminate Counter-Defendant's employment, as it would have done with any other employee whose lack of skills and inadequate performance were threatening its business and client relationships.

**C. The Negotiation of the Severance Agreement and General Release**

18. In connection with Counter-Defendant's termination, the Parties negotiated the execution of a severance and release agreement.

19. ReliaQuest shared a proposed draft of the Severance Agreement with Counter-Defendant on March 21, 2022.

20. As part of the negotiations, Counter-Defendant reviewed the proposed Severance Agreement.

21. As part of the negotiations, Counter-Defendant asked ReliaQuest to make certain changes to the language and terms of the agreement.

22. ReliaQuest complied with Counter-Defendant's request.

23. On April 4, 2022, two weeks after ReliaQuest delivered the original draft of the Severance Agreement, Counter-Defendant signed the Severance Agreement.

24. A true and accurate copy of the Severance Agreement is already in the record. In accordance with Rule 10 of the Federal Rules of Civil Procedure, ReliaQuest incorporates by reference the entire Severance Agreement as if pleaded herein in its entirety.

25. At no point did ReliaQuest pressure Counter-Defendant to sign the Severance Agreement. ReliaQuest specifically encouraged Counter-Defendant to review it, including by seeking and obtaining help from an attorney.

26. Counter-Defendant agreed that he had the opportunity to consult with an attorney.

27. Section 7 of the Severance Agreement includes an acknowledgment that Counter-Defendant "has relied on or had the opportunity to rely upon advice of counsel of Employee's choosing or has been given an opportunity to review it with counsel and [has] chosen not to do so." Exhibit A to the Counterclaim.

**D. The Severance Agreement and General Release**

28. The Severance Agreement provided to Counter-Defendant the payment of money and other benefits to which he otherwise was not entitled, as consideration for entering into the Severance Agreement.

29. Specifically, Section 2 provided that:

> SEVERANCE. In exchange for Employee signing this Severance Agreement, ReliaQuest will pay a severance payment in the gross amount of [ *redacted* ], less any applicable withholdings, deductions, and taxes, which will be broken up and paid out over two (2) payroll periods in accordance with ReliaQuest's standard payroll process (the "Severance Payment"). Employee acknowledges that Employee is not already entitled to this Severance Payment. Employee further acknowledges that the Severance Payment will not be made to Employee until ReliaQuest has received this fully executed Agreement from Employee and all company property described in Paragraph 3 below has been received by ReliaQuest from Employee.

30. In consideration for ReliaQuest's payment equivalent to four-weeks' salary, Counter-Defendant agreed to a broad release in Section 6, which reads as follow:

> RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

31. By signing the Severance Agreement, Counter-Defendant thus agreed, in consideration for a payment equivalent to four-weeks' salary (the "Severance Payment") to release and forever discharge ReliaQuest from actions, demands, and causes of action in law or in equity of any kind or nature, including any and all claims related to his employment with ReliaQuest or its termination (the "Release").

32. Counter-Defendant knew he was releasing ReliaQuest from all claims for damages.

33. Counter-Defendant knew he was releasing ReliaQuest from all claims related to his employment with ReliaQuest or termination from ReliaQuest.

34. Counter-Defendant was aware, prior to filing the Amended Complaint, that the EEOC's "Right to Sue" letter does not nullify a valid release.

35. Counter-Defendant was aware, prior to filing the Amended Complaint, that "Right to Sue" letters are issued at the conclusion of every EEOC investigation regardless of the merits.

36. Counter-Defendant was aware, prior to filing the Amended Complaint, that "Right to Sue" letters are issued regardless of the existence of a valid release, waiver, or the merits of any potential lawsuit.

37. Counter-Defendant was aware, prior to filing the Amended Complaint, and that the "Right to Sue" letter issued by the EEOC to Counter-Defendant did not, in and of itself, override the Severance Agreement's Release.

**E. The Severance Payment**

38. ReliaQuest paid to Counter-Defendant's designated bank account the Severance Payment in accordance with Section 2 of the Severance Agreement.

39. Counter-Defendant received and accepted the Severance Payment in funds.

40. Counter-Defendant has never revoked his acceptance of the terms of the Severance Agreement and has retained the Severance Payment and other benefits that he received from ReliaQuest under the Severance Agreement. Further, Counter-Defendant has not sought to return or offered to return or tender the payment received.

**F. Counter-Defendant's Complaint**

41. Counter-Defendant then filed a complaint, bare bones and without merit, with the Equal Employment Opportunity Commission (the "EEOC").

42. The EEOC took a mere one day to close out the matter and issue a standard Right to Sue letter, which it issues regardless of the merits of the claim and without consideration of any release or severance agreement to which the complainant may be subject and which may bar the complainant from suing a former employer.

43. Nearly three months later, on April 12, 2023, more than a year after the end of his employment with ReliaQuest, Counter-Defendant filed this action against ReliaQuest in this Court (the "Action").

