**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**Case No. 26-11298**

**AARON ALLEN,**
Appellant/Cross-Appellee,

v.

**RELIAQUEST, LLC,**
Appellee/Cross-Appellant.

---

# APPELLEE/CROSS-APPELLANT'S ANSWER BRIEF AND PRINCIPAL BRIEF ON CROSS-APPEAL

---

**On Appeal From the United States District Court**
**Middle District of Florida, Tampa Division, No. 8:23-cv-806-KKM-AEP**

---

DEAN A. KENT
dkent@trenam.com
Florida Bar No. 0307040
LINDSAY PATRICK LOPEZ
llopez@trenam.com
Florida Bar No. 0022839
Trenam, Kemker, Scharf, Barkin,
Frye, O'Neill & Mullis, P.A.
101 East Kennedy Blvd., Suite 2700
Tampa, Florida 33602
T: (813) 223-7474 || F: (813) 229-6553
*Attorneys for Appellee/Cross Appellant, ReliaQuest, LLC*

**APPELLEE/CROSS-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Appellee/Cross-Appellant, ReliaQuest, LLC, hereby identifies the trial judge, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

1. Allen, Aaron – Appellant/Cross-Appellee;
2. Barber, Honorable Thomas P. – United States District Court Judge;
3. Farmer & Fitzgerald – counsel for Appellant/Cross-Appellee;
4. Farmer, Matthew P. – counsel for Appellant/Cross-Appellee;
5. Fitzgerald, Timothy J. – counsel for Appellant/Cross-Appellee;
6. FTV Capital – investor in Appellee/Cross-Appellant;
7. Hanchett, Richard M. – counsel for Appellee/Cross-Appellant;
8. Kent, Dean A. – counsel for Appellee/Cross-Appellant;
9. KKR & Co. Inc. – investor in Appellee/Cross-Appellant;
10. Lopez, Lindsay Patrick – counsel for Appellee/Cross-Appellant;
11. Mizelle, Honorable Kathryn Kimball- United States District Court Judge;
12. Neil Bryan Tygar, P.A. – former counsel for Appellant/Cross-Appellee;
13. Pacini Law PLLC – counsel for Appellee/Cross-Appellant;
14. Pacini, Steven J – counsel for Appellee/Cross-Appellant
15. Porcelli, Honorable Anthony -United States Magistrate Judge;

16. ReliaQuest Holdings, LLC – owner of Appellee/Cross-Appellant;

17. ReliaQuest, LLC – Appellee/Cross-Appellant;

18. Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. – counsel for Appellee/Cross-Appellant;

19. Tygar, Ian Michael – former counsel for Appellant/Cross-Appellee;

20. Wenzel Fenton Cabassa, P.A. – Third-Party Custodian;

21. Wenzel, Steven Greg – counsel for Third-Party Custodian;

## APPELLEE/CROSS-APPELLANT'S CORPORATE DISCLOSURE STATEMENT

Appellee/Cross-Appellant is wholly owned by ReliaQuest Holdings, LLC. No publicly traded company or corporation owns 10% or more of Appellee/Cross-Appellant's stock, and no publicly traded company or corporation has an interest in the outcome of this appeal.

*/s/ Lindsay Patrick Lopez*

DEAN A. KENT
dkent@trenam.com
Florida Bar No.: 0307040
LINDSAY PATRICK LOPEZ
llopez@trenam.com
Florida Bar No.: 0022839
Trenam, Kemker, Scharf, Barkin,
Frye, O'Neill & Mullis, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
P: (813) 223-7474 || F: (813) 229-6553

## STATEMENT REGARDING ORAL ARGUMENT

ReliaQuest, LLC ("ReliaQuest") does not request oral argument. Aaron Allen's ("Allen") appeal presents a single question of contract interpretation, reviewed de novo, that the district court answered correctly under settled law. ReliaQuest's cross-appeal seeks limited, conditional relief only in the unlikely event that the Court reverses the dismissal of any of Allen's affirmative claims. The dispositive issues have been authoritatively decided, and the facts and legal arguments are adequately presented in the briefs and record. *See* Fed. R. App. P. 34(a)(2)(B)–(C).

## TABLE OF CONTENTS

**APPELLEE/CROSS-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............ C1 of 2**

**STATEMENT REGARDING ORAL ARGUMENT .......................................... i**

**TABLE OF AUTHORITIES ......................................................................... iv**

**STATEMENT REGARDING SUBJECT-MATTER AND APPELLATE JURISDICTION.......................................................................................................1**

**STATEMENT OF ISSUES PRESENTED FOR REVIEW.................................1**

**STATEMENT OF THE CASE.........................................................................2**

**A. Course of Proceedings and Disposition in the Court Below.................2**

**B. Statement of Facts. .........................................................................3**

**C. Standard of Review. ........................................................................7**

**SUMMARY OF THE ARGUMENT ...............................................................7**

**ARGUMENT AND CITATION OF AUTHORITY ON APPEAL ..................10**

**I. THE AGREEMENT UNAMBIGUOUSLY RELEASES ALLEN'S CLAIMS FOR DAMAGES, AND THE JUDGMENT SHOULD BE AFFIRMED. ..........................................................10**