44. However, Counter-Defendant had already fully released and discharged ReliaQuest of all the claims and counts in the Complaint as set forth in the Severance Agreement and as found by this Courts' ruling on August 1, 2024.

45. Counter-Defendant was fully aware and actually knew that he had released the claims in the Complaint by signing the Severance Agreement.

46. Counsel for ReliaQuest reminded Counter-Defendant and his counsel about the existence of the Release as follows:

a) On April 14, 2023, during a telephone conference with Counter-Defendant's counsel, ReliaQuest's counsel explained that Counter-Defendant had released the claims in the Complaint as part of the Severance Agreement and requested that Counter-Defendant's counsel withdraw the Complaint immediately.

b) Counter-Defendant's attorney admitted to having seen the Severance Agreement.

c) Counter-Defendant's attorney did not dispute that the Severance Agreement was otherwise valid and enforceable and this Action was within the scope of the Release.

d) During a subsequent telephone conference on April 18, 2023, Counter-Defendant's counsel informed ReliaQuest's counsel that his theory that the Release was invalid was based only on Counter-Defendant not having had an attorney review the Severance Agreement.

e) ReliaQuest's counsel explained on this call that the lack of a review by an attorney is not a valid basis for nullifying a severance agreement, and that the law generally upholds releases in severance agreements so long as the employee had an opportunity to review it with a counsel.

f) Counter-Defendant's attorney did not dispute that this reflects existing law, nor did he deny that Counter-Defendant only signed the Severance Agreement two weeks after initial receipt, during which time he could have obtained counsel to review it.

47. Counter-Defendant has no valid basis for evading the terms of the Release and filing and continuing with the Action.

48. Counter-Defendant's filing of the Action materially breached the Severance Agreement.

**G. Counter-Defendant's False Claims and Failure to Report**

49. In the Complaint and Amended Complaint, Counter-Defendant alleges that ReliaQuest has committed certain adverse employment actions against Counter-Defendant during his employment at ReliaQuest, which are no longer relevant given

this Court's August 1, 2024, ruling. Yet, Counter-Defendant, made and continued to assert these allegations knowing them to be false, without legal merit, and covered by the Release in the Severance Agreement.

50. ReliaQuest terminated Counter-Defendant's employment because of Counter-Defendant's significant and unremedied underperformance and inability to perform basic job duties with the requisite skill and knowledge, leading to loss of customer confidence.

51. ReliaQuest has implemented a reporting mechanism and support structure as part of its harassment policy, which all of ReliaQuest's employees have access to through the employee handbook (the "Handbook").

52. Counter-Defendant did not avail himself of ReliaQuest's many available means of reporting any instances of harassing conduct or concerning incidents, and did not follow ReliaQuest's company policy and Handbook regarding reporting any such alleged conduct to management, as set out in the Handbook.

53. As Counter-Defendant set out in his complaint with the EEOC, Counter-Defendant only voiced his complaint about the purportedly "racially charged" meme in the form of a comment in a group chat during a team meeting. Counter-Defendant alleged in his EEOC charge that his comment consisted merely of the question "Is this what this company is about?".

**H. Damages Caused to ReliaQuest by Counter-Defendant's Breach**

54. Counter-Defendant's material breach has caused harm to ReliaQuest's reputation, goodwill, and ability to hire and retain employees, all of which are of utmost importance to ReliaQuest's mission.

55. ReliaQuest takes its diversity and inclusion very seriously. ReliaQuest, as a growing Tampa company, has set up internal structures and policies—from in-house counsel, a dedicated Human Resources team, to a strict harassment policy and associated training—to ensure that it upholds its commitment to being an equal employment provider.

56. ReliaQuest's commitment to diversity and inclusion is important to its customer and investor relationships, its ability to recruit and retain the best talent, and its overall success. Its people are key to its mission. Counter-Defendant has, without basis and falsely attacked this core principle and the overall culture of ReliaQuest.

57. Counter-Defendant's filing and continuation of this Action were done in bad faith.

58. Counter-Defendant's filing and continuation of this Action has caused and will continue to cause damage to ReliaQuest in the form of attorneys' fees, costs, loss of reputation and goodwill (including its ability to hire and retain employees, damage to customers and investors, and public relations and perception), and loss of the Severance Payment and interest on said payment.

**COUNT I**
**Breach of Section 6 of the Severance Agreement**

59. ReliaQuest incorporates and realleges Paragraphs 1 to 58 of its Counterclaims as if fully set forth herein.

60. The Severance Agreement is a valid, binding, and enforceable contract.

61. ReliaQuest performed all of its obligations under the Severance Agreement, including payment to Counter-Defendant equivalent to four-weeks' salary in severance benefits in accordance with the terms of the Severance Agreement.

62. Counter-Defendant has materially breached Section 6 of the Severance Agreement by pursuing this Action against ReliaQuest despite having validly released and discharged those claims in the Severance Agreement.