**A. The Release carveout preserves Allen's right to pursue charges with the EEOC, not a private suit for damages. .........11**

**B. The district court properly applied applicable law to determine the scope of the Release. ...........................................13**

**C. The Right to Sue Notice does not change the scope of the Release in the Agreement. ......................................................17**

**D. Allen's § 1981 and FCRA claims are released under any reading of the Release carveout. ................................................19**

**E. Allen has waived and abandoned any challenge to the remaining district court rulings. ....20**

**ARGUMENT AND CITATION OF AUTHORITY ON CROSS-APPEAL ....21**

**I. IF THIS COURT REVERSES THE DISMISSAL OF ANY OF ALLEN'S FEDERAL CLAIMS, THE DISMISSAL OF RELIAQUEST'S COUNTERCLAIMS FOR LACK OF JURISDICTION SHOULD ALSO BE REVERSED. ....21**

**CONCLUSION ....22**

**CERTIFICATE OF COMPLIANCE ....22**

**CERTIFICATE OF SERVICE ....23**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) .......... 7, 17, 18

*Alexander v. Gardner-Denver Co.*,
415 U.S. 36 (1974) .......... 10, 16

*Ameritox, Ltd. v. Millennium Lab'ys, Inc.*,
803 F.3d 518 (11th Cir. 2015) .......... 7

*Bravo v. Loor-Tuarez*,
727 F. App'x 572 (11th Cir. 2018) .......... 21

*City of Homestead v. Beard*,
600 So. 2d 450 (Fla. 1992) .......... 15

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) .......... 1

*EEOC v. Cosmair, Inc.*,
821 F.2d 1085 (5th Cir. 1987) .......... 16

*El Paso Nat. Gas Co. v. Neztsosie*,
526 U.S. 473 (1999) .......... 22

*Fed. Express Corp. v. Holowecki*,
552 U.S. 389 (2008) .......... 16

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
314 U.S. 95 (1941) .......... 12

*Freeman v. Motor Convoy, Inc.*,
700 F.2d 1339 (11th Cir. 1983) .......... 20

*Greenlaw v. United States*,
554 U.S. 237 (2008) .......... 22

*Jenkins v. Eckerd Corp.*,
913 So. 2d 43 (Fla. 1st DCA 2005) .......... 14, 15, 18

***Klay v. United Healthgroup, Inc.***,
**376 F.3d 1092 (11th Cir. 2004) .......... 7**

***Myricks v. Fed. Reserve Bank of Atlanta***,
**480 F.3d 1036 (11th Cir. 2007) .......... 10, 16**

***Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n***,
**499 U.S. 117 (1991) .......... 15**

***Palmer v. Hosp. Auth. of Randolph Cnty.***,
**22 F.3d 1559 (11th Cir. 1994) .......... 21**

***Puentes v. United Parcel Serv., Inc.***,
**86 F.3d 196 (11th Cir. 1996) .......... 10, 16**

***Quarterman v. City of Jacksonville***,
**347 So. 2d 1036 (Fla. 1st DCA 1977) .......... 14**

***S. Coal Corp. v. Drummond Coal Sales, Inc.***,
**28 F.4th 1334 (11th Cir. 2022) .......... 7**

***Sapuppo v. Allstate Floridian Ins. Co.***,
**739 F.3d 678 (11th Cir. 2014) .......... 20**

***Silas v. Sheriff of Broward Cnty.***,
**55 F.4th 863 (11th Cir. 2022) .......... 7**

***Thomas v. Cooper Lighting, Inc.***,
**506 F.3d 1361 (11th Cir. 2007) .......... 7**

***Tiftarea Shopper, Inc. v. Ga. Shopper, Inc.***,
**786 F.2d 1115 (11th Cir. 1986) .......... 21**

***United Mine Workers of Am. v. Gibbs***,
**383 U.S. 715 (1966) .......... 21**

***United States v. Collins***,
**854 F.3d 1324 (11th Cir. 2017) .......... 12**

***Universal Prop. & Cas. Ins. Co. v. Johnson***,
**114 So. 3d 1031 (Fla. 1st DCA 2013) .......... 13**

**<u>Statutes</u>**

**28 U.S.C. § 1291.....................................................................................1**

**28 U.S.C. § 1331.....................................................................................1**

**28 U.S.C. § 1367.....................................................................................1**

**42 U.S.C. § 1981............................................................................ 1, 2, 9, 10**

**Title VII, § 1981.................................................................................8, 10**

**<u>Rules</u>**

**Fed. R. App. P. 4....................................................................................1**

**Fed. R. App. P. 32......................................................................... 22, 23**

**Fed. R. App. P. 34.................................................................................. i**

**Fed. R. Civ. P. 8....................................................................................19**

## STATEMENT REGARDING SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction over Allen's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims and ReliaQuest's counterclaims under 28 U.S.C. § 1367(a). (Doc. 32, p. 1, ¶ 2; Doc. 48, p. 34, ¶ 3; Doc. 128, pp. 1, 3). The court granted summary judgment for ReliaQuest on all of Allen's claims, then later declined supplemental jurisdiction over ReliaQuest's counterclaims, dismissing them without prejudice (Doc. 128, p. 8), and the clerk entered final judgment on March 18, 2026 (Doc. 129, the "Judgment").