63. By signing and agreeing to be bound by the Severance Agreement, Counter-Defendant released and discharged ReliaQuest from "any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest."

64. As further stipulated by Section 6 of the Severance Agreement, this Release captures "claims which are based on or in any way related to his [] employment with ReliaQuest or the termination of that employment."

65. This is a standard release in employment severance agreements.

66. Counter-Defendant's claims asserted against ReliaQuest in this Action are based on alleged adverse actions by ReliaQuest, in its role as former employer of the Counter-Defendant, during Counter-Defendant's employment with ReliaQuest.

67. Thus, the underlying basis for Counter-Defendant's claims, as asserted in the Complaint, is within the scope of the Release that Counter-Defendant agreed to by signing the Severance Agreement and accepting the agreed-upon Severance Payment. This Court has confirmed such fact via its August 1, 2024, ruling. Accordingly, by asserting and continuing to proceed with his claims against ReliaQuest in this Action, Counter-Defendant has materially breached and continues to breach the Severance Agreement.

68. The issuance of a Right to Sue letter after filing an EEOC action does not nullify a valid contractual release. The EEOC issues such a letter upon concluding its investigation. The EEOC issues such a letter whether or not the claim has any merit. Nor does the EEOC consider whether the complainant released the claim.

69. As a result of Counter-Defendant's material breach of the Severance Agreement, ReliaQuest has been damaged in the amount of the Severance Payment paid to Counter-Defendant, plus loss of interest, for which it did not receive the promised benefits under the Severance Agreement.

70. Furthermore, Counter-Defendant's breach of the Severance Agreement has caused ReliaQuest significant additional damages. Not only is ReliaQuest's commitment to diversity and inclusion one of ethics and morality, but this commitment is critical to ReliaQuest's ability to hire and retain employees, attract and retain customers and investors. Counter-Defendant has falsely attacked this commitment in a publicly available filing, which investors and others are certain to find and identify in diligence, causing ReliaQuest additional and ongoing economic harm. As a result, ReliaQuest has suffered significant damages, and will continue to do so, including but not limited to monetary damages, damages to its reputation and goodwill, and attorneys' fees and costs incurred in defending against this matter, in an amount to be established at trial.

71. ReliaQuest is entitled to the repayment of the consideration paid to Counter-Defendant under the Severance Agreement, and is entitled to the recovery of all damages, reasonable attorney's fees, and costs incurred relating to this Action.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

72. ReliaQuest incorporates and realleges Paragraphs 1 to 71 of its Counterclaims as if fully set forth herein.

73. ReliaQuest and Counter-Defendant executed the Severance Agreement in Tampa, Florida, the place of Counter-Defendant's residence and the ReliaQuest offices at issue.

74. Pursuant to the Severance Agreement, Counter-Defendant agreed to release and discharge ReliaQuest from all claims, actions, demands, and causes of action in law or in equity which Counter-Defendant may have had, or may now have against ReliaQuest in consideration for the Severance Payment.

75. Florida law governs both the Employment Agreement and Severance Agreement.

76. "In Florida, every contract contains an implied covenant of good faith and fair dealing, which requires the parties to 'follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations.'" *Focus Mgmt. Grp. USA v. King*, 171 F. Supp. 3d 1291, 1299-300 (M.D. Fla. 2016).

77. A breach of the implied covenant of good faith and fair dealing "attaches to the performance of a specific contractual obligation." *Id.* at 1300. Here, such a specific contractual obligation exists: Counter-Defendant released all claims against ReliaQuest within the scope of Section 6 of the Severance Agreement in consideration for the Severance Payment. The purpose of the Release was to avoid future litigation. Counter-Defendant owed ReliaQuest a duty to comply with these obligations in good faith to protect ReliaQuest's reasonable expectations of an amicable termination, as explicitly recognized in the Severance Agreement's introduction.

78. After the Parties entered into the Severance Agreement, ReliaQuest performed all of its obligations under the Severance Agreement, including payment to Counter-Defendant of the Severance Payment.

79. Counter-Defendant, in breach of the express language of Section 6 of the Severance Agreement, commenced this Action.

80. The breach occurred in Florida.

81. Counter-Defendant filed the Complaint and Amended Complaint in knowing disregard of the fact that he had released the Action in the Severance Agreement.

82. Counter-Defendant was reminded by counsel for ReliaQuest of the terms of the Severance Agreements on several occasions, including:

a) Counsel for ReliaQuest mentioned the existence of the Severance Agreement in a phone call on April 14, 2023.

b) In response, Counter-Defendant's counsel himself admitted to being aware and having seen the Severance Agreement.

c) During the call on April 14, 2023, Counter-Defendant's counsel furthermore acknowledged that the Release would cover this Action.

d) ReliaQuest's counsel reiterated that the Complaint was barred due to the Release in a call on April 18, 2023.

e) During the call on April 18, 2023, Counter-Defendant's counsel informed ReliaQuest's counsel of his theory that Counter-Defendant had not knowingly and intentionally signed the Severance Agreement as Counter-Defendant allegedly did not have an attorney review the Severance Agreement.

f) Counter-Defendant's counsel stated that this was the only basis for his theory that the Release was not enforceable.

g) ReliaQuest's counsel in response explained on this call that the lack of a review of a release by an attorney does not invalidate it. ReliaQuest's counsel also pointed out that the Florida law generally upholds a release so long as the employee had an opportunity to review with a counsel.

h) Counter-Defendant's counsel did not dispute that this was the law, nor that Counter-Defendant had had ample opportunity to have an attorney review the Severance Agreement before he executed it.