Allen filed a timely notice of appeal on April 17, 2026. (Doc. 131); *see* Fed. R. App. P. 4(a)(1)(A). ReliaQuest filed its notice of cross-appeal on May 1, 2026, within fourteen days after Allen's. (Doc. 134); *see* Fed. R. App. P. 4(a)(3). This Court has jurisdiction under 28 U.S.C. § 1291. ReliaQuest may cross-appeal although it prevailed on Allen's claims. Only a party that "receives all that he has sought" is generally barred from appealing, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980), and the Judgment dismissed ReliaQuest's counterclaims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the Severance Agreement and General Release (the "Agreement"), which excludes from its release only "matter that may not be released by law," preserves Allen's private damages claims under Title VII, 42 U.S.C. § 1981, and the Florida Civil Rights Act, when the law permits those claims to be released

and Allen acknowledged that he was "GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY."

2. On ReliaQuest's cross-appeal: whether the dismissal of ReliaQuest's counterclaims should be reversed if the dismissal of any of Allen's claims is reversed on appeal.

## STATEMENT OF THE CASE[1]

### A. Course of Proceedings and Disposition in the Court Below.

Allen sued ReliaQuest on April 12, 2023. (*See* Doc. 1). His verified Amended Complaint asserted seven counts of race discrimination, retaliation, and religious discrimination under Title VII, 42 U.S.C. § 1981, and the Florida Civil Rights Act (Counts I–VII), and four counts seeking to avoid the Agreement: fraud in the inducement, negligent misrepresentation, and rescission for mutual and for unilateral mistake (Counts VIII–XI). (Doc. 32).

ReliaQuest moved to dismiss, arguing that Allen had released every claim. (Doc. 35, pp. 7-14). The district court converted the motion to one for summary judgment (Doc. 44), received supplemental briefs (Docs. 45, 46), and granted summary judgment in part, holding that the Agreement "contains a clear and unambiguous waiver of the claims Allen now asserts." (Doc. 47, pp. 1, 12). The

[1] All citations to the record will be in the form (Doc. ___, p. ___), representing the District Court CM/ECF document number at page number. Citations to Appellant's initial brief are in the form (Allen Br., p. ___ ).

court reserved whether Allen signed the Release knowingly and voluntarily. (Doc. 47, p. 12).

ReliaQuest then moved for summary judgment on the remaining issues. (Doc. 59). The district court granted the motion, holding that no reasonable jury could find that Allen did not sign the Release knowingly and voluntarily and that Counts VIII–XI failed as a matter of law. (Doc. 77, pp. 12, 16–17).

ReliaQuest counterclaimed for breach of the Agreement, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Doc. 48, pp. 30-54). The district court denied Allen's motion to dismiss the counterclaims (Doc. 76) but, after resolving Allen's claims, declined to exercise supplemental jurisdiction over them and dismissed them without prejudice. (Doc. 128, p. 8). The district court entered the Judgment in favor of ReliaQuest on March 18, 2026. (Doc. 129). Allen appealed (Doc. 131), and ReliaQuest cross-appealed the dismissal of its counterclaims (Doc. 134).

**B. Statement of Facts.**

ReliaQuest employed Allen as a Detection Architect from November 1, 2021, until it terminated him on March 21, 2022. (Doc. 32, p. 4, ¶¶ 16, 19). Allen alleges that his termination was discriminatory. (*See* Doc. 32, p. 3, ¶ 15). ReliaQuest strenuously disputes Allen's factual allegations regarding discrimination (*See* Doc. 48, p. 3, ¶ 15), but recognizes that the district court accepted them as true for the

purposes of summary judgment. (Doc. 77, p. 1 n.1; Doc. 47, p. 2 n.1). The district court never reached the merits of Allen's claims, and his factual allegations are immaterial to this appeal because, as discussed below, Allen released his claims against ReliaQuest.

On the day of his termination, ReliaQuest offered Allen the Agreement. (Doc. 32, p. 6, ¶ 27). Section 6 of the Agreement provides:

> RELEASE. In exchange for the consideration referred to in this Agreement, Employee hereby releases and forever discharges ReliaQuest from any and all claims, actions, demands, and causes of action in law or in equity which Employee may have had, or may now have against ReliaQuest, including but not limited to any and all claims which are based on or in any way related to his or her employment with ReliaQuest or the termination of that employment. This waiver and release specifically excludes matter that may not be released by law, including Employee's right to pursue certain claims and relief with the Equal Employment Opportunity Commission, the National Labor Relations Board, and the Security & Exchange Commission.