83. Counter-Defendant ignored ReliaQuest's repeated reminders that Counter-Defendant brought this Action in violation of the Release.

84. Counter-Defendant knew that the claims alleged in the Complaint are baseless and was reminded of the same by ReliaQuest's counsel.

85. Yet Counter-Defendant and its counsel have refused to dismiss the Complaint and/or Amended Complaint.

86. To date, Counter-Defendant continues to hold in his possession the Severance Payment that ReliaQuest paid to him as consideration for his promises in the Severance Agreement.

87. Counter-Defendant does not mention the Parties' Severance Agreement in the Complaint, nor did he include it as an exhibit, further evidencing that he was proceeding in bad faith by bringing the Action against ReliaQuest in breach of the Severance Agreement and concealing fundamental facts of the dispute from this Court.

88. Counter-Defendant is bringing this Action in bad faith in an attempt to extract further payments from ReliaQuest.

89. Counter-Defendant, by bringing this Action in disregard of having released such a claim in return for the generous Severance Payment, unfairly interfered with ReliaQuest's reasonable contractual expectations under the Severance Agreement and violated the covenant of good faith and fair dealing implied by Florida law in the Severance Agreement.

90. Counter-Defendant's breach of its implied duty of good faith and fair dealing by filing and maintaining this Action has damaged ReliaQuest in an amount to be determined at trial.

**COUNT III**
**Unjust Enrichment**

91. ReliaQuest incorporates and realleges Paragraphs 1 to 91 of its Counterclaims as if fully set forth herein.

92. As an alternative claim to ReliaQuest's breach of contract claim, should the Court find that the Severance Agreement is unenforceable, Counter-Defendant will be unjustly enriched if he is allowed to escape his obligations under the Severance Agreement while retaining the Severance Payment and other benefits received from ReliaQuest in its performance under the Severance Agreement.

93. ReliaQuest conferred a benefit on Counter-Defendant via payment of the Severance Payment.

94. Counter-Defendant voluntarily accepted and retained such funds.

95. Circumstances are such that it would be inequitable for Counter-Defendant to retain the benefit of the Severance Payment, if the Severance Agreement were determined to be unenforceable, without paying back the value thereof to ReliaQuest.

**PRAYER FOR RELIEF**

**WHEREFORE**, ReliaQuest respectfully requests that the Court:

1. Order that Plaintiff / Counter-Defendant take nothing by this Action;
2. Dismiss Plaintiff's Amended Complaint against ReliaQuest and any claims therein in their entirety with prejudice;

3. Order that judgment on the Answer and Amended Counterclaims be entered in ReliaQuest's favor;
4. Order restitution of the full amount of the Severance Payment made by ReliaQuest to Plaintiff / Counter-Defendant pursuant to the Severance Agreement or its unjust enrichment claim; and
5. Grant ReliaQuest an award of damages in an amount to be determined;
6. Grant ReliaQuest an award of its attorneys' fees and costs incurred in this Action;
7. Award ReliaQuest such other and further relief as this Court may deem appropriate.

Dated: August 16, 2024.

Respectfully submitted,

*/s/ Dean A. Kent*

Dean A. Kent
Florida Bar No. 307040
Email: dak@trenam.com/ ac@trenam.com
Richard Hanchett
Florida Bar No. 709212
rhanchett@trenam.com/ ac@trenam.com
**TRENAM LAW**
101 East Kennedy Blvd.
Suite 2700
Tampa, Florida 33602-5150
Tel: (813) 223-7474
Fax: (813) 229-6553

Steven J. Pacini (*pro hac vice*)
**Latham & Watkins LLP**

200 Clarendon Street, 27th Floor
Boston, Massachusetts 02116
Tel: (617) 948-6000
Fax: (617) 948-6001
Email: steven.pacini@lw.com
*Attorneys for ReliaQuest, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the forgoing Reliaquest, LLC'S Answer and Affirmative Defenses to Amended Complaint (Doc. 32) and Amended Counterclaims has been furnished to all counsel of record via CM/ECF on August 16, 2024

/s/___*Dean A. Kent*_____________
Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AARON ALLEN,

Plaintiff,

v. Case No. 8:23-cv-0806-KKM-AEP

RELIAQUEST, LLC,

Defendant.