(Doc. 13-1, p. 3, ¶ 6). This paragraph is referred to herein as "Section 6" or the "Release."

The Agreement's final page, directly above Allen's signature, states in capital letters: "YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT HAPPENED BEFORE YOU SIGNED THIS AGREEMENT. YOU ACKNOWLEDGE THAT YOU SIGN

THIS AGREEMENT KNOWINGLY AND VOLUNTARILY." (Doc. 13-1, p. 4). In Section 7, Allen acknowledged that he had relied on, or had the opportunity to rely on, counsel of his choosing, and that he was acting on his own judgment. (Doc. 13-1 at 3, ¶ 7).

In exchange releasing all damages claims, Allen received a severance payment and an additional month of health coverage, and he acknowledged that he was not otherwise entitled to the payment. (Doc. 13-1, p. 2, ¶¶ 1–2; Doc. 77, pp. 3, 8-9). Allen, who had five years of management experience, took two weeks to consider the Agreement, contacted several lawyers, and asked ReliaQuest to revise the Agreement by removing the word "covenant." (Doc. 32, p. 5, ¶ 25(c); p. 6, ¶¶ 28, 33; Doc. 77, pp. 2, 8, n. 3). ReliaQuest agreed to Allen's requested revision, and Allen signed the revised Agreement on April 4, 2022. (Doc. 13-1; Doc. 77, p. 2, 3).

In his initial Complaint, Allen purported to state claims against ReliaQuest for discrimination, retaliation and civil rights violations. (Doc. 1, pp. 5-14). The initial Complaint does not reference the Agreement or the Release. In response, ReliaQuest raised the affirmative defense of release. (Doc. 13, p. 18, Doc. 13-1). In his Amended Complaint, Allen alleges for the first time in a pleading that before he signed the Agreement, ReliaQuest's Scott Noonan told him the waiver "does not apply to any federal claims[,] such as with the EEOC or other federal labor rights." (Doc. 32, p. 6, ¶ 31; Doc. 77, p. 3). The district court held that this allegation did not

create an issue of fact because Allen failed to establish evidence of a mutual mistake, and Allen could not justifiably rely on it in the face of the Agreement's unambiguous text. (Doc. 77, pp. 13–16). Allen does not challenge that holding on appeal.

After signing, Allen filed a charge with the EEOC. (Doc. 32, p. 7, ¶ 35). On January 17, 2023, the EEOC dismissed the charge, stating that it "will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute," and issued a form notice of Allen's right to sue. (Doc. 32-1, the "Right to Sue Notice"). The Right to Sue Notice does not reference or mention the Agreement. (*See* Doc. 32-1).

In the district court, Allen argued that the carveout was ambiguous because the word "and" in "claims and relief" might be disjunctive, and because "matter that may not be released by law" might include his discrimination claims. (Doc. 45, pp. 2-4; Doc. 40, pp. 5-7). He never argued that the Right to Sue Notice is evidence of the scope of the Release. ReliaQuest's motion quoted the EEOC's guidance that an employee "can waive the right to recover from [the] employer either in [his] own lawsuit, or in any suit brought on [his] behalf by the Commission." (Doc. 35, p. 13). Allen never challenged the guidance or the waivability rule it states. (*See* Doc. 40; Doc. 45).

### C. Standard of Review.

This Court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). The interpretation of a contract, including whether it is ambiguous, is a question of law reviewed de novo. *S. Coal Corp. v. Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1341 (11th Cir. 2022). This Court may affirm on any ground the record supports. *Thomas*, 506 F.3d at 1364. Absent exceptional circumstances, appellate courts do not consider arguments raised for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331-32 (11th Cir. 2004).

On the cross-appeal, this Court reviews the decision to decline supplemental jurisdiction for abuse of discretion. *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022). A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures, makes clearly erroneous findings of fact, or applies the law in an unreasonable or incorrect manner. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004); *see Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015).

## SUMMARY OF THE ARGUMENT

Allen raises a single argument on appeal: that his claims below were carved out from the Release in the Agreement. Section 6 releases "any and all claims" arising from Allen's employment, excluding *only* "matter that may not be released

by law," including his "right to pursue certain claims and relief with the" EEOC, the NLRB, and the SEC. (Doc. 13-1, p. 3, ¶ 6). The law lets an employee knowingly and voluntarily release a private claim for damages under Title VII, § 1981, and the FCRA. It does not let an employee give up his right to file a charge or take part in an agency proceeding. The Release carveout therefore preserved exactly what the law protects: Allen's right to file an agency proceeding. Allen did in fact file an EEOC charge, as permitted by the Release carveout. However, Allen released any right to sue ReliaQuest for money, expressly acknowledging the Agreement's provision, written in capital letters directly above his signature, that: "YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY." (Doc. 13-1, p. 4).