---

# ORDER

Aaron Allen sues ReliaQuest for events that occurred while he was employed by ReliaQuest. He brings various employment discrimination and contract claims. Am. Compl. (Doc. 32). ReliaQuest moves for summary judgment on each of Allen's claims, MSJ (Doc. 59), and Allen responds, Resp. (Doc. 61). For the reasons below, I grant the motion.

## I. BACKGROUND[1]

Aaron Allen "is a Native American and African-American male." Am.

[1] Because Allen's amended complaint is sworn, the allegations are evidence for purposes of this motion. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (explaining that the district court erred when it did not consider the plaintiff's verified complaint as evidence when deciding the defendant's motion for summary judgment). ReliaQuest does not dispute the facts as represented in the background.

Compl. ¶ 10. Allen began working for ReliaQuest in November 2021 "as a Detection Architect as part of their Detection Operations Team." *Id.* ¶ 16. Allen was terminated on March 21, 2022. *Id.* ¶ 19. The same day, ReliaQuest presented Allen with a severance agreement. *Id.* ¶ 27; Severance Agreement (Doc. 13-1) (Sev. Agr.).

The agreement contains a release provision that "[i]n exchange for the consideration" in the agreement, Allen "hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action . . . which [Allen] may have had, or may now have against ReliaQuest." Sev. Agr. ¶ 6. The release expressly allows for "certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission." *Id.* The word "covenant" appeared elsewhere in the agreement and ReliaQuest acquiesced with Allen's request to remove it, as Allen believed it went "against his religious beliefs." Am Compl. ¶ 28; *see generally* Sev. Agr. (omitting the word "covenant").

Before signing the agreement, Allen met with "Senior Vice President of Development and Engagement, Scott Noonan," and two other managers. Am. Compl. ¶ 30. Allen claims that Noonan explained to Allen that "by signing the

severance agreement, [Allen] would waive all claims against [ReliaQuest] except those protected by law such as racial discrimination claims which fell under EEOC [c]laims." *Id.* Specifically, Noonan told Allen that the waiver provision "does not apply to any federal claims[,] such as with the EEOC or other federal labor rights." *Id.* ¶ 31 (emphasis omitted). And Noonan told Allen to take seven days to review and sign the agreement. *Id.*

Despite multiple attempts to contact legal counsel, Allen did not speak with a retained attorney before signing the agreement on April 4, 2022. *Id.* ¶¶ 33–34. As justification for signing the agreement, Allen cites Noonan's representations. *Id.* ¶ 34. In exchange for signing the agreement, Allen received a "severance payment" and an additional month of healthcare benefits, and the agreement contained a provision that Allen acknowledged he was not already entitled to the payment. Sev. Agr. ¶¶ 1–2.

Following the signing of the agreement, Allen filed a claim with the EEOC, alleging discriminatory behavior by ReliaQuest. Am. Compl. ¶ 35. The EEOC then gave Allen a right to sue letter, (Doc. 32-1), and Allen sued ReliaQuest, asserting the following employment discrimination claims in his amended complaint: race discrimination in violation of Title VII (Counts I, III); race discrimination in

violation of the Florida Civil Rights Act (FCRA) (Counts II, V); race discrimination in violation of 42 U.S.C. § 1981 (IV); retaliation in violation of Title VII (Count VI); and religious discrimination in violation of Title VII (Count VII). *Id.* ¶¶ 37–81. Allen's amended complaint brings a negligent misrepresentation claim (Count IX) and the following contract claims, all based on Noonan's statement that Allen could sue after signing the agreement: fraud in the inducement (Count VIII); recission of severance agreement (mutual mistake) (Count X); and recission of severance agreement (unilateral mistake) (Count XI). *Id.* ¶¶ 82–127.

In July 2024, ReliaQuest moved to dismiss Allen's amended complaint based on the agreement's release clause. (Doc. 35). After converting it to a motion for summary judgment, (Doc. 44), the Court granted it in part and concluded that "the severance agreement contains a clear and unambiguous waiver of the claims Allen now asserts," Summ. J. Order (Doc. 47) (SJ Order) at 1. The Court declined to address whether Allen entered into the release knowingly and voluntarily. *Id.* at 1, 12. That issue is now briefed and ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

56(a). The moving party can show that no genuine dispute of material fact exists by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001) (explaining that "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law' " (quoting FED. R. CIV. P. 56(c))).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). When deciding whether the movant has met this burden, "the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* Once the movant's initial burden is met, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

[nonmovant].” *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

## III. ANALYSIS

ReliaQuest argues that they are entitled to summary judgment on Allen's claims for two main reasons. First, it contends that Allen is barred from bringing his employment discrimination claims because Allen entered into the agreement knowingly and voluntarily. Second, it argues that Allen's contract claims fail because his claims hinge on extrinsic evidence, which the parol evidence rule prohibits in the light of the unambiguous release. And even if the parol evidence rule does not bar all the contract claims, Allen cannot show that he justifiably relied on certain extrinsic evidence because the release is clear. I address each argument in turn.