Allen's reading cannot be reconciled with that text. It would require the Court to incongruously treat claims that the law allows an employee to release as "matter[s] that may not be released by law," expanding a carveout for agency proceedings into a much broader carveout for damages suits, and rendering the capitalized acknowledgment meaningless. Allen fails to cite any legal authority to support his interpretation. Indeed, Allen's argument cites no case at all. (Allen Br., pp. 21–25).

Allen's criticisms of the district court fail. The district court did not use EEOC guidance to rewrite the contract. The Release carveout turns on what "may not be released by law," so the court considered legal authority regarding the types of

matters that may or may not be released by law. The EEOC guidance merely describes what the law allows an employee to release, which is why Allen concedes it is "relevant to establishing the governing law for the exclusion." (Allen Br., p. 23). The Right to Sue Notice also does not relieve Allen from the Release. It, issued nine months after he signed the Agreement, is a form that by his own concession "makes no finding," and says nothing about the Agreement. (Allen Br., p. 24; Doc. 32-1). And Allen never argued in the district court that the Right to Sue Notice could be used to interpret the Release carveout in the Agreement.

Finally, Allen concedes that his § 1981 and FCRA counts are not claims that must be brought to the EEOC, so the Release carveout cannot save them on any reading. And he does not challenge the holdings that he signed the Agreement knowingly and voluntarily or that his fraud, misrepresentation, and rescission claims all fail. Allen received the severance benefits he bargained for and kept the rights the law would not let him release or waive: to file a charge and to take part in agency proceedings. The Judgment holding him to the rest of his bargain in the Agreement should be affirmed.

ReliaQuest's cross-appeal challenges, on a conditional basis, the district court's dismissal of its counterclaims. The District Court declined to exercise supplemental jurisdiction over the counterclaim after it dismissed Allen's affirmative claims. In the unlikely event that this Court reverses the dismissal of any

of Allen's affirmative claims, then the sole basis for dismissing the counterclaims under § 1367(c)(3) disappears, and the dismissal of ReliaQuest's counterclaim should be reversed.

## ARGUMENT AND CITATION OF AUTHORITY ON APPEAL

### I. THE AGREEMENT UNAMBIGUOUSLY RELEASES ALLEN'S CLAIMS FOR DAMAGES, AND THE JUDGMENT SHOULD BE AFFIRMED.

Allen calls the issue "not especially complex." (Allen Br., p. 21). He is right, and his arguments do not withstand a simple, three-step analysis. First, Section 6 excludes from the release *only* "matter that may not be released by law." (Doc. 13-1, p. 3, ¶ 6). Second, the law permits an employee to release private claims for damages under Title VII, § 1981, and the FCRA, so long as he does so knowingly and voluntarily. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n.15 (1974); *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996); *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040-42 (11th Cir. 2007). (*See* Doc. 77, p. 7, n.2 (releases of § 1981 and FCRA claims are analyzed the same way as Title VII releases)). Third, the district court held that Allen released his claims knowingly and voluntarily, and Allen does not challenge that holding. (Doc. 77, pp. 6-12). Thus, none of Allen's claims in the district court constitute a "matter[s] that may not be released by law," and the Release carveout does not reach them. The district court properly determined that Allen's claims fail as a matter of law (Doc.

47, pp. 6-12). ReliaQuest respectfully requests that this Court affirm the Judgment in favor of ReliaQuest.

### A. The Release carveout preserves Allen's right to pursue charges with the EEOC, not a private suit for damages.

Section 6 is a comprehensive release of "any and all claims, actions, demands, and causes of action" based on Allen's employment or termination. (Doc. 13-1, p. 3, ¶ 6). It excludes only "matter that may not be released by law," including Allen's "right to pursue certain claims and relief with" the EEOC, the NLRB, and the SEC. (Doc. 13-1, p. 3, ¶ 6). The district court correctly began its analysis with the plain language of Section 6. (Doc. 47, pp. 7-8).

In the district court, Allen argued that the Release carveout in Section 6 preserved his right to sue ReliaQuest for discrimination claims protected by federal law and recover damages. The district court rejected this argument, finding that the Release carveout, is "clear and unambiguous." (Doc. 47, pp. 7-8). It applies only to "matter that may not be released at law." The phrase "matter that may not be released by law" preserves Allen's right to file a charge and to participate in EEOC proceedings. (Doc. 47, p. 8). But because the law permits an employee to release an individual lawsuit and to release claims for monetary relief, the Release carveout does not preserve either. (Doc. 47, p. 8).

The Release carveout's structure confirms its meaning. Its operative phrase is "matter that may not be released by law." The "including" clause that follows gives

examples of that category; it does not add to it. *See Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (the term "including" "connotes simply an illustrative application of the general principle"); *accord United States v. Collins*, 854 F.3d 1324, 1333 (11th Cir. 2017) (clause introduced by "including" describes a subset of the preceding category, not an independent one). Allen's "right to pursue certain claims and relief with the" EEOC is preserved because, and only to the extent that, the law forbids its release. The clause cannot preserve a damages suit that the law allows an employee to release.