### A. Allen Knowingly and Voluntarily Signed the Severance Agreement

“[A]n employee can waive his ‘cause of action under Title VII as part of a voluntary settlement agreement’ if ‘the employee's consent to the settlement was voluntary and knowing.’ ” *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 819 (11th Cir. 1998) (quoting *Alexander v. Gardner–Denver*

*Co.*, 415 U.S. 36, 52 n.15 (1974)).[2] Such a waiver must be "closely scrutinized." *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996).

Courts look to the totality of the circumstances to determine whether a release was knowing and voluntary. *Id.* To do so, the following factors must be considered:

> [1] the plaintiff's education and business experience; [2] the amount of time the plaintiff considered the agreement before signing it; [3] the clarity of the agreement; [4] the plaintiff's opportunity to consult with an attorney; [5] the employer's encouragement or discouragement of consultation with an attorney; and [6] the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Id.* (quoting *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir. 1995)). "Evidence that the parties negotiated the conditions and consideration of a release supports a conclusion that the release, when executed later, was knowing and voluntary." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1042 (11th Cir. 2007). And "claims of subjective misunderstanding, standing alone [do not] defeat an otherwise valid release." *Id.* (alteration in the original) (quoting *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 442 (7th Cir. 1997)).

[2] Because "[t]he FCRA is patterned after Title VII," "federal case law on Title VII applies to FCRA claims." *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) (en banc) (quoting *Guess v. City of Miramar*, 889 So. 2d 840, 849 n.2 (Fla. 4th DCA 2004)). Releases of claims under 42 U.S.C. § 1981 are also analyzed identically to releases under Title VII. *See Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996).

The totality of the circumstances shows that Allen entered into the agreement knowingly and voluntarily. First, Allen had "approximately five years of management experience" at the time he signed the release, so he certainly would have familiarity with business-related contracts. Am. Compl. ¶ 25(c). Second, two weeks[3] to review the agreement was sufficient, especially in light of the fact that Allen requested during that time for ReliaQuest to remove certain wording, and ReliaQuest acquiesced. Am Compl. ¶¶ 28, 32–24; *see* Sev. Agr.; *see also Puentes*, 86 F.3d at 199 (citing *Mullen v. N.J. Steel Corp.,* 733 F. Supp. 1534, 1544–45 (D.N.J. 1990) (fourteen days to consider release supported finding that employee entered in to release knowingly and voluntarily)); *Myricks*, 480 F.3d at 1042 (explaining that evidence of negotiations about release conditions supports a finding of a knowing and voluntary waiver). Third, the release is clear and unambiguous. *See generally* SJ Order. Fourth, Allen had a sufficient opportunity to consult with an attorney (two weeks), and he in fact contacted several attorneys. Am. Compl. ¶ 33. Fifth, Allen received consideration in exchange for the release. In exchange for signing the agreement, Allen received a "severance payment" and an additional month of

[3] It is immaterial whether Noonan told Allen to take seven days to review and sign the agreement, Am. Compl. *id.* ¶ 31, because Allen took two weeks to review it, *id.* ¶¶ 33–34.

healthcare benefits. By signing the agreement, Allen acknowledged that he was not already entitled to the severance payment and healthcare benefits. Sev. Agr. ¶¶ 1–2; *Bacon v. Stiefel Lab'ys., Inc.*, No. 09-21871-CV-KLNG, 2011 WL 4944122, at *6 (S.D. Fla. Oct. 17, 2011) (finding sufficient consideration where employee received payment for signing a release and the release contained a provision acknowledging that the employee was not otherwise entitled to the payment).

The parties submit no facts suggesting that ReliaQuest either discouraged or encouraged Allen to consult with an attorney. As such, this factor neither supports nor negates that Allen signed the release knowingly and voluntarily. *See Dawson v. Miami-Dade County*, No. 07-20126 CIV, 2008 WL 1924266, at *18 (S.D. Fla. Mar. 11, 2008).

Allen does not dispute that the release is clear and that he received consideration in exchange for signing it, but he disputes the other factors. As to the amount of time that Allen had to consider the agreement, he vaguely argues that "there are no facts which support a determination of the time that [Allen] spent considering the agreement before signing it" and that "[t]his Court has held that 21 days not 14 days is sufficient time." Resp. at 4 (citing *Jones v. AT&T Umbrella Benefit Plan No. 1*, No. 3:15-CV-821-J-34JRK, 2018 WL 748870 (M.D. Fla. Jan.

10, 2018), *report and recommendation adopted*, No. 3:15-CV-821-J-34JRK, 2018 WL 746938 (M.D. Fla. Feb. 7, 2018)). To his first point, the inquiry centers around how much time the plaintiff had to consider the agreement, not how the plaintiff in fact used all of the time afforded. *See Puentes*, 86 F.3d at 198–99. And to Allen's second point, there is no "bright-line test for determining what is a sufficient amount of time," but looking at the totality of the circumstances, the factors cut in favor of concluding that the release was knowing and voluntary. *Id.* at 198.