The plain language of the Release carveout also supports this interpretation. The Release carveout preserves Allen's "right to pursue certain claims and relief *with* the Equal Employment Opportunity Commission." (Doc. 13-1, p. 3, ¶ 6 (emphasis added)). The preposition in this sentence matters. A charge is pursued with the EEOC. A Title VII lawsuit for damages is pursued against an employer, in court. Allen did the first, and the Agreement allowed it. (Doc. 32, p. 7, ¶ 35). The word "certain" points the same way: the Release carveout does not reach every claim that might be pursued with the EEOC, only those the law protects.

The rest of the Agreement removes any doubt. Directly above his signature, Allen acknowledged in capital letters: "YOU UNDERSTAND YOU ARE GIVING UP ALL RIGHTS YOU MAY HAVE TO RECOVER DAMAGES FROM THE COMPANY OR REINSTATEMENT BASED ON ANYTHING THAT

HAPPENED BEFORE YOU SIGNED THIS AGREEMENT." (Doc. 13-1, p. 4). Allen's reading would make that conspicuous, capitalized sentence meaningless. ReliaQuest paid Allen severance compensation and additional benefits that he acknowledged he was not otherwise owed. (Doc. 13-1, p. 2, ¶¶ 1–2). To adhere to Allen's requested reading, the Release would not reach the discrimination claims at the center of the parties' employment dispute, despite his express surrender of damages and reinstatement. Florida law requires that a contract be read to give effect to every provision, and it rejects a reading that renders one meaningless. (Doc. 47, p. 11, citing *Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013)). Allen quotes the Release's conspicuous acknowledgment "[i]n fairness" (Allen Br., p. 22) but never explains how his reading can be reconciled with it.

### B. The district court properly applied applicable law to determine the scope of the Release.

On appeal, Allen does not challenge the district court's finding that the Release carveout applies only to "matter that may not be released by law." Instead, Allen appears to argue that the district court failed to appropriately analyze extrinsic evidence regarding the types of matters that "may not be released by law." Specifically, Allen asserts that the district court gave improper weight to an EEOC guidance document that Allen refers to as an "extrinsic legal document" while failing

to give proper weight to the Right to Sue Notice. This argument fails for multiple reasons.

First, the district court did not consider extrinsic evidence regarding the meaning of the Release because the district court properly found that the terms of the Agreement are clear and unambiguous. (Doc. 47, pp. 7, 9). On appeal, Allen does not challenge the district court's finding that the Agreement is clear and unambiguous. When a contract is clear and unambiguous, "a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract." (Doc. 47, p. 9, *citing Jenkins v. Eckerd Corp.,* 913 So. 2d 43, 52 (Fla. 1st DCA 2005); *Quarterman v. City of Jacksonville,* 347 So. 2d 1036, 1041 (Fla. 1st DCA 1977)).

Allen avers that the district court improperly relied on an "extrinsic legal document" to determine the plain meaning of the Agreement. By making this argument, Allen misconstrues a legal source as being evidence of contractual intent. The district court referenced an EEOC guidance document, *EEOC, No. EEOC-NVTA-2009-2, Q & A – Understanding Waivers of Discrimination Claims in Employee Severance Agreements* (July 15, 2009), *not* to establish what the parties privately meant, but instead to describe the legal boundary that the Release carveout expressly adopts: "matter that may not be released by law." (Doc. 13-1, p. 3, ¶ 6).

The Agreement and federal law do different work. The Agreement defines the category excluded from the Release as "matter that may not be released by law." It

confirms that category's limited reach by acknowledging Allen's right to pursue certain claims "with" the EEOC, while separately and expressly surrendering any claims for damages and reinstatement. (Doc. 13-1, pp. 3-4). Federal law then determines which matters fall within the excluded category, and a court may consult legal sources, including agency guidance, to determine what that law provides. Allen's argument conflates these two distinct inquiries.

The district court's reference to the EEOC guidance does not offend the parol-evidence rule. The rule restricts evidence offered to vary contractual meaning; it does not forbid a court from consulting legal sources to understand the law the contract incorporates. See *Jenkins*, 913 So. 2d at 52; *City of Homestead v. Beard*, 600 So. 2d 450, 454–55 (Fla. 1992) (laws existing when a contract is made that affect its validity, construction, discharge, and enforcement become part of the contract as if expressly incorporated); *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 130 (1991) (same). A court could not apply Section 6 without deciding what federal law permits an employee to release.