Regarding education, Allen correctly notes that he never alleged in his verified complaint he had received certain degrees. Resp. at 2. ReliaQuest cites to only its unsworn answer as evidence of Allen's degrees. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion."). But this is not a material distinction for purposes of the factor because the focus is whether Allen "is not educated enough to understand the [release]." *Myricks*, 480 F.3d at 1041. Allen produces no evidence to suggest that he could not understand the release, especially in the light of his own verified allegations of having five years of management experience and being "qualified to perform his job" at ReliaQuest. Am. Compl. ¶¶ 17, 25.

Allen lastly argues that a statement by Scott Noonan, ReliaQuest's Senior Vice President of Development and Engagement, should be construed as a discouragement from seeking counsel. Resp. at 4. Allen alleges that on the day ReliaQuest presented him with the Severance Agreement, Noonan informed Allen "that he could sue after he signed and executed the Severance Agreement." *Id.* (quoting Am. Compl. ¶ 34).

The record cuts against Allen's argument. First, the Severance Agreement contains a provision that Allen "has relied on, or had the opportunity to rely upon, advice of counsel of [Allen]'s choosing or has been given an opportunity to review it with counsel and have chosen not to do so." Sev. Agr. ¶ 7. Second, there is no evidence that ReliaQuest did or said anything to "impede [Allen]'s ability to consult with an attorney." *Puentes*, 86 F.3d at 199. Third, though Noonan's statement may have caused confusion on Allen's part, "claims of subjective misunderstanding, standing alone [do not] defeat an otherwise valid release," especially one that is clear and unambiguous as to its release of all future claims. *Myricks*, 480 F.3d at 1042 (alteration in the original) (quoting *Pierce*, 110 F.3d at 442). Lastly, Allen's sworn allegations contradict his argument now, as he alleges that he contacted several attorneys *after* Noonan's statement, which suggests that Noonan's comment did not

discourage Allen from seeking counsel. Am. Compl. ¶¶ 31–33.

Accordingly, no reasonable jury could conclude, based on the totality of the circumstances, that Allen did not sign the release agreement knowingly and voluntarily, and thus summary judgment in ReliaQuest's favor on Counts I–VII is warranted.

### B. Allen's Contract-Related Claims Fail as a Matter of Law

"The parol evidence rule bars claims arising out of prior extrinsic agreements, oral or written, which vary, alter, or modify the terms of a clear, unambiguous, and fully integrated document." *Ali R. Ghahramani, M.D., P.A. v. Pablo A. Guzman, M.D., P.A.*, 768 So. 2d 535, 537 (Fla. 4th DCA 2000). "[T]he law generally presumes that the parties, by making a writing on the subject, intended the writing to be the sole expositor of their agreement," and therefore "the party seeking to introduce parol evidence must establish that the document is ambiguous." *King v. Bray*, 867 So.2d 1224, 1226 (Fla. 5th DCA 2004).

This rule is not applicable, though, "when fraud enters into a transaction to the extent of inducing a written contract," *Tinker v. De Maria Porsche Audi, Inc.*, 459 So. 2d 487, 491 (Fla. 3d DCA 1984), or to show mutual mistake, *Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1371 (Fla. 1987).

Because the parol evidence rule bars using extrinsic evidence to interpret the release provision, Allen's claim of recission of the severance agreement based on a unilateral mistake fails as a matter of law. Allen's contract claims hinge solely on Noonan's extracontractual statement. *See* Am. Compl. ¶¶ 85, 94, 103, 117. In order to introduce Noonan's statement as evidence of contractual meaning, Allen, as "the party seeking to introduce parol evidence[,] must establish that the document is ambiguous." *King*, 867 So.2d at 1226. Because the release is clear and unambiguous, the parol evidence rule bars using extrinsic evidence to interpret it. *See generally* SJ Order. It follows, then, that because Noonan's statement is Allen's only evidence of the agreement's meaning, he cannot establish the unilateral mistake claim.

The parol evidence rule does not bar consideration of extrinsic evidence for the fraud in the inducement claim, negligent misrepresentation claim, *Tinker*, 459 So. 2d at 491, or recission based on mutual mistake, *Providence Square Ass'n, Inc.*, 507 So. 2d at 1371. But those claims fail for other reasons.

"A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Providence Square Ass'n, Inc.*, 507 So. 2d at 1372. The party seeking rescission of a contract must "show by clear and convincing evidence that a mistake

of fact occurred in the transaction." *Rosique v. Windley Cove, Ltd.*, 542 So. 2d 1014, 1015–16 (Fla. 3d DCA 1989).