The district court had already found the Agreement clear and unambiguous. (Doc. 47, pp. 7, 9). It cited the EEOC guidance only as a persuasive source illustrating that federal law allows an employee to release the right to sue while preserving the right to file a charge, not as extrinsic evidence of the parties' intent. An employee may waive a Title VII claim for individual relief, so long as the waiver

is knowing and voluntary. *Gardner-Denver*, 415 U.S. at 52 & n.15; *Puentes*, 86 F.3d at 198; *Myricks*, 480 F.3d at 1040-42. What an employee cannot waive is the right to file a charge with the EEOC or to participate in its proceedings, because those rights protect the agency's enforcement role, not the employee's private recovery. *See EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1090–91 (5th Cir. 1987) (ADEA) (waiver of the right to file a charge is void, but an employee may waive his right to recover in his own suit or in an EEOC suit on his behalf). The EEOC guidance document the district court cited says the same thing. (Doc. 47, p. 8). That guidance does not bind this Court, and ReliaQuest seeks no deference to it. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399–400 (2008). At most it may persuade. Its precise weight, however, is immaterial, because *Gardner-Denver*, *Puentes*, and *Myricks* supply the governing rule.

Allen's concession defeats his own premise. He acknowledges that the guidance is "relevant to establishing the governing law for the exclusion." (Allen Br., p. 23). And the exclusion is defined by that law: it excludes "matter that may not be released by law." (Doc. 13-1, p. 3, ¶ 6). No court could apply that phrase without identifying what federal law forbids an employee to release. Importantly, Allen's Initial Brief does not (and cannot) identify a single case holding that any of the claims in the instant case constitute a "matter that may not be released by law."

Allen also left this point unchallenged below. ReliaQuest's motion quoted the same EEOC guidance for the same proposition: that an employee "can waive the right to recover from [the] employer either in [his] own lawsuit, or in any suit brought on [his] behalf by the Commission." (Doc. 35, p. 13). Neither Allen's response nor his supplemental brief challenged the guidance or the waivability rule it states. (*See* Doc. 40; Doc. 45). On appeal, Allen cannot fault the district court for accepting a legal proposition that he never challenged. *See Access Now, Inc.,* 385 F.3d at 1331 (collecting cases holding that the Court will not consider an issue raised for the first time on appeal).

### C. The Right to Sue Notice does not change the scope of the Release in the Agreement.

Allen also argues that the district court "failed to consider" the Right to Sue Notice. Allen does not explain how the Right to Sue Notice should be considered, how it creates an issue of fact or otherwise impacts the scope of the Release. However, to the extent that Allen is arguing that the Right to Sue Notice revives his released claims, that argument fails on the merits for at least three reasons: (1) the district court did not "fail to consider" the Right to Sue Notice; (2) a later notice cannot alter the meaning of an unambiguous contract; and (3) the Right to Sue Notice does not purport to impact or vary the scope of the Release.

First, the district court did not overlook the Right to Sue Notice. It referred to the Right to Sue Notice in both dispositive orders. (Doc. 47, p. 3; Doc. 77, p. 3).

Allen therefore can only be disputing the notice's legal significance, not whether the court knew it existed. To the extent that Allen is arguing that the district court did not expressly address whether the Right to Sue Notice relieved Allen from the impact of the Release, Allen never raised that argument below. In its motion to dismiss, ReliaQuest specifically argued that the Right to Sue Notice did not confer any rights or override the Release. (Doc. 35, p. 5, n. 3). Allen did not dispute, or even discuss, this argument in his responses. Accordingly, Allen has waived any argument that the Right to Sue Notice impacted the scope of the Release by failing to raise the argument below. *See Access Now, Inc.,* 385 F.3d at 1331 (11th Cir. 2004).

Second, the Right to Sue Notice cannot change the meaning of an unambiguous contract. See *Jenkins*, 913 So. 2d at 52. In his argument, Allen has the sources backward: the EEOC guidance accurately describes the legal rule that exists for all and that Section 6 incorporates, while the Right to Sue Notice is a separate, later communication appliable to Allen alone. The EEOC issued the Right to Sue Notice on January 17, 2023, more than nine months after Allen signed the Agreement on April 4, 2022. (Doc. 32-1, p. 1; Doc. 13-1, p. 4). A document that did not exist when the parties contracted is not relevant or admissible to interpret the meaning of an unambiguous contract.

Third, the Right to Sue Notice does not purport to impact the scope of the Release. It is a form that notifies Allen that, if he chooses to sue "on this charge," he

must do so within 90 days. (Doc. 32-1, p. 1). It states that the EEOC "makes no determination" about the merits, and it says nothing about the Agreement. (Doc. 32-1, p. 1). Whether a claim has been released is an affirmative defense for the court in which suit is filed to decide, see Fed. R. Civ. P. 8(c)(1), as Allen himself argued below. (Doc. 40, p. 6). Allen concedes that the notice "is a standard document, makes no finding as to the merits, and has no preclusive effect." (Allen Br., p. 24). The notice to Allen merely starts the ninety (90) day window of time in which he would be permitted to seek any judicial relief available to him under applicable law; it does not construe or in any way guarantee that Allen could survive the terms of the Release he knowingly and voluntarily executed.

### D. Allen's § 1981 and FCRA claims are released under any reading of the Release carveout.

Even if Allen's reading of the Release carveout were plausible, it would save only claims pursued with the EEOC. Allen concedes that only his Title VII counts (Counts I, III, VI, and VII) are claims "that must be brought first to the EEOC," and that his § 1981 and FCRA counts (Counts II, IV, and V) are not. (Allen Br., p. 23, n.7). That concession disposes of the §1981 and FCRA counts. Allen does not contend that the Release carveout itself reaches them; he argues only that they are "inextricably intertwined" with his Title VII counts. (Allen Brief, p. 23, n. 7). That is not a reading of the Agreement, and the close relationship among the statutes cuts against him. The district court held that releases of § 1981 and FCRA claims are

analyzed the same way as releases of Title VII claims (Doc. 77, p. 7, n.2), and Allen does not challenge that holding. And this Court has affirmed a holding that an EEOC conciliation agreement releasing claims based on matters alleged in an EEOC charge also barred § 1981 claims arising from the same allegations, because otherwise the release would be meaningless. *See Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352–53 (11th Cir. 1983). At a minimum, the Judgment on Counts II, IV, and V must be affirmed.

### E. Allen has waived and abandoned any challenge to the remaining district court rulings.

Allen's opening brief challenges only the scope of the Release carveout and asks to revive only Counts I through VII. (Allen Br., pp. 21–25). It does not contest the holding that he signed knowingly and voluntarily or the judgment on his fraud, negligent-misrepresentation, and rescission claims. (See Doc. 77, pp. 6-16). Issues not plainly and prominently raised in an opening brief are abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014). The district court rulings on Counts VIII through XI therefore remain intact, including the holdings that Noonan's alleged statement did not contradict the Release carveout and could not justifiably be relied upon. (Doc. 77, p. 14–16).

## ARGUMENT AND CITATION OF AUTHORITY ON CROSS-APPEAL

### I. IF THIS COURT REVERSES THE DISMISSAL OF ANY OF ALLEN'S FEDERAL CLAIMS, THE DISMISSAL OF RELIAQUEST'S COUNTERCLAIMS FOR LACK OF JURISDICTION SHOULD ALSO BE REVERSED.

Section 1367(c)(3) permits a district court to decline supplemental jurisdiction only when it "has dismissed all claims over which it has original jurisdiction." That was the only basis for the court's discretion here. (Doc. 128, p. 3). If this Court reverses the Judgment on any of Allen's Title VII or § 1981 claims, the premise disappears and the dismissal of the counterclaims cannot stand. *See Tiftarea Shopper, Inc. v. Ga. Shopper, Inc.*, 786 F.2d 1115, 1118 (11th Cir. 1986) (reversing dismissal of state claims because the federal claim should not have been dismissed); *Bravo v. Loor-Tuarez*, 727 F. App'x 572, 577 (11th Cir. 2018) (per curiam) (same). Once a federal claim is pending, supplemental jurisdiction "should be exercised unless section 1367(b) or (c) applies." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

That is supplemental jurisdiction at its most basic. Allen's claims and ReliaQuest's counterclaims arise from the same Agreement and turn on the same Release. It would make no sense for Allen to litigate revived claims in federal court while ReliaQuest's claims that he breached the release by bringing them proceeded somewhere else. These are claims one "would ordinarily be expected to try . . . in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

ReliaQuest cross-appealed to preserve this relief. Without a cross-appeal, this Court could not alter the Judgment to benefit ReliaQuest even if it revived Allen's claims. *Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008); *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479-80 (1999). If the Court revives any of Allen's federal claims, it should vacate the dismissal of the counterclaims and remand them with those claims. If the Judgment is affirmed, ReliaQuest reserves all rights to pursue its counterclaims against Allen in a separate action in any court of competent jurisdiction, including the Middle District of Florida.

## CONCLUSION

Allen received what he bargained for: severance he was not otherwise owed, and preservation of his right to bring a charge to the EEOC, which he exercised. In exchange, he gave up the right to sue ReliaQuest for damages, and he acknowledged, in capital letters above his signature on the Agreement, that he was doing so. The Court should hold Allen to his bargain and affirm the Judgment.

On ReliaQuest's cross-appeal, if the Court revives any of Allen's federal claims, it should vacate the dismissal of ReliaQuest's counterclaims and remand them together with those claims.

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was

prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman. This brief also complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,472 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f).

Respectfully submitted,

*/s/ Lindsay Patrick Lopez*

DEAN A. KENT
Florida Bar No. 0307040
dkent@trenam.com
LINDSAY PATRICK LOPEZ
Florida Bar No. 0022839
llopez@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
T: (813) 223-7474 || F: (813) 229-6553
Attorneys for Appellee/Cross-Appellant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing APPELLEE'S ANSWER BRIEF has been served by the Court's ECF system on the following: Matthew P. Farmer, Esq., and Timothy J. Fitzgerald, Esq., Farmer & Fitzgerald, P.A., 800 W. De Leon St., Tampa, FL 33606, counsel for Appellant, on this 9th day of November, 2026.

*/s/ Lindsay Patrick Lopez*
Attorney