Allen's mutual mistake claim fails for two reasons. First, and most crucially, Noonan's statement does not expressly contradict the release's exception for "claims and relief with the Equal Employment Opportunity Commission." Sev. Agr. ¶ 6. Thus, what is expressed in the agreement is not necessarily different from what the parties "agree[d]" to. *Providence Square Ass'n, Inc.*, 507 So. 2d at 1372. And second, Allen's allegations do not show an agreement between him and Noonan about the meaning of the release provision, but instead that Noonan informed Allen about its meaning. *See id.* Therefore, Allen has not shown "by clear and convincing evidence that a mistake of fact occurred in the transaction." *Rosique*, 542 So. 2d at 1015.

Both fraud in the inducement and negligent misrepresentation require the plaintiff to show justifiable reliance. *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008) (per curiam); *Howard v. Murray*, 184 So. 3d 1155, 1167 n.23 (Fla. 1st DCA 2015). "Without justifiable reliance, there can be no actionable fraud." *Picture It Sold Photography, LLC v. Bunkelman*, 287 So. 3d 699, 704 (Fla. 4th DCA 2020) (quoting *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 4th DCA 1999)).

The "justifiable reliance" standard provides "some objective corroboration to plaintiff's claim that he did rely," and cannot be shown when, for example, "the representation is obviously false." *Billington v. Ginn-La Pine Island, Ltd., LLLP*, 192 So. 3d 77, 81 n.4 (Fla. 5th DCA 2016) (quoting W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS 750 (5th ed. 1984)). In other words, justifiable reliance cannot be established "when proper disclosure of the truth is subsequently revealed in a written agreement between the parties." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 543 (Fla. 5th DCA 2003) (per curiam).

Allen's fraud claims fail because he cannot establish that he justifiably relied on Noonan's statement in the light of the unambiguous release provision. By signing, Allen agreed that he "releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action . . . including but not limited to any and all claims which are based on or in any way related to his [] employment with ReliaQuest or the termination of that employment." Sev. Agr. ¶ 6. The only relevant carve-out was for pursuing "claims and relief with the Equal Employment Opportunity Commission." *Id.* Noonan's statement—that the release provision "does not apply to any federal claims such as with the EEOC or other federal labor rights"—does not directly contradict that exception. Am. Compl. ¶ 31. But even if

the statement did or Allen construed it to mean he could sue for whatever he wanted, Noonan's representation was "obviously false" when compared to the release provision. *Billington*, 192 So. 3d at 81 n.4. Thus, Allen cannot have justifiably relied on Noonan's statement. *Cf. Middleton v. Int'l Bus. Machs. Corp.*, 787 F. App'x 619, 622–23 (11th Cir. 2019) (per curiam) (holding under Georgia law that signee could not establish that they justifiably relied on oral promises of uncapped commissions because subsequent written disclaimers against uncapped commissions "squarely contradicted" the promises).

Accordingly, ReliaQuest is entitled to summary judgment on Allen's contract-related claims.

### C. Adjudicating ReliaQuest's Motion for Summary Judgment is Not Premature

Allen argues that summary judgment is premature because discovery was incomplete when ReliaQuest moved for summary judgment. Resp. at 5–6; Pl.'s Decl. (Doc. 61-1) ¶¶ 4–7. But so long as "the material facts are undisputed, as they are here, summary judgment is appropriate early in the proceedings." *Larkin v. Envoy Orlando Holdings LLC*, 116 F. Supp. 3d 1316, 1317–18 (M.D. Fla. 2015); *see also Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843–44 (11th Cir. 1989) (per

curiam).

The relevant facts turn on Allen's sworn complaint and the severance agreement. *See Larkin*, 116 F. Supp. 3d at 1317–18. And Allen points to no specific facts yet to be developed—such as a deposition—that would impact the resolution of the motion. *See* Pl.'s Decl. ¶¶ 4–7. Therefore, accepting as true all the allegations of his verified complaint, the record is sufficiently developed for adjudication.

## IV. CONCLUSION

Because no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law, FED. R. CIV. P. 56(a), ReliaQuest is entitled to summary judgment on all counts in the amended complaint.

Accordingly, the defendant's Motion for Summary Judgment, (Doc. 59), is **GRANTED.** Because ReliaQuest's counterclaims remain pending and Allen proceeds pro se, the parties are directed, no later than **May 8, 2025,** to file a notice informing the Court whether another mediation would prove more efficient than proceeding to trial.

**ORDERED** in Tampa, Florida, on May 1, 2025.

Kathryn Kimball Mizelle
Kathryn Kimball Mizelle
United States District Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AARON ALLEN,

Plaintiff,

v.

Case No 8:23-cv-806-KKM-AEP

RELIAQUEST, LLC,

Defendant.

---

**JUDGMENT IN A CIVIL CASE**

**Decision by the Court.** This action came before the Court and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that a Judgment is entered against Aaron Allen and in favor of ReliaQuest, LLC, on all claims in Allen's Complaint. ReliaQuest's counterclaims are DISMISSED without prejudice.

Date: March 18, 2026,

ELIZABETH M. WARREN, CLERK

s/JM, Deputy Clerk

# CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

   (b) **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